UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-876

| | | |
|---|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, and ACTION, NC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; and JOSH STEIN, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION BY DEFENDANTS** |
| Defendants. | ) | |

Defendants, the North Carolina State Board of Elections (NCSBE), Damon Circosta, Stella Anderson, Jeff Carmon, III, Karen Brinson Bell, and Josh Stein, Attorney General of the State of North Carolina, hereby respond to Plaintiff's Motion for Preliminary Injunction. [D.E. 2 and 3].

## NATURE OF THE CASE

In 1901, North Carolina enacted a statute which makes it unlawful for any person who lost their right to vote due to a criminal conviction to vote in an election until that right

has been restored. N.C.G.S. § 163-275(5). On September 24, 2020, three weeks after the start of absentee voting in North Carolina, three weeks before the start of early voting, and a little over one month before Election Day, Plaintiffs filed a Complaint and Motion for Preliminary Injunction seeking urgent relief to bar prosecutions under this 120-year-old statute. [D.E. 1, 2, and 3]. Plaintiffs' own delay in bringing suit, thereby creating the circumstances allegedly requiring urgent action from the Court, does not justify the entry of preliminary injunctive relief.

Plaintiffs contend that section 163-275(5) is void for vagueness, in violation of the Due Process Clause of the Fourteenth Amendment [D.E. 1, Count One, pp. 55-57], and is a product of intentional racial discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment [*id.*, Count Two, pp. 58-59]. For relief, Plaintiffs seek to enjoin Defendants from prosecuting violations of this law. *Id.*, p. 60.

While the purpose of a preliminary injunction is to preserve the status quo, Plaintiffs are instead seeking, on the eve of an election, to upend a century-old law.

Plaintiffs' legal claims are also unlikely to succeed.

First, Plaintiff sued improper parties and failed to join necessary parties. Except for the Attorney General, none of the named Defendants are prosecutors, and the Attorney General only prosecutes cases in trial courts when asked to do so by District Attorneys. North Carolina's independently elected District Attorneys are authorized to prosecute such violations, and an injunction against the Defendants would not affect that authority.

Plaintiffs also lack standing. For the same reasons as above, Plaintiffs do not have an injury traceable to these Defendants, their preferred remedy provides no actual relief,

2

and they cannot demonstrate irreparable harm.

Finally, the equities disfavor Plaintiffs' invitation to rewrite a state criminal law associated with elections in the middle of an ongoing election.

## STATEMENT OF THE FACTS

Plaintiffs are two organizations that assert injuries because nonparties with criminal convictions may be unsure of their eligibility to vote, and fear prosecution if they vote unlawfully.

The North Carolina Constitution forbids a person convicted of a felony from voting "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). To enforce this provision, N.C.G.S. § 163-275(5)[1] makes it a felony "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law."

Based on a review of Department of Justice records, it appears that the Attorney General's office has never been called upon to defend a conviction under N.C.G.S. § 163-275(5), has never issued an Attorney General Opinion on this statute pursuant to N.C.G.S. § 114-2(5), and is unaware of any instance of being requested to prosecute this violation pursuant to N.C.G.S. § 114-11.6. A search of the online databases of the decisions of North Carolina appellate courts reveals that section 163-275(5) has never been the subject of a criminal appeal. *See* N.C.G.S. § 114-2(1).

---

[1] Formerly N.C.G.S. § 163A-1389.

3

This is further confirmed by Plaintiffs' own Complaint, in which Plaintiffs focus on the cases of 16 people, not parties to this action, who faced charges under this statute. [D.E. 1, ¶¶ 50-55]. In most of these cases, the person voted in the election without knowing the law. *Id.*, ¶¶ 50-51. In each case, the charges under section 163-275(5) were dismissed and the person was convicted or pleaded guilty to something other than section 163-275(5). *Id.*, ¶¶ 52, 55. Most importantly, in each case, the person was charged, indicted, and prosecuted by a district attorney, not the NCSBE or the Attorney General's Office. *Id.*, ¶¶ 50, 53.

