UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:20-cv-876

| | | |
|---|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE, and ACTION, NC,<br><br>            Plaintiffs,<br><br>    v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; and JOSH STEIN, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA,<br><br>            Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

Defendant the North Carolina State Board of Elections ("NCSBE"), Damon

Circosta, in his official capacity as Chair of the NCSBE, Stella Anderson, in her official

capacity as Secretary of the NCSBE, Jeff Carmon, III, in his official capacity as Member

of the NCSBE, Karen Brinson Bell, in her capacity as Executive Director of the NCSBE

("NCSBE Defendants"), and Josh Stein, Attorney General of the State of North Carolina

(collectively "Defendants"), through undersigned counsel, provide this Memorandum of

1

Law in support of Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6).

## NATURE OF THE CASE

In 1901, North Carolina enacted a statute that makes it unlawful for any person who lost their right to vote due to a criminal conviction to vote in an election until that right is restored. N.C.G.S. § 163-275(7). On September 24, 2020, Plaintiffs filed a Complaint and Motion for Preliminary Injunction[1] seeking urgent relief to bar prosecutions under this 120-year-old-statute. [D.E. 1, 2, and 3].

In the Complaint, Plaintiffs challenge the constitutionality of section 163-275(5) as void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment [D.E. 1, Count One, pp. 55-57], and as a product of intentional racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. *Id.*, Count Two, pp. 58-59. Plaintiffs seek to have the law declared unconstitutional and to have Defendants enjoined from prosecuting violations of this law. *Id.*, p. 60.

This matter should be dismissed pursuant to Fed Rule Civ. P. 12(b)(1), (2), and (6). Specifically, this Court lacks subject matter jurisdiction, lacks personal jurisdiction, and Defendants are entitled to Eleventh Amendment Immunity. Plaintiffs also failed to state a claim upon which relief can be granted because they lack an injury, and cannot demonstrate the statute in question violates Due Process Clause.

---

[1] On October 16, 2020, Defendants filed a Response to Plaintiffs' Motion for Preliminary Injunction. [D.E. 16] The arguments contained in this memorandum closely mirror the arguments contained therein.

2

## STATEMENT OF FACTS

Plaintiffs are two organizations that assert injuries because nonparties with criminal convictions may be unsure of their eligibility to vote, and fear prosecution if they vote unlawfully.

The North Carolina Constitution forbids a person convicted of a felony from voting "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). To enforce this provision, N.C.G.S. § 163-275(5)[2] makes it a felony "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law."

Based on a review of Department of Justice records, it appears that the Attorney General's office has never been called upon to defend a conviction under N.C.G.S. § 163-275(5), has never issued an Attorney General Opinion on this statute pursuant to N.C.G.S. § 114-2(5), and the office is unaware of any instance of being requested to prosecute this violation pursuant to N.C.G.S. § 114-11.6. A search of the online databases of the decisions of North Carolina appellate courts reveals that section 163-275(5) has never been the subject of a criminal appeal, thus it appears that the Attorney General's Office has never represented the State in defending such a conviction. *See* N.C.G.S. § 114-2(1).

This is further confirmed by Plaintiffs' own Complaint, in which Plaintiffs focus on the cases of 16 people, not parties to this action, who faced charges under this statute. [D.E.

---

[2]     Formerly N.C.G.S. § 163A-1389.

3

1, ¶¶ 50-55].  In most of these cases, the person voted in the election without knowing the law.  *Id.*, ¶¶ 50-51.  In each case, the charges under section 163-275(5) were dismissed and the person was convicted or pleaded guilty to something other than section 163-275(5).  *Id.*, ¶¶ 52, 55.  Most importantly, in each case, the person was charged, indicted, and prosecuted by a local district attorney, not the NCSBE or the Attorney General's Office.  *Id.*, ¶¶ 50, 53.

The NCSBE and its members have no authority to prosecute any crimes.  N.C.G.S. § 163-22(d).  As for the Attorney General, in 2014, the North Carolina General Assembly amended the statute authorizing prosecution for the violation at issue, and removed any role or reference to the Attorney General in the statute.  N.C.G.S. § 163-278, *as amended by* 2014 N.C. Sess. Laws 100, sec. 17.1(p).  Instead, prosecuting violations under Article 22 of Chapter 163 (which encompasses section 163-275) falls to district attorneys alone.  N.C.G.S. § 163-278 ("The district attorney shall initiate prosecution and prosecute any violations of this Article.").

## QUESTIONS PRESENTED

I.  Whether the Court lacks jurisdiction pursuant to Rule 12(b)(1) and 12(b)(2) because Defendants are Improper Parties entitled to Eleventh Amendment Immunity, and Plaintiffs lack standing.

II.  Whether Plaintiffs' Complaint fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) because Plaintiffs have failed to properly alleged an injury caused by these Defendants, and failed to assert a legally viable Due Process Violation.

4

<u>**LEGAL ARGUMENT**</u>

**I.      STANDARDS OF REVIEW.**

On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Without jurisdiction the court cannot proceed at all in any cause." *Stop Reckless Econ. Instability Caused By Democrats v. FEC*, 814 F.3d 221, 228 (4th Cir. 2016) (quoting, *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

In the present case, the Defendants rely on both the face of the Amended Complaint and public documents to support their Rule 12(b)(1) challenge to subject matter jurisdiction. When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647; *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

In response to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993); *Simmons v. Corizon Health, Inc.*, 122 F. Supp. 3d 255, 269 (M.D.N.C. 2015). Although a Plaintiff who opposes a motion to dismiss for lack of personal jurisdiction is entitled to have all reasonable inferences drawn in his favor, the court is not required to look solely to plaintiff's proof in drawing those inferences. *Mylan Labs*, 2 F.3d at 60; *IHFC Props. LLC v. APA Mktg.*, 850 F. Supp. 2d 604, 616

5

(M.D.N.C. 2012).

When considering a motion to dismiss under Rule 12(b)(6), "a court must accept the factual allegations of the complaint as true." *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 663 (quoting *Twombly*, 550 U.S. at 570)).

A claim is only facially plausible when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal brackets and quotation marks omitted). The Fourth Circuit has held that courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

In evaluating a Rule 12(b)(6) motion, the Court considers the allegations in the Complaint and any materials incorporated therein, as well any document submitted by the movant that is "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The

6

Court may also take judicial notice of public records when considering a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (recognizing that a court may consider during Rule 12(b)(6) review any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hall v. Virginia*, 385 F.3d 421, 424 & n.3 (4th Cir. 2004) (taking judicial notice of information publicly available on official government website). *See also* Fed. R. Evid. 201.

## II.    THE COURT LACKS JURISDICTION OVER THIS MATTER AND THESE DEFENDANTS.

### A. Defendants Are Entitled to Eleventh Amendment Immunity.

This Court lacks subject matter jurisdiction over the claims and personal jurisdiction over these Defendants, because Defendants are entitled to Eleventh Amendment Immunity and because Plaintiff fails to meet the necessary requirements under 42 U.S.C. § 1983.

The Eleventh Amendment bars suits brought against States in federal court. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *see also Alden v. Maine*, 527 U.S. 706, 727-28 (1999); *Waste Mgmt. Holdings, Inc v. Gilmore*, 252 F.3d 316, 329 (4th Cir. 2001). It shields States from such lawsuits because the States are not "a person" within the meaning of Section 1983. *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (stating that the Eleventh Amendment bars suits brought against state officials if the "state is the real, substantial party in interest"); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (holding that the State is not a person within the meaning of Section 1983 and therefore is not a proper party under Section 1983). Thus,

7

the NCSBE is immune and is not a proper party to this action.

There is an exception to state immunity under the U.S. Supreme Court's *Ex parte Young* decision for lawsuits seeking prospective injunctive relief from state officials acting in violation of federal law. 209 U.S. 123, 159-60 (1908); *Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

Importantly, *Ex parte Young* requires that any such state official must have some connection to the enforcement of the act under scrutiny:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

*Ex parte Young*, 209 U.S. at 157. Indeed, "*Ex parte Young* requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331. The special relationship requirement ensures that the proper party is before the court. *Ex parte Young*, 209 U.S. at 158-59. Otherwise, state officials that are named and lack such a special relationship "are merely the nominal defendants and the state is the real, substantial party in interest," and Eleventh Amendment immunity therefore applies. *Booth v. Maryland*, 112 F.3d 139, 142 (4th Cir. 1997). Thus, Plaintiffs must show that the lawsuit is directed at "officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state." *Ex parte Young*, 209 U.S. at 155-56.

Under scrutiny, it is clear that Plaintiffs cannot support a sufficient connection between the Defendants and the prosecution or threat of prosecution of the challenged

8

statute. The Complaint is devoid of any allegation that Defendants have prosecuted or threatened to prosecute this crime, only that local district attorneys have done so. [D.E. 1, ¶¶4, 50, and 53]. District attorneys are independently elected judicial officers that are not under the supervision of the Attorney General or the NCSBE. *See* N.C. Const. art. IV § 18; N.C.G.S. §§ 7A-60, -61, -66.

### i. The NCSBE Defendants Are Not Proper Parties.

With respect to the individually named NSCBE Defendants, Plaintiffs make no allegations whatsoever other than to name them. *Id.*, ¶¶ 18-21. Thus, Plaintiffs have not demonstrated any connection between them and enforcement of this statute such that a §1983 claim must fail. *Id.*

To the extent the duties of the agency are to be imputed to these individuals, Plaintiffs can only rely on N.C.G.S. § 163-22(d), which states that the NCSBE "shall investigate *when necessary or advisable*, the administration of election laws, frauds and irregularities in elections in any county and municipality and special district, and shall report violations of the election laws to the Attorney General or district attorney or prosecutor of the district *for further investigation and prosecution*." N.C.G.S. § 163-22(d) (emphasis added). The statute provides no authority to the NCSBE, or these individuals, to prosecute any violations it may find, but only to investigate and report such violations. *Id.*

Moreover, the language "when necessary and advisable" renders even the investigation and referral of election crimes a discretionary task for the NCSBE. In keeping with that discretion, on October 1 2019, the NCSBE issued a policy entitled the "Elections-

9

Related Investigation Priorities Policy."[3]  [D.E. 17-4].  Pursuant to that policy, and acknowledging the limited resources available to the agency, the NCSBE established a tiered system by which its investigators prioritize which investigations should be conducted.  *Id.*

The highest priority is malfeasance by elections officials.  *Id.*  Next is significant harm or threat of significant harm to the conduct or administration of elections, including vote buying, voter suppression or intimidation, and organized absentee ballot fraud.  *Id.* The third priority includes cases involving culpable conduct such as knowing or intentional violations, deliberate misconduct, a history or repeated violations, concealment of misconduct, including falsification of records, and instances in which it was likely that the subject understood or reasonably should have understood the illegality of the conduct.  *Id.* The fourth priority includes concerted efforts by multiple individuals or entities to violate the law.  *Id.*  The last priority encompasses other enforcement areas as identified by the General Counsel of the NCSBE in consultation with the Executive Director.  *Id.*

The statute at issue is not a priority for investigations conducted by the NCSBE, at least as far as any unintentional violations are concerned.  *Id.*  Thus, in addition to there being no threat of prosecution from the NCSBE due to the agency's lack of authority to do so, there is not even a threat of investigation for unintentional violations of section 163-275(5).

Instead, Plaintiffs must rely on the findings from the NCSBE's general audit of

---

[3]     https://s3.amazonaws.com/dl.ncsbe.gov/Legal/Legal_Elections InvestigationsPolicy_10012019.pdf.

election violations following the 2016 election.  [D.E. 1, ¶47; D.E. 3-2].  And while the results of this audit were provided to district attorneys in compliance with the statute, the preferred solution proposed by NCSBE for felons voting was not to prosecute, but to take significant steps within state agencies to discourage unlawful participation by felons.  [D.E. 3-2, pp. 5-6].

### ii.  The Attorney General Is Not a Proper Party.

With respect to the Attorney General, and without any real connection to rely on, Plaintiffs turn to recitations of his general duties.  They argue he has the general duty "to receive reports of 'violations of the elections laws' from the NCSBE pursuant to N.C.G.S. § 163-22(d)."  [D.E. 1, ¶22].  This general provision that provides the Attorney General with reports of potential election law violations is insufficient to connect him to any threatened *prosecution* under section 163-278, a task which is specifically committed to district attorneys in North Carolina.

Prosecutions under the law under challenge are controlled by N.C.G.S. § 163-278, which states that only "[t]he district attorney shall initiate prosecution and prosecute any violations of this Article."  N.C.G.S. § 163-278.  "[T]his Article" refers to Article 22 of Chapter 163 of the General Statutes, in which the statute under challenge is found.  *See id.* § 163-275(5).  Any argument that the Attorney General's ability to receive reports of election law violations under section 163-22(d) authorizes him to prosecute violations of the specific law under challenge here, in spite of the language of section 163-278, would run afoul of North Carolina's rule of statutory construction that a specific statute that addresses the issue at bar (like section 163-278) must control over a more general provision

11

(like section 163-22).  *See Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985).

Prior to 2014, the Attorney General had *some* authority under this statute—to assist in investigations only, not prosecutions.  *See* N.C.G.S. § 163-278 (2013) ("The State Board of Elections and the district attorneys are authorized to call upon the Attorney General to furnish assistance by the State Bureau of Investigation in making the investigations of such violations.").  But that authority was removed when the State Bureau of Investigations was reorganized and placed within the North Carolina Department of Public Safety.  *See* 2014 N.C. Sess. Laws, ch. 100, sec. 17.1(g), (p).[4]  The Attorney General therefore has no authority to enforce the law under challenge.

Plaintiffs claim the Attorney General has a connection because he is generally required to consult and advise district attorneys, when requested, and may authorize the Special Prosecution Section of the Attorney General's Office to prosecute criminal cases, again when requested.  N.C.G.S. §§ 114-2(4), -11.6.  However, as the Fourth Circuit and other federal courts have stated, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Waste Mgmt.*, 252 F.3d at 331 (quotation omitted); *see also Ex Parte Young*, 209 U.S. at 157 ("If, because [he was] law officer[] of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit … then the constitutionality of every act passed by the legislature could be tested by a suit against …

---

[4]      Available at https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2013-2014/SL2014-100.pdf.

the attorney general, based upon the theory that … attorney general, might represent the state in litigation involving the enforcement of its statutes. …[B]ut it is a mode which cannot be applied… .") (quoting Fitts, 172 U.S. at 530, 43 L. Ed. at 541-42, 19 S. Ct. at 274-75); *McBurney v. Cuccinelli*, 616 F.3d 393, 400-01 (4th Cir. 2010) (holding that the Eleventh Amendment barred suit against the Attorney General under the state's FOIA because he did not have a specific statutory duty to enforce that law and his authority to issue advisory opinions did not present a sufficient nexus to satisfy the *Ex Parte Young* requirement of a "special relationship" to the enforcement of FOIA); *Okpalobi v. Foster*, 244 F.3d 405, 422 (5th Cir. 2001) (holding that the Eleventh Amendment barred suit against the Attorney General under a state tort statute providing a cause of action against medical doctors performing abortions because the Attorney General did not have the power or ability to enforce the statute).

To the extent Plaintiffs rely on decisions from this District that have held that the Attorney General is a proper party where a criminal statute is challenged, *see Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, No. 1:17CV53, 2019 WL 3429120, at *5 (M.D.N.C. July 30, 2019); *Does 1-5 v. Cooper*, 40 F. Supp. 3d 657, 673–74 (M.D.N.C. 2014), those decisions are distinguishable. In both of those cases, the courts relied on the general authority of the Special Prosecution Division of the Attorney General's Office to assist in the prosecution of criminal cases "when requested" by a district attorney. N.C.G.S. § 114-11.6. That general authority, however, gives way here to the more specific statute, section 163-278, vesting the authority to prosecute *this crime*, in particular, with the district attorneys alone. *See Trustees of Rowan Tech.*, 313 N.C. at 238,

13

328 S.E.2d at 279. Under controlling precedent, the Court must look to whether the defendant has "a specific statutory duty to enforce" the challenged law, *McBurney*, 616 F.3d at 400, which is lacking here.

Plaintiffs have not alleged or argued, nor can they, that the Attorney General is prosecuting or threatening to prosecute this crime. [D.E. 1, ¶ 22]. In contrast, a review of the Opinions issued by the Attorney General's Office, pursuant to N.C.G.S. § 114-2(5), reveals no instance in which the Attorney General has issued an Opinion regarding the statute under challenge.[5] A search of the opinions issued by the North Carolina appellate courts similarly revealed no instance in which the Attorney General defended a conviction under section 163-275(5). Finally, the undersigned has been unable to locate any records of the Attorney General having been requested to prosecute a violation of 163-275(5) by a local district attorney, pursuant to section 114-11.6.

Accordingly, because Plaintiffs cannot show a connection between the enforcement and prosecution of the statute, the *Ex parte Young* exception to the Eleventh Amendment does not apply and the State's immunity bars the claims. Moreover, the NCSBE Defendants and the Attorney General have not engaged in any ongoing conduct in violation of federal law, and therefore, are improper parties to this lawsuit because they do not qualify as "a person" for the purposes of a Section 1983 claim.

### B. Plaintiffs Lack Standing.

Even if the Defendants were not entitled to Eleventh Amendment immunity, this

---

[5]     https://ncdoj.gov/legal-services/legal-opinions-directory/.

action nevertheless should be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing to sue. Under Article III of the United States Constitution, this court's subject matter jurisdiction is limited to deciding "cases" and "controversies." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750 (1984); *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Standing is "an integral component of the case or controversy requirement." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks omitted); *see, e.g., Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 Fed. Appx. 244, 250 (4th Cir. 2015). If a plaintiff has not suffered an injury, there is no standing, *see Allen v. Wright*, 468 U.S. 737, 750-66 (1984), and the matter should then be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g., White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005).

To satisfy Article III's standing requirement, a plaintiff must establish the following:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Id.*

Plaintiffs bear the burden of establishing the elements of standing and must support each element with sufficient factual allegations. *White Tail Park, Inc.*, 413 F.3d at 458. Moreover, "[t]he standing requirement must be satisfied by individual and organizational plaintiffs alike." *Id*.

### i. Plaintiffs Have Not Suffered Any Injury-in-Fact and Any Fear of Injury Is Too Attenuated to Support Standing.

As a threshold matter, Article III standing exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Beck*, 848 F.3d at 270-71 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016)). "Although 'imminence' is "concededly a somewhat elastic concept, it cannot be stretched beyond its purpose." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 n.2 (1992). Allegations of a merely possible future injury do not create standing. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

Here, Plaintiffs claim to have suffered an injury because individuals with criminal convictions are reluctant to register and vote which impedes their core mission. [D.E. 1, ¶¶ 15-16; 92-94]. Plaintiffs assert that this grows from a fear that nonparties may have concerning potential future prosecution under the challenge law. *Id.*, ¶¶ 75-77. Generally, Plaintiffs also assert that individuals with past criminal convictions and African-American voters are discouraged from attempting to vote out of fear of prosecution under this statute, even if they have no felony record. *Id.,* ¶¶78-80.

In order for these allegations to satisfy the legal standards for standing, Plaintiffs must rely upon the decisions and actions of independent persons, not named parties to this action. Such a connection is too attenuated to support standing. *See, e.g.*, *Clapper v.*

16

*Amnesty Int'l USA*, 568 U.S. 398, 414 409 (2013) (finding no standing because plaintiffs' theory of standing depended on the actions of independent actors not before the court).

Finally, Plaintiffs allege that they face the threat of prosecution under N.C.G.S. § 163-275(13). It is hard to see how section 163-275(13) would be misunderstood, as it makes it unlawful "[f]or any person falsely to make or present any certificate or other paper to qualify any person fraudulently as a voter, or to attempt thereby to secure to any person the privilege of voting, including declarations." *Id.* Plaintiffs claim that this intent requirement is so unclear that they may be prosecuted for accidentally helping a person vote who has not completed their felony sentence. [D.E. 1, ¶ 93]. This is not only speculative, but it is at odds with the plain language of the statute which sets out specific criminal conduct that Plaintiffs should be able to easily avoid under any circumstances.

Thus, Plaintiffs have failed to establish an injury in fact, relying instead on speculative future injuries, which demonstrate they lack standing in this matter.

### ii. Plaintiffs' Alleged Risk of Injury is Not Traceable to Defendants.

Plaintiffs also lack standing because they cannot show that the injury they complain of is traceable to an action by these Defendants. *Friends of the Earth*, 528 U.S. at 180-81; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976). Moreover, in a pre-enforcement challenge to the constitutionality of a statute, when a plaintiff has not yet experienced an injury, they must show that the defendant is the government official charged with enforcing the challenged statute. *Bronson v. Swensen*, 500 F.3d 1099, 1109-10 (10th Cir. 2007); *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).

17

For the reasons stated above, Plaintiffs have failed to show any connection between Defendants and the prosecutions they assert caused their injuries. The Defendants have no prosecutorial authority under the statute. Nor is there any argument here that Defendants have ever prosecuted or threatened to prosecute this violation. Thus, Plaintiffs' claimed injuries are not traceable to the conduct of the Defendants.

### iii. Plaintiffs' Proposed Remedy Does Not Redress the Alleged Injuries.

The final requirement of standing requires that Plaintiffs' proposed remedy, enjoining Defendants from enforcing this statute, must redress the injury they claim. Redressability requires that the remedy "is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Beck*, 848 F.3d at 269; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC)*, 528 U.S. 167, 180-81 (2000).

Here, the Complaint suffers a fatal flaw. Under the controlling statute, the duty of prosecuting this violation is expressly reserved to local district attorneys. N.C.G.S. § 163-278. The only prosecutions under this statute which appear to have occurred, and which Plaintiffs can cite to in their Complaint, were brought by the district attorneys of Alamance and Hoke Counties. [D.E. 1, ¶¶ 4, 50, 53]. And yet, Plaintiffs have named no district attorney in this lawsuit. As a result, this Court could grant exactly what Plaintiffs are requesting, an injunction which bars Defendants from prosecuting this crime, and all district attorneys would be free to continue prosecutions. Thus, the proposed remedy is no remedy at all, and Plaintiffs therefore lack standing.

18

## III. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Should this Court determine that jurisdiction exists and no immunity applies, the Complaint should still be dismissed because it fails to state a claim upon which relief can be granted. First, Plaintiffs lack an essential element of any 42 U.S.C. § 1983 claim because they have failed to allege that any action by these Defendants deprived them of their rights. Second, Plaintiffs have failed to state a legally viable claim to support a Due Process violation.

### A. Defendants Took No Action to Deprive Plaintiffs of Their Rights.

As stated above, Congress has expressly limited liability under 42 U.S.C. § 1983 to persons acting under color of state law to deprive a plaintiff of a right secured by the Constitution and laws of the United States. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). As argued in Part II above, Plaintiffs failed to allege that Defendants took or threatened any action against Plaintiffs in violation of their rights. Thus, Plaintiffs have failed to assert an essential element of a claim under § 1983, which is the statutory basis for both of their constitutional claims.

Instead, the Complaint blames local district attorneys for every alleged wrong. [D.E. 1, ¶¶ 4, 50, 53]. That makes sense; violations of this statute must be prosecuted by district attorneys. N.C.G.S. § 163-278. NCSBE Defendants cannot prosecute this crime because they are only permitted by statute to conduct investigations, not prosecutions. N.C.G.S. § 163-22(d). And Plaintiffs make no allegations that the Attorney General has

19

prosecuted or threatened to prosecute this crime.  [D.E. 1, ¶ 22].

Thus, the NCSBE Defendants and the Attorney General have not engaged in any ongoing conduct in violation of federal law, and therefore, are improper parties to this lawsuit because they do not qualify as "a person" for the purposes of a Section 1983 claim.

### B.  The Statute is Not Unconstitutionally Vague.

Plaintiffs assert that the statute in question should be ruled void for vagueness in violation of the Due Process Clause.  The United States Supreme Court has recognized that state legislatures are permitted to enact strict liability offenses.  *Lambert v. California*, 355 U.S. 225, 228 (1957) ("conduct alone without regard to intent of the doer is often sufficient" for criminal liability; "[t]here is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition").  The Due Process Clause prohibits a "criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015).  The question of vagueness under the Due Process Clause requires a showing that the statutes is "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'"  *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495 n.7 (1982) (quoting *Coates* v. *City of Cincinnati*, 402 U.S. 611, 614 (1971)).

Under these standards, the statute under challenge does not violate due process. Section 163-275(5) contains a comprehensible standard of criminally prohibited conduct,

in that persons who have been "convicted of a crime which excludes the person from the right of suffrage," cannot vote "without having been restored to the right of citizenship in due course and by the method provided by law." N.C.G.S. § 163-275(5). The North Carolina Constitution, article VI, § 2(4), brings all felonies within the class of crimes that "exclude the person from the right of suffrage." And section 13-1 of the General Statutes "automatically restore[s]" the right to vote for persons who commit felonies upon "[t]he unconditional discharge of an inmate, of a probationer, or of a parolee" by the state or federal agency "having jurisdiction" of that person. N.C.G.S. §§ 13-1(1), (4), (5).

Plaintiff argues "unconditional discharge" is not defined in section 13-1, but that does not render it vague, as its plain meaning is obvious in the context of the statute and its references to incarceration, probation, and parole, and the fact that the "discharge" must be by the governmental agency "having jurisdiction of that person." *Id.* Whether a person is serving a felony sentence in prison or under supervision by a parole or probation officer, once that person is no longer under any supervision for their felony sentence, they may lawfully register and vote.

Accordingly, North Carolina law provides a comprehensible standard of conduct to follow. *Hoffman Estates*, 455 U.S. at 495 n.7. If an ordinary person were to read the statutes, and that person had been convicted of a felony, the next question they must ask themselves is whether they continue to be supervised by the government for that conviction. This inquiry can be answered by any layperson who has been convicted of a felony. They will know whether they are still incarcerated, or are still required to make court appearances for their conviction, or are still required to be in contact with their

21

probation or parole officer. If they remain subject to such conditions, they know not to vote.

The implied argument from the sixteen prosecutions detailed in Plaintiffs' Complaint is that the statute should be declared unconstitutional because some individuals are not aware of its existence.[6] [D.E. 1, ¶¶ 50-55]. This ignores the maxim that ignorance of the law is no excuse. *Lambert*, 355 U.S. at 228; *United States v. Talebnejad*, 460 F.3d 563, 570 (4th Cir. 2006). In *Lambert*, the Supreme Court held that a strict liability crime violated the notice requirement of due process. 355 U.S. at 228. However, as the Fourth Circuit noted in discussing *Lambert*, "[t]he key to the ruling of the Court was its characterization of the conduct at issue as 'wholly passive,' in that violation of the ordinance was 'unaccompanied by any activity whatever.'" *Talebnejad*, 460 F.3d at 570 (quoting *Lambert*, 355 U.S. at 228). *Lambert* involved a failure by the defendants to register themselves with local police after being convicted of a felony when she was not aware she had to do so. 355 U.S. at 228-29.

Here, this is not a case of passive conduct leading to a conviction, but active conduct in violation of a statute that has existed for 120 years. Thus, Plaintiffs' argument here fails because any mistake of law defense based on lack of notice does not rise to the level of a

---

[6] In any case, that argument is best addressed in an as-applied case-by-case challenge that evaluates circumstances of each individual case, rather than in facial challenge to a criminal statute Plaintiffs purport to mount here. *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) (citing *United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) ("Facial vagueness challenges to criminal statutes are allowed only when the statute implicates First Amendment rights. Accordingly, we will only consider the "as applied" challenge.")

due process violation.  As a matter of law, Plaintiffs have not alleged a legally viable claim that this statute violates Due Process.  As a result, this claim should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against the State Board should be dismissed because the Court lacks jurisdiction and Plaintiffs fail to state a claim upon which relief can be granted.

Respectfully submitted this the 16th day of October, 2020.

**JOSHUA H. STEIN**
**Attorney General**

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General
N.C. State Bar No. 52809
E-mail: tsteed@ncdoj.gov

Paul M. Cox
Special Deputy Attorney General
N.C. State Bar No. 49146
E-mail: pcox@ncdoj.gov

Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. State Bar No. 31846
Email: ovysotskaya@ncdoj.gov

N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602-0629
Telephone:  (919) 716-6567
Facsimile:  (919) 716-6761

*Attorneys for Defendants*

23

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 7.3(d)</u>

Undersigned counsel certifies that the present filing is in compliance with Local Rule 7.3(d) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina including the body of the brief, heading and footnotes, and contains no more than 6,250 words as indicated by Word, the program used to prepare the brief.

Respectfully submitted this the 16th day of October, 2020.

/s Terence Steed
Terence Steed
Special Deputy Attorney General