# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE and ACTION NC,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; and JOSH STEIN, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA,<br><br>    Defendants. | Civil Action No. 1:20-cv-00876<br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY <u>INJUNCTION</u>** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT.........................................................................................................4

I.     Defendants Fall Under the *Ex Parte Young* Exception to Eleventh
       Amendment Immunity...............................................................................4

       A.    There Is a Credible Threat That Defendants Will Enforce the Strict
             Liability Voting Law. ..................................................................5

       B.    The NCSBE Defendants Have Clear Statutory Authority in
             Connection with the Enforcement of the Strict Liability Voting Law..........5

       C.    The Attorney General Plainly Has "Some Connection" to the
             Enforcement of the Strict Liability Voting Law. .........................6

II.     Article III's Standing Requirements Are Satisfied Here.......................................8

       A.    Plaintiffs Have Suffered an Injury-in-Fact. .................................8

       B.    Plaintiffs Have Demonstrated Traceability.................................9

       C.    Plaintiffs Have Demonstrated Redressability. .............................9

III.    The District Attorneys Are Not Necessary Parties. .............................................10

IV.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ..........................11

V.     The Balance of the Equities and the Public Interest Weigh Heavily in Favor
       of the Issuance of a Preliminary Injunction.........................................................12

CONCLUSION.....................................................................................................13

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*281 Care Committee v. Arneson,*
   638 F.3d 621 (8th Cir. 2011)...................................................................................7, 8

*ACLU of Missouri Found. v. Lombardi,*
   59 F. Supp. 3d 954 (W.D. Mo. 2014)...........................................................................5

*Action NC v. Strach,*
   216 F. Supp. 3d  597 (M.D.N.C. 2017) ......................................................................10

*City of Greensboro v. Guilford Cty. Bd. of Elec.,*
   No. 1:15-cv-559, 2016 WL 6810965 (M.D.N.C. Mar. 23, 2016).................................12

*Common Cause Indiana v. Lawson,*
   937 F.3d 944 (7th Cir. 2019).....................................................................................10

*Culinary Workers Union, Local 226 v. Del Papa,*
   200 F.3d 614 (9th Cir. 1999).......................................................................................7

*Deal v. Mercer Cty. Bd. of Ed.,*
   911 F.3d 183 (4th Cir. 2018).................................................................................9, 11

*Democratic Exec. Comm. of Fla. v. Lee,*
   915 F.3d 1312 (11th Cir. 2019)...................................................................................7

*Doe v. DeWine,*
   910 F.3d 842 (6th Cir. 2018).......................................................................................5

*Grabarcyk,*
   2020 WL 2441418 .......................................................................................................8

*Kadel v. Folwell,*
   446 F. Supp. 3d 1 (M.D.N.C. Mar. 11, 2020)...........................................................11

*McBurney v. Cuccinnelli,*
   616 F.3d 393 (4th Cir. 2010).......................................................................................9

*Meredith v. Stein,*
   355 F. Supp. 3d 355 (E.D.N.C. 2018) .........................................................................5

ii

*Mobil Oil Corp. v. Attorney General of Com. of Va.*,
    940 F.2d 73 (4th Cir. 1991) ...................................................................6

*Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*,
    No. 1:17-cv-53, 2019 WL 3429120 (M.D.N.C. July 30, 2019) .............7, 11

*North Carolina Right to Life, Inc. v. Bartlett*,
    168 F.3d 705 (4th Cir. 1999) ................................................................6

*Poindexter v. Strach*,
    324 F. Supp. 3d 625 (E.D.N.C. 2018) ................................................15

*PSINet Inc. v. Chapman*,
    108 F. Supp. 2d 611 (W.D. Va. 2000) ...............................................13

*South Carolina Wildlife Fed'n v. Limehouse*,
    549 F.3d 324 (4th Cir. 2008) ................................................................5

*Taliaferro v. NCSBE*,
    No. 5:20-cv-411-BO, 2020 WL 5709252 ............................................15

*United States v. County of Arlington*,
    669 F.2d 925 (4th Cir. 1982) ..............................................................13

*Whole Woman's Health Alliance v. Hill*,
    377 F. Supp. 3d 924 (S.D. Ind. 2019) ..................................................9

*Women's Medical Prof. Corp. v. Voinovich*,
    130 F.3d 187 (6th Cir. 1997) ..............................................................13

**Rules**

FED. R. CIV. P. 19(a)(1) .............................................................................12

**Laws**

N.C.G.S. § 114-11.6 .............................................................................3, 7, 8

N.C.G.S. § 13-1 .........................................................................................14

N.C.G.S. § 163-19 ........................................................................................2

N.C.G.S. § 163-22(d) .......................................................................2, 3, 6, 9

iii

N.C.G.S. § 163-27.................................................................................2, 7

N.C.G.S. § 163-275(5) ...............................................................................1

N.C.G.S. § 163-278........................................................................2, 3, 6, 8

N.C.G.S. § 163-28.......................................................................................2

N.C.G.S. § 7A-61........................................................................................3

iv

# INTRODUCTION

Unable to respond to the merits of Plaintiffs' claims, Defendants ground their opposition on Eleventh Amendment immunity and standing. Defendants' arguments are unavailing because each named Defendant has specific statutory responsibilities in connection with the enforcement of N.C.G.S. § 163-275(5) (the "Strict Liability Voting Law") and Defendants have not disclaimed an intent to enforce this law.

The chilling effect of recent high-profile prosecutions under this law has forced Plaintiffs to divert resources from their voter registration and get-out-the-vote activities to educate and reassure eligible voters with criminal convictions that they can safely vote without fear of prosecution. Enjoining Defendants from exercising their statutory authority to enforce the Strict Liability Voting Law will substantially alleviate the widespread fear of prosecution under this law and redress Plaintiffs' injuries. That a similar case could be brought against the district attorneys does not render them necessary parties for the relief Plaintiffs seek specifically from Defendants.

As to Defendants' meritless timeliness objections, Plaintiffs brought suit and moved for injunctive relief just weeks after the North Carolina Superior Court's September 4, 2020 decision restoring voting rights to individuals who have completed all aspects of their felony sentences except for financial obligations, but denying relief as to other individuals on post-release supervision or parole. Plaintiffs acted expeditiously when they discovered that eligible voters with criminal convictions remain fearful of voting because of the Strict Liability Voting Law. Absent injunctive relief from this

1

Court, Plaintiffs will be irreparably injured during and in the wake of the upcoming General Election.

## BACKGROUND

The North Carolina State Board of Elections ("NCSBE") is an independent state government agency comprised of five Governor-appointed members. N.C.G.S. §§ 163-28, 163-19. The NCSBE's Executive Director is appointed by the NCSBE's members, and serves as the state's "chief State elections official." *Id.* § 163-27.

The NCSBE has a "duty...to investigate any violations" of the criminal statutes governing voting and elections, including the Strict Liability Voting Law. *Id.* § 163-278.[1] *See also id.* § 163-22(d) (the NCSBE "shall investigate when necessary or advisable, the administration of election laws, frauds and irregularities in elections").[2] The NCSBE may subpoena witnesses and obtain the State Bureau of Investigation's assistance in connection with such investigations, *id.* § 163-278, and "shall report violations of the election laws to the Attorney General or district attorney...for further investigation and prosecution." *Id.* § 163-22(d); *see also* Dkt. 3-2 at 3.

District attorneys are responsible for prosecuting "all criminal actions," *Id.* § 7A-61, and are specifically empowered to "prosecute any violations" of voting-related

---

[1] Under N.C.G.S. § 163-278, the NCSBE shares the duty to investigate election crimes with district attorneys.

[2] *See also* Dkt. 3-2 at 3; Dkt. 3-3 at 2; Dkt. 3-5 at 4. Defendants have not challenged the authenticity or admissibility of the exhibits submitted in support of Plaintiffs' Motion.

2

criminal statutes. *Id.* § 163-278. The Attorney General is statutorily obligated to "consult with and advise" district attorneys "when requested by them, in all matters pertaining to the duties of their office." *Id.* § 114-2(4). The Attorney General must also provide "his opinion upon all questions of law submitted to him" by any State officer. *Id.* § 114-2(5). The Attorney General may also directly participate in criminal prosecutions. *Id.* § 114-11.6 (providing that "[t]he attorneys assigned to" the Special Prosecution Division "shall be available to prosecute or assist in the prosecution of criminal cases when requested to do so by a district attorney and the Attorney General approves"). Moreover, the Attorney General is solely responsible for criminal appeals. *Id.* § 114-2(1).

Following an audit of the 2016 election, the NCSBE investigated violations of the Strict Liability Voting Law and referred cases for prosecution. Dkt. 3-2 at 5, 22-27; Dkt. 3-3 at 3-4. The NCSBE provided district attorneys with "specific voter documents" and "evidence showing the defendant was serving an active felony sentence." Dkt. 3-3 at 4.

In its referral letter to the Hoke County district attorney, the NCSBE offered to conduct "[a]dditional investigation" if needed and produce "county board of election staff…to testify." *Id.* The Hoke County district attorney subsequently brought charges against four individuals, Dkt. 3-1 at 130:18-23, but other district attorneys "summarily declined" to prosecute. Dkt. 3-5 at 2.

In 2017, the NCSBE expressed concern that the "trend towards declination on felon voter cases will continue without corrective action, and suggested that the Department of Public Safety and the Administrative Office of the Courts adopt "revisions

3

to the active felon notification process" to facilitate prosecutions and convictions under the Strict Liability Voting Law. *Id.* at 3-4.

In 2019, the NCSBE issued a policy prioritizing the investigation of "[k]nowing or intentional violations." Dkt. 17-4 at 4. This policy is subject to change "without notice." *Id.* Nothing in the policy "restricts" the NCSBE's authority to investigate unintentional violations. *Id.* Neither the NCSBE nor the Attorney General has disclaimed enforcement of the Strict Liability Voting Law.

**ARGUMENT**

## I. Defendants Fall Under the *Ex Parte Young* Exception to Eleventh Amendment Immunity.

"Where a state law is challenged as unconstitutional, a defendant must have some connection with the enforcement of the act in order to properly be a party to the suit" under the *Ex parte Young* exception to Eleventh Amendment immunity. *South Carolina Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008).[3] However, "the *Ex parte Young* exception does not require a defendant to have the authority to commence civil or criminal proceedings against the parties affected by an unconstitutional act." *ACLU of Missouri Found. v. Lombardi*, 59 F. Supp. 3d 954, 959 (W.D. Mo. 2014); *see also Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (*Ex parte Young* exception applied to claims against the Ohio Attorney General despite his "lack of direct criminal enforcement authority" as to the challenged statute).

---

[3] Internal citations, alterations and quotations are omitted throughout.

4

## A. There Is a Credible Threat That Defendants Will Enforce the Strict Liability Voting Law.

A "credible threat" of enforcement "may exist…even when the government has not affirmatively stated its intention to" enforce the challenged law. *Meredith v. Stein*, 355 F. Supp. 3d 355, 363 (E.D.N.C. 2018). Here, there is a credible threat of enforcement because Defendants have not affirmatively disclaimed their intent to enforce the Strict Liability Voting Law. *See id.*; *see also generally North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710-11 (4th Cir. 1999) ("credible threat of prosecution" where the NCSBE provided "no guarantee" that it would not enforce a criminal election statute against plaintiff); *Mobil Oil Corp. v. Att'y Gen. of the Commonwealth of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (credible fear of enforcement where the Attorney General had not "disclaimed any intention of exercising…enforcement authority").

## B. The NCSBE Defendants Have Clear Statutory Authority in Connection with the Enforcement of the Strict Liability Voting Law.

As detailed above, the NCSBE is statutorily empowered to investigate violations of the Strict Liability Voting Law and refer such cases for prosecution. N.C.G.S. §§ 163-22(d), 163-278. Following the 2016 election audit, the NCSBE actively encouraged prosecutions under the Strict Liability Voting Law, and took steps to ensure that district attorneys would have the evidence to successfully prosecute future violations. *Ex parte Young*'s "some connection" requirement is thus satisfied as to the NCSBE defendants. *See, e.g.*, *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (*Ex parte Young* exception applied where the Nevada Attorney General threatened

5

to refer a violation of the challenged statute to local authorities for prosecution).

The *Ex parte Young* exception applies to the NCSBE's Executive Director for the additional reason that she serves as the "chief State election official." N.C.G.S. § 163-27. *See, e.g.*, *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019).

### C. The Attorney General Plainly Has "Some Connection" to the Enforcement of the Strict Liability Voting Law.

This Court has previously held that the Attorney General's statutory authority pursuant to N.C.G.S. § 114-11.6 to prosecute violations of criminal statutes at a district attorney's request is a sufficient "connection" to the enforcement of criminal statutes for *Ex parte Young* purposes. *See Nat'l Ass'n for Rational Sexual Offense Laws v. Stein*, No. 1:17-cv-53, 2019 WL 3429120, at *5 (M.D.N.C. July 30, 2019); *Does 1-5 v. Cooper*, 40 F. Supp. 3d 657, 673 (M.D.N.C. 2014); *Grabarczyk v. Stein*, No. 5:19-cv-48-BO, 2020 WL 2441418, at *3 (E.D.N.C. May 12, 2020). In *281 Care Comm. v. Arneson*, the Eighth Circuit found the *Ex parte Young* exception applicable where the Minnesota Attorney General had prosecutorial authority under a similar provision. 638 F.3d 621, 632-33 (8th Cir. 2011).

Defendants argue that N.C.G.S. § 114-11.6 "gives way to" N.C.G.S. § 163-278, which vests district attorneys with the authority to prosecute voting-related crimes. Opp. at 11, n.4. But nothing in N.C.G.S. § 163-278 abrogates the Attorney General's authority to prosecute violations of the Strict Liability Voting Law upon a district attorney's request. Defendants later concede as much by noting that they are not aware of any

6

instance in which a district attorney has asked the Attorney General to prosecute a violation of the Strict Liability Voting Law pursuant to N.C.G.S. § 114-11.6. *Id.* at 12. In *Grabarczyk*, the court found it irrelevant for *Ex parte Young* purposes that the Attorney General had "not been asked…by a local district attorney to prosecute…violations" of the challenged criminal statute. 2020 WL 2441418, at *3. The court held that "[t]he fact that the Attorney General has not exercised his power to prosecute [such] violations does not alter the analysis as to whether he has the authority to do so." *Id.*

The Attorney General's exclusive statutory obligation to defend convictions under the Strict Liability Voting Law on appeal also satisfies *Ex parte Young*. *See Whole Woman's Health All. v. Hill*, 377 F. Supp. 3d 924, 935-36 (S.D. Ind. 2019) (*Ex parte Young* exception applied where the Indiana Attorney General had "complete and exclusive control over the criminal appeals process," even though he had no authority to "initiate criminal prosecutions"). Additionally, the Attorney General has statutory authority to conduct "further investigation" of violations of the Strict Liability Voting Law, upon referral by the NCSBE. N.C.G.S. § 163-22(d).

In contrast, the Virginia Attorney General had no specific statutory responsibilities with respect to the challenged statute in *McBurney v. Cuccinnelli*, 616 F.3d 393 (4th Cir. 2010), a case Defendants cite.

7

## II.   Article III's Standing Requirements Are Satisfied Here.

Article III standing requires that plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cty. Bd. of Ed.*, 911 F.3d 183, 187 (4th Cir. 2018).

### A.   Plaintiffs Have Suffered an Injury-in-Fact.

Defendants incorrectly argue that Plaintiffs have suffered no injury because any harm originates from "the decisions and actions of independent persons." Opp. at 14. It is well-established that voter advocacy organizations suffer an injury-in-fact when an unconstitutional voting-related law impedes their core mission and forces them to divert resources to address the impact of that law. *See Action NC v. Strach*, 216 F. Supp. 3d 597, 616-18 (M.D.N.C. 2017) ("The Supreme Court has held that if a defendant's practices have hampered an organization's stated objectives causing the organization to divert its resources as a result, then there can be no question that the organization has suffered injury in fact."); *Common Cause Ind. v. Lawson*, 937 F.3d 944, 952-53 (7th Cir. 2019) (collecting circuit court cases upholding standing where "voter-advocacy organizations…challenged election laws based on similar drains on their resources").

Here, Plaintiffs attest that they have been forced to divert substantial time and resources from their broad-based voter registration and get-out-the-vote efforts to educate eligible individuals with criminal convictions that they may safely vote without fear of prosecution under the Strict Liability Voting Law. Dkt. 3-22 at ¶ 11; Dkt. 3-23 at ¶ 10.

8

Defendants do not even address, much less dispute these attestations. Plaintiffs have clearly demonstrated an injury-in-fact sufficient for standing purposes.

### B. Plaintiffs Have Demonstrated Traceability

The traceability requirement is not "rigid" and "merely requires…a genuine nexus" "between the defendant's conduct and the plaintiff's injury." *Kadel v. Folwell*, 446 F. Supp. 3d 1, 10 (M.D.N.C. Mar. 11, 2020). Traceability "is not equivalent to a requirement of tort causation." *Id.*

Here, Plaintiffs attest that they have suffered an injury-in-fact because of the chilling effect caused by the fear of prosecution under the Strict Liability Voting Law, and the necessary expenditure of resources to counteract that fear. Dkt. 3-22 at ¶¶ 10-11; Dkt. 3-23 at ¶ 10. Defendants do not dispute that eligible voters with criminal convictions are afraid to vote because of this law. This well-founded fear is sufficient to satisfy traceability where, as here, Defendants have not disclaimed any intent to enforce the law. *See Nat'l Ass'n for Rational Sexual Offense Laws*, 2019 WL 3429120, at *9 (traceability satisfied by the "causal connection between the injury…*i.e.*, the fear and risk of future prosecution by Defendants" and Defendants' authority as to the enforcement of the challenged statute).

### C. Plaintiffs Have Demonstrated Redressability.

The redressability "requirement is not onerous." *Deal*, 911 F.3d at 189. "Plaintiffs need not show that a favorable decision will relieve their every injury. Rather, plaintiffs

9

need only show that they personally would benefit in a tangible way from the court's intervention." *Id.*

Here, Plaintiffs would benefit greatly from an injunction prohibiting Defendants from enforcing the Strict Liability Voting Law. Such an injunction would ensure that the NCSBE could not investigate or refer for prosecution violations of the Strict Liability Voting Law. An injunction would also prohibit the Attorney General from investigating or prosecuting violations of the Strict Liability Voting Law, and require the Attorney General to opine, if requested, that the law is unconstitutional. Such an injunction would substantially alleviate the fear of prosecution by eligible voters with criminal convictions, and reduce the resources that Plaintiffs must expend to educate and reassure eligible voters.

## III.    The District Attorneys Are Not Necessary Parties.

Not every proper party is a necessary party. *See, e.g.*, *City of Greensboro v. Guilford Cty. Bd. of Elec.*, No. 1:15-cv-559, 2016 WL 6810965, at *1 (M.D.N.C. Mar. 23, 2016). Under FED. R. CIV. P. 19(a)(1), a party is necessary if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action" and an adverse ruling could affect that interest or lead to inconsistent obligations. "Complete relief refers to relief as between the persons already parties, not as between a party and the absent person." *United States v. Cty. of Arlington*, 669 F.2d 925, 929 (4th Cir. 1982).

10

As discussed above, this Court can accord the complete relief Plaintiffs seek from Defendants without the joinder of every district attorney in North Carolina. *See, e.g.*, *Women's Med. Prof. Corp. v. Voinovich*, 130 F.3d 187, 211 (6th Cir. 1997) (all county prosecutors were not necessary parties to constitutional challenge to a criminal statute). Moreover, "[i]t is well established that no one, the government included, has an interest in the enforcement of an unconstitutional law. *PSINet Inc. v. Chapman*, 108 F. Supp. 2d 611, 627 (W.D. Va. 2000).

**IV.     Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

Defendants do not assert that the Strict Liability Voting Law satisfies the Equal Protection Clause and offer not a single factual or legal argument in opposition to Plaintiffs' equal protection challenge. Opp. at 19. This Court should therefore conclude that Plaintiffs are likely to succeed on the merits of this claim.

In response to Plaintiffs' void-for-vagueness challenge, Defendants present a purportedly "obvious" definition of the term "unconditional discharge," cobbled together from three separate subsections of N.C.G.S. § 13-1. Opp. at 18. Defendants claim that N.C.G.S. § 13-1 provides a "comprehensible standard" by requiring "ordinary person[s]" to "ask themselves…whether they continue to be supervised by the state for [the relevant] conviction." *Id.* That Defendants had to combine different sections of the statute alone demonstrates that this invented "standard" appears nowhere in the Strict Liability Voting

11

Law or N.C.G.S. § 13-1.[4] Defendants' spurious arguments confirm that the Strict

Liability Voting Law is hopelessly void-for-vagueness.

## V. The Balance of the Equities and the Public Interest Weigh Heavily in Favor of the Issuance of a Preliminary Injunction.

Defendants baselessly claim that Plaintiffs' "delay in bringing suit" weighs against

a preliminary injunction. Opp. at 2. In fact, Plaintiffs filed their complaint and

simultaneously moved for a preliminary injunction just 20 days after the North Carolina

Superior Court issued a decision restoring voting rights to thousands of individuals with

felony convictions. Plaintiffs sought injunctive relief as soon as Plaintiffs determined that

many eligible voters remain fearful of voting because of the Strict Liability Voting Law.

*See generally* Dkt. 3-22 at ¶¶ 11-12; Dkt. 3-23 at ¶¶ 11-12.

Defendants cannot claim any prejudice from this fully-briefed Motion where the

merits concern pure questions of law. Defendants have not challenged a single factual

assertion, or asked for discovery in connection with this Motion. Moreover, the issuance

of an injunction will not prejudice or burden Defendants, as they claim that enforcing the

Strict Liability Voting Law is not a current priority. Injunctive relief would not require

Defendants to change voting practices or procedures on the eve of an election. *Cf.*

*Taliaferro v. NCSBE*, No. 5:20-cv-411-BO, 2020 WL 5709252 (E.D.N.C. Sept. 24, 2020)

(granting preliminary injunctive relief requiring the NCSBE to implement voting

---

[4] Defendants' remaining arguments concerning *Lambert v. California* and its progeny are irrelevant because *Lambert* did not concern a void-for-vagueness claim.

12

modifications for blind individuals "in sufficient time for the November 3, 2020 election").

*Poindexter v. Strach* is instructive. There, the NCSBE's Executive Director opposed a preliminary injunction in a constitutional challenge to an election law based on "plaintiffs' delay in seeking relief." 324 F. Supp. 3d 625, 634 (E.D.N.C. 2018). The court found plaintiffs "established a likelihood of success on the merits," and would be "irreparably harmed if [the law] was followed for [the upcoming] election." *Id.* The court further observed that that the NCSBE's Executive Director "offered no argument or evidence of injury to the rights of voters or the state of North Carolina should defendant be enjoined." *Id.* at 635. The court held that the balance of equities tipped in plaintiffs' favor and the public interest would be "best served by issuance of a preliminary injunction." *Id.* The Court should reach the same decision here.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion should be granted. Plaintiffs respectfully request that the Court issue an injunction before the close of voter registration for the 2020 General Election.

13

Dated: October 20, 2020

By:     /s/ Allison J. Riggs

SIMPSON THACHER & BARTLETT LLP
Jonathan K. Youngwood (*specially appearing*)
Nihara K. Choudhri (*specially appearing*)
Andrew B. Garber (*specially appearing*)
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
jyoungwood@stblaw.com
nchoudhri@stblaw.com
andrew.garber@stblaw.com

SOUTHERN COALITION FOR SOCIAL JUSTICE
Allison J. Riggs (State Bar No. 40028)
1415 West Highway 54, Suite 101
Durham, NC 27707
Tel: (919) 323-3380
Fax: (919) 323-3942
allisonriggs@southerncoalition.org

*Attorneys for Plaintiffs*

14

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Reply in Support of Plaintiffs' Motion for a Preliminary Injunction contains 3,105 words (including headings and footnotes) as measured by Microsoft Word.

/s/ Allison J. Riggs
Allison J. Riggs

15

## CERTIFICATE OF SERVICE

I certify that on the 20th day of October, 2020, the foregoing Reply in Support of Plaintiffs' Motion for a Preliminary Injunction, and all Declarations thereto, was served by electronic mail via CM/ECF to Defendants' Counsel, Terrence Steed, Special Deputy Attorney General at the addresses tsteed@ncdoj.gov, with consent of counsel Alec Peters, Chief Deputy Attorney General to accept service in this manner.

/s/ Allison J. Riggs
Allison J. Riggs