The NCSBE and its members have no authority to prosecute any crimes. N.C.G.S. § 163-22(d). As for the Attorney General, in 2014, the North Carolina General Assembly amended section 163-278, to remove any role or reference to the Attorney General in the statute. N.C.G.S. § 163-278, *as amended by* 2014 N.C. Sess. Laws 100, sec. 17.1(p). Instead, prosecuting violations under Article 22 of Chapter 163 (which encompasses section 163-275) falls to district attorneys alone. N.C.G.S. § 163-278 ("The district attorney shall initiate prosecution and prosecute any violations of this Article."). Thus, Plaintiffs seeks to bar prosecutions by NCSBE and the Attorney General that have not and will not occur, while leaving district attorneys free to prosecute the same potential violations as they have in the past.

## QUESTION PRESENTED

1. Whether this Court has jurisdiction over this matter.

2. Whether plaintiffs have established that they are entitled to preliminary injunctive relief.

4

## LEGAL STANDARD

"A preliminary injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief' and may never be awarded 'as of right.'" *Mt. Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 24 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

Plaintiffs have the burden to prove each factor. *Id.* Additionally, a plaintiff must show that success on the merits is likely regardless of whether the balance of hardships weighs in his favor. *The Real Truth About Obama, Inc. v. F.E.C.*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). This burden requires more than simply showing that "grave or serious questions are presented." *Id.* at 346-47.

## ARGUMENT

I. **THE COURT LACKS JURISDICTION OVER THIS MATTER AND THESE DEFENDANTS AS THEY ARE IMPROPER PARTIES.**

The Eleventh Amendment bars suits brought against States in federal court. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). It shields States from such lawsuits because the States are not "a person" within the meaning of Section 1983. *See Penhurst State Sch. & Hosp. v. Halderman*, 465

5

U.S. 89, 101 (1984) (stating that the Eleventh Amendment bars suits brought against state officials if the "state is the real, substantial party in interest"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the State is not a person within the meaning of Section 1983 and therefore is not a proper party under Section 1983). Thus, the NCSBE is immune and is not a proper party to this action.

There is an exception to state immunity under the U.S. Supreme Court's *Ex parte Young* decision for lawsuits seeking prospective injunctive relief from state officials acting in violation of federal law. 209 U.S. 123, 159-60 (1908); *Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

Importantly, *Ex parte Young* requires that when making a state official in a suit to enjoin enforcement of an act, the officer "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157.

Indeed, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331. The special relationship requirement ensures that the proper party is before the court. *Ex parte Young*, 209 U.S. at 158-59. Otherwise, state officials that are named and lack such a special relationship "are merely the nominal defendants and the state is the real, substantial party in interest," and Eleventh Amendment immunity therefore applies. *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997). Thus, Plaintiffs must show that the lawsuit is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state." *Ex parte Young*, 209 U.S. at 155-56.

6

Even if Plaintiffs could demonstrate a special relation to the statute at issue, they must show that a Defendant has taken some action, or threatened some action, against them in violation of the law. Congress has expressly limited liability under 42 U.S.C. § 1983 to persons acting under color of state law to deprive a plaintiff of a right secured by the Constitution and laws of the United States. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). This requirement is satisfied "when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt.*, 252 F.3d at 330; *see also McBurney*, 616 F.3d at 401 (dismissing claim on sovereign immunity grounds because Attorney General had not acted or threatened to act). The threat of enforcement or prosecution must be real before a federal court may examine the validity of a statute. *Doe v. Duling*, 782 F.2d 1202, 1206 (4th Cir. 1986); *see also Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (holding Attorney General was not a proper defendant in part because he "did not threaten to commence and was not about to commence proceedings against the plaintiffs, much less proceedings to enforce an allegedly unconstitutional act"); *Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 440-41 (7th Cir. 1992) (holding Attorney General was not a proper defendant in a Section 1983 action when the Attorney General "has never threatened the [plaintiffs] with prosecution and as far as we can tell has no authority to do so"); *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (holding Attorney General was not a proper defendant because there were no threats that the challenged law would be enforced by the Attorney General).

7

Under scrutiny, it is clear that Plaintiffs cannot support a sufficient connection between the Defendants and the prosecution or threat of prosecution of the challenged statute. The Complaint lacks any allegation that Defendants have prosecuted or threatened to prosecute this crime, only that district attorneys have done so. [D.E. 1, ¶¶4, 50, and 53]. District attorneys are independently elected judicial officers that are not under the supervision of the Attorney General or the NCSBE. *See* N.C. Const. art. IV § 18; N.C.G.S. §§ 7A-60, -61, -66. At most, the Attorney General may "consult with and advise" district attorneys, "when requested by them." N.C.G.S. § 114-2(4). The Attorney General plays no role in a district attorney's decision to prosecute violations of the statute at issue.

## A. The NCSBE Defendants Are Not Proper Parties.

With respect to the individually named NSCBE Defendants, Plaintiffs make no allegations whatsoever other than to name them. *Id.*, ¶¶ 18-21. Thus, Plaintiffs have not demonstrated any connection between them and enforcement of this statute such that a §1983 claim must fail. *Id.*

To the extent the duties of the agency are to be imputed to these individuals, Plaintiffs can only rely on §163-22(d), which states that the NCSBE "shall investigate *when necessary or advisable*, the administration of election laws, frauds and irregularities in elections in any county and municipality and special district, and shall report violations of the election laws to the Attorney General or district attorney or prosecutor of the district *for further investigation and prosecution*." N.C.G.S. § 163-22(d) (emphasis added). The statute provides no authority to the NCSBE, or these individuals, to prosecute any violations it may find, but only to investigate and report such violations. *Id.* Moreover,

8

Plaintiffs do not seek to enjoin the NCSBE's authority to investigate, but to prosecution when NCSBE has no connection to the prosecution of that statute at all.

Moreover, the language "when necessary and advisable" renders even the investigation and referral of election crimes a discretionary task for the NCSBE. In keeping with that discretion, on October 1 2019, the NCSBE issued a policy entitled the "Elections-Related Investigation Priorities Policy."[2] **See Exhibit D.** Pursuant to that policy, and acknowledging the limited resources available to the agency, the NCSBE established a tiered system by which its investigators prioritize which investigations should be conducted. *Id.*

The statute at issue makes no appearance in this list and is not a priority for investigations conducted by the NCSBE, at least as far as any unintentional violations are concerned. *Id.* Thus, in addition to there being no threat of prosecution from the NCSBE due to the agency's lack of authority to do so, there is not even a threat of investigation for unintentional violations of section 163-275(5).

Instead, Plaintiffs must rely on the findings from the NCSBE's general audit of election violations following the 2016 election. [D.E. 1, ¶47; D.E. 3-2]. And while the results of this audit were provided to district attorneys in compliance with the statute, the preferred solution proposed by NCSBE for felons voting was not to prosecute, but to take significant steps within state agencies to discourage unlawful participation by felons. [D.E. 3-2, pp. 5-6].

---

[2] https://s3.amazonaws.com/dl.ncsbe.gov/Legal/Legal_Elections InvestigationsPolicy_10012019.pdf.

## B. The Attorney General Is Not a Proper Party.

With respect to the Attorney General, and without any real connection to rely on, Plaintiffs turn to recitations of his general duties. They argue he has the general duty "to receive reports of 'violations of the elections laws' from the NCSBE pursuant to N.C.G.S. § 163-22(d)." [D.E. 1, ¶22]. This general provision that provides the Attorney General with reports of potential election law violations is insufficient to connect him to any threatened *prosecution* under section 163-278, a task which is specifically committed to district attorneys in North Carolina.

Prosecutions under the law challenged are controlled by N.C.G.S. § 163-278, which states that only "[t]he district attorney shall initiate prosecution and prosecute any violations of this Article." N.C.G.S. § 163-278. "[T]his Article" refers to Article 22 of Chapter 163 of the General Statutes, in which the statute under challenge is found. *See id.* § 163-275(5). Any argument that the Attorney General's ability to receive reports of election law violations under section 163-22(d) authorizes him to prosecute violations of the specific law under challenge here, in spite of the language of section 163-278, would run afoul of North Carolina's rule of statutory construction that a specific statute that addresses the issue at bar (like section 163-278) must control over a more general provision (like section 163-22). *See Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985).

Prior to 2014, the Attorney General had *some* authority under this statute—to assist in investigations only, not prosecutions. *See* N.C.G.S. § 163-278 (2013). But that authority was removed when the State Bureau of Investigations was reorganized and placed within

10

the North Carolina Department of Public Safety.  *See* 2014 N.C. Sess. Laws, ch. 100, sec. 17.1(g), (p).[3]  The Attorney General therefore has no authority to enforce the law under challenge.

Plaintiffs claim the Attorney General has a connection because he is generally required to consult and advise district attorneys, when requested, and may authorize the Special Prosecution Section of the Attorney General's Office to prosecute criminal cases, again when requested.  N.C.G.S. §§ 114-2(4), -11.6.  However, as the Fourth Circuit and other federal courts have stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Ex parte Young*, 209 U.S. at 157 (If only being a law officer is required for testing constitutionality of a statute by injunction, every act passed could be tested by suing the attorney general.) (citing Fitts, 172 U.S. at 530, 43 L. Ed. at 541-42, 19 S. Ct. at 274-75); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (holding that the Eleventh Amendment barred suit against the Attorney General under the state's FOIA because he did not have a specific statutory duty to enforce that law and his authority to issue advisory opinions did not present a sufficient nexus to satisfy the *Ex Parte Young* requirement of a "special relationship" to the enforcement of FOIA).[4]

---

[3]    Available at https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2013-2014/SL2014-100.pdf.

[4]    To the extent Plaintiffs rely on decisions from this District that have held that the Attorney General is a proper party where a criminal statute is challenged, *see Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, No. 1:17CV53, 2019 WL 3429120, at *5 (M.D.N.C. July 30, 2019); *Does 1-5 v. Cooper*, 40 F. Supp. 3d 657, 673–74 (M.D.N.C.

11

In this case, Plaintiffs have not alleged or argued, nor can they, that the Attorney General is prosecuting or threatening to prosecute this crime. [D.E. 1, ¶ 22]. In contrast, a review of the Opinions issued by the Attorney General's Office, pursuant to N.C.G.S. § 114-2(5), reveals no instance in which the Attorney General has issued an Opinion regarding the statute under challenge.[5] A search of the opinions issued by the North Carolina appellate courts similarly revealed no instance in which the Attorney General defended a conviction under section 163-275(5). Finally, the undersigned has been unable to locate any records of the Attorney General having been requested to prosecute a violation of 163-275(5) by a local district attorney, pursuant to section 114-11.6.

Accordingly, because Plaintiffs cannot show a connection between the enforcement and prosecution of the statute, the *Ex parte Young* exception to the Eleventh Amendment does not apply and the State's immunity bars the claims. Moreover, the NCSBE Defendants and the Attorney General have not engaged in any ongoing conduct in violation of federal law, and therefore, are improper parties to this lawsuit because they do not qualify as "a person" for the purposes of a Section 1983 claim.

---

2014), those decisions are distinguishable. In both cases, the courts relied on the general authority of the Special Prosecution Division of the Attorney General's Office to assist in the prosecution of criminal cases "when requested" by a district attorney. N.C.G.S. § 114-11.6. That general authority, however, gives way here to the more specific statute, section 163-278, vesting the authority to prosecute *this crime*, in particular, with the district attorneys alone. *See Trustees of Rowan Tech.*, 313 N.C. at 238, 328 S.E.2d at 279. Under controlling precedent, the Court must look to whether the defendant has "a specific statutory duty to enforce" the challenged law. *McBurney*, 616 F.3d at 400.

[5]     https://ncdoj.gov/legal-services/legal-opinions-directory/.

## II.    PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS.

The Plaintiffs request that this Court bar Defendants from prosecution under N.C.G.S. § 163-275(5) on the grounds that certain ineligible nonparties are being prosecuted for violating the crime, or will be, and certain eligible nonparties may not vote due to fear of prosecution.  Plaintiffs fail to demonstrate a likelihood of success on the merits because Plaintiffs lack standing and will not succeed on the merits of their claims.

### A. Plaintiffs Lack Standing.

Under Article III of the United States Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies."  *See, e.g.*, *Allen v. Wright*, 468 U.S. 737, 750 (1984); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  Standing to initiate a federal lawsuit is an essential facet of the case or controversy requirement.  *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017).  To satisfy standing, a plaintiff must establish the following:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Id.*

Plaintiffs bear the burden of establishing the elements of standing and must support each element with sufficient factual allegations.  *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005).  Moreover, "[t]he standing requirement must be satisfied by individual and organizational plaintiffs alike."  *Id.*

13

**i. Plaintiffs Have Not Suffered Any Injury-in-Fact and Any Fear of Injury Is Too Attenuated to Support Standing.**

Article III standing exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270-71 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)); see also *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Allegations of a merely possible future injury do not create standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, Plaintiffs claim to have suffered an injury because individuals with criminal convictions are reluctant to register and vote which impedes their core mission. [D.E. 1, ¶¶ 15-16; 92-94]. Plaintiffs assert that this grows from a fear that nonparties may have concerning potential future prosecution under the challenge law. *Id.*, ¶¶ 75-77. Generally, Plaintiffs also assert that individuals with past criminal convictions and African-American voters are discouraged from attempting to vote out of fear of prosecution under this statute, even if they have no felony record. *Id.,* ¶¶78-80.

Here, Plaintiffs must rely upon the decisions and actions of independent persons, not named parties to this action. Such a connection is too attenuated to support standing. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 409 (2013) (determining no

14

standing because plaintiffs' theory of standing depended on the actions of independent actors not before the court).

Finally, Plaintiffs allege that they face the threat of prosecution under N.C.G.S. § 163-275(13). It is hard to see how subsection 13 would be misunderstood, as it makes it unlawful "[f]or any person falsely to make or present any certificate or other paper to qualify any person fraudulently as a voter, or to attempt thereby to secure to any person the privilege of voting, including declarations." *Id.* Plaintiffs claim this intent requirement is so unclear that they may be prosecuted for accidentally helping a person vote who has not completed their felony sentence. [D.E. 1, ¶ 93]. This is not only speculative, but it is at odds with the plain language of the statute which sets out specific criminal conduct that Plaintiffs should be able to easily avoid under any circumstances.

Thus, Plaintiffs have alleged only speculative future injuries, which demonstrate they lack standing in this matter.

### ii. Plaintiffs' Alleged Risk of Injury is Not Traceable to Defendants.

Plaintiffs also lack standing because they cannot show that the injury they complain of is traceable to an action by these Defendants. *Friends of the Earth*, 528 U.S. at 180-81; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). In a pre-enforcement challenge to the constitutionality of a statute, when a plaintiff has not yet experienced an injury, they must show that the defendant is the government official charged with enforcing the challenged statute. *Bronson v. Swensen*, 500 F.3d 1099, 1109-10 (10th Cir. 2007); *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

Case 1:20-cv-00876-LCB-JLW   Document 16   Filed 10/16/20   Page 15 of 24

For the reasons stated above, Plaintiffs have failed to show any connection between Defendants and the prosecutions they assert caused their injuries. The Defendants have no prosecutorial authority under the statute, nor have Defendants ever prosecuted or threatened to prosecute this violation. Thus, Plaintiffs' claimed injuries are not traceable to the conduct of the Defendants.

### iii. Plaintiffs' Proposed Remedy Does Not Redress the Alleged Injuries.

The final requirement of standing requires that Plaintiffs' proposed remedy, enjoining Defendants from enforcing this statute, must redress the injury they claim. Redressability requires that the remedy "is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Beck*, 848 F.3d at 269; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000).

Here, the Complaint suffers a fatal flaw. Under the controlling statute, the duty of prosecuting this violation is expressly reserved to local district attorneys. N.C.G.S. § 163-278. The only prosecutions under this statute which appear to have occurred, and which Plaintiffs can cite to in their Complaint, were brought by the district attorneys of Alamance and Hoke Counties. [D.E. 1, ¶¶ 4, 50, 53]. And yet, Plaintiffs have named no district attorney in this lawsuit. As a result, this Court could grant exactly what Plaintiffs are requesting, an injunction which bars Defendants from prosecuting this crime, and all district attorneys would be free to continue prosecutions. Thus, the proposed remedy is no remedy at all, and Plaintiffs therefore lack standing.

16

## B. PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS OF THEIR DUE PROCESS CLAIM.

The United States Supreme Court has recognized that state legislatures are permitted to enact strict liability offenses. *Lambert v. California*, 355 U.S. 225, 228 (1957) ("conduct alone without regard to intent of the doer is often sufficient" for criminal liability; "[t]here is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition"). The due process clause prohibits a "criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015). The question of vagueness under the due process clause requires a showing that the statute is "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Coates* v. *City of Cincinnati*, 402 U.S. 611, 614 (1971)).

Under these standards, this statute does not violate due process. Section 163-275(5) contains a comprehensible standard of criminally prohibited conduct, in that persons who have been "convicted of a crime which excludes the person from the right of suffrage," cannot vote "without having been restored to the right of citizenship in due course and by the method provided by law." N.C.G.S. § 163-275(5). The North Carolina Constitution, article VI, § 2(4), brings all felonies within the class of crimes that "exclude the person

17

from the right of suffrage." And section 13-1 of the General Statutes "automatically restore[s]" the right to vote for persons who commit felonies upon "[t]he unconditional discharge of an inmate, of a probationer, or of a parolee" by the state or federal agency "having jurisdiction" of that person. N.C.G.S. §§ 13-1(1), (4), (5).

Plaintiff argues "unconditional discharge" is not defined, but that does not render it vague, as its plain meaning is obvious in the context of the statute and its references to incarceration, probation, and parole, and the fact that the "discharge" must be by the governmental agency "having jurisdiction of that person." *Id.*

Accordingly, North Carolina law provides a comprehensible standard of conduct to follow. *Hoffman Estates*, 455 U.S. at 495 n.7. If an ordinary person were to read the statutes, and that person had been convicted of a felony, the next question they must ask themselves is whether they continue to be supervised by the state for that conviction. This inquiry can be answered by any layperson who has been convicted of a felony. They will know whether they are still incarcerated, or are still required to make court appearances for their conviction, or are still required to be in contact with their probation or parole officer. If they remain subject to such conditions, they know not to vote.

The implied argument from the sixteen prosecutions detailed in Plaintiffs' Complaint is that the statute should be declared unconstitutional because some individuals are not aware of its existence.[6] [D.E. 1, ¶¶ 50-55]. This ignores the maxim that ignorance

---

[6] Such an argument is best addressed in an as-applied case-by-case challenge that evaluates circumstances of each individual case. *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) (citing *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002).

18

of the law is no excuse. *Lambert*, 355 U.S. at 228; *United States v. Talebnejad*, 460 F.3d 563, 570 (4th Cir. 2006). In *Lambert*, the Supreme Court held that a strict liability crime violated the notice requirement of due process. 355 U.S. at 228. However, as the Fourth Circuit noted in discussing *Lambert*, "[t]he key to the ruling of the Court was its characterization of the conduct at issue as 'wholly passive,' in that violation of the ordinance was 'unaccompanied by any activity whatever.'" *Talebnejad*, 460 F.3d at 570 (quoting *Lambert*, 355 U.S. at 228).

Here, this is not a case of passive conduct leading to a conviction, but active conduct in violation of a statute that has existed for 120 years. Thus, Plaintiffs' argument fails because any mistake of law defense based on lack of notice does not rise to the level of a due process violation.

## C. PLAINTIFFS' LIKELIHOOD OF SUCCESS ON THE EQUAL PROTECTION CLAIM IS UNCERTAIN.

Plaintiffs assert that this statute was originally enacted with the intent to discriminate and it has not been altered significantly since that time. Pls.' Brief pp. 4-7, 12-15. Plaintiffs further assert that the statute continues to disparately impact African-Americans. Pls.' Brief pp. 7-8; 12-15.

While many aspects of North Carolina's troubled history with race relations are well-known, Defendants are unable at this time to concede that Plaintiffs are likely to succeed on these issues, but instead rely on the numerous alternative bases for denying the requested injunction, declining jurisdiction, and lack of injury caused by Defendants, as briefed herein.

19

## III. PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED.

The second factor of the *Winter* test requires that plaintiffs demonstrate they will suffer irreparable harm if an injunction is not issued. *Winter*, 555 U.S. at 20. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Plaintiffs assert that nonparties fear prosecution and this has prevented them from carrying out registration of voters. Because of the Defendants' lack of prosecutorial authority, Plaintiffs' have failed to demonstrate even the possibility of some remote future harm caused by Defendants, much less that it is a likely outcome. Moreover, even if the Court entered an injunction against these Defendants, district attorneys would remain free to continue prosecuting this crime. N.C.G.S. § 163-278. The alleged fear of prosecution would continue unabated because Plaintiffs sued the wrong parties.

Moreover, if such a prosecution were to occur, the individual would not suffer an irreparable harm. The same arguments which Plaintiffs rely on here regarding due process and equal protection would be equally available to any hypothetical defendant to challenge the constitutionality of the law and any subsequent conviction. The Complaint admits that a number of individuals have attempted to do so on multiple occasions through state court criminal proceedings, but have been unable to do so due to dismissals by district attorneys or negotiated plea agreements. [D.E. 1, ¶ 52, 55].

For this reason, plaintiffs have failed to show that it is "likely" that they will suffer

irreparable harm absent an injunction.  *Winter*, 555 U.S. at 22.

## IV. THE EQUITIES TO THE PARTIES AND THE PUBLIC INTEREST WEIGH AGAINST AN INJUNTION.

The final two *Winter* factors require Plaintiffs to demonstrate that the equities tip in their favor and that an injunction is in the public interest.  *Id.* at 20.  In cases involving challenges to governmental action, courts typically consider the balance of the equities and the public interest factors together.  *Taliaferro v. N.C. State Bd. of Elections*, No. 5:20-CV-411-BO, 2020 WL 5709252, at *3 (E.D.N.C. Sept. 24, 2020).

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).

Contrary to Plaintiffs' assertion that this is a forgotten and unchanged law, the General Assembly has recently and frequently considered amendments to this statute. Section 163-275 has been amended over twenty times, including amendments in 2015 which directly addressed and edited subsection 275(5).  *See* N.C.G.S. § 163-275, History; 2015 N.C. Sess. Laws 264, s. 26; and [D.E. 1, ¶41].  Additionally, over the last three years it has been the subject of three proposed amendments.  *See* 2017 Bill Text NC H.B. 698, 2017 Bill Text NC H.B. 1089, and 2019 Bill Text NC H.B. 819, attached hereto as **Exhibits A, B, and C.**[7]

---

[7]     Also available at https://www.ncleg.gov/BillLookUp/2017/H698; https://www.ncleg.gov/BillLookUp/2017/H1089; and https://www.ncleg.gov/BillLookUp/2019/H819.

Specifically, during the 2017 Session of the General Assembly, House Bill 1089 sought to add the phrase "with intent to commit a fraud" into the statute. **See Ex. B.** Although the House passed the bill unanimously, the N.C. Senate chose not to take up the bill. Again, two years later, during the 2019 Session, House Bill 819 was brought to the floor with an identical addition for section 163-275(5). **See Ex. C.** It was referred to a committee of the House and was never brought back for a vote before the full House. The will of the legislature, therefore, is that the law continue to forbid voting by anyone serving a felony sentence. Under these circumstances, therefore, the interest of the people of North Carolina, as carried out by their legislative representatives, is in the continued viability of section 163-275(5).

Plaintiffs' delay in bringing this motion for preliminary injunction, moreover, tips the balance of the equities against issuance of an injunction. *See Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (holding that a plaintiff's "delay is thus quite relevant to balancing the parties' potential harms," since "a long delay in seeking relief indicates that speedy action is not required. The challenged statute has been in effect for over a century, over the course of hundreds of elections. That Plaintiffs seek this preliminary injunction on the eve of an election, with little notice or opportunity to develop a complete factual record, demonstrates the inequity of any injunction. [8]

---

[8]     To the extent the relief require affirmative actions by the State's elections administrators, it would run afoul of the U.S. Supreme Court's repeated admonishments not to do so on the eve of elections. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)).

22

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be

denied.

Respectfully submitted this the 16th day of October, 2020.

> **JOSHUA H. STEIN**
> **Attorney General**
>
> /s/ Terence Steed
> Terence Steed
> Special Deputy Attorney General
> N.C. State Bar No. 52809
> E-mail: tsteed@ncdoj.gov
>
> Paul M. Cox
> Special Deputy Attorney General
> N.C. State Bar No. 49146
> E-mail: pcox@ncdoj.gov
>
> Olga E. Vysotskaya de Brito
> Special Deputy Attorney General
> N.C. State Bar No. 31846
> Email: ovysotskaya@ncdoj.gov
>
> N.C. Department of Justice
> P.O. Box 629
> Raleigh, NC  27602-0629
> Telephone:  (919) 716-6567
> Facsimile:  (919) 716-6761
>
> *Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)

Undersigned counsel certifies that the present filing is in compliance with Local Rule 7.3(d) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina including the body of the brief, heading and footnotes, and contains no more than 6,250 words as indicated by Word, the program used to prepare the brief.

Respectfully submitted this the 16th day of October, 2020.

 /s Terence Steed
Terence Steed
Special Deputy Attorney General