UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

_____ )     1:20-CV-876
                                 )
NORTH CAROLINA A. PHILIP         )
RANDOLPH INSTITUTE, et al.,      )
                                 )
          Plaintiffs;            )
                                 )
          vs.                    )
                                 )
NORTH CAROLINA STATE             )
BOARD OF ELECTIONS, et al.,      )
                                 )
          Defendants.            )
_____ )

OCTOBER 22, 2020
MOTIONS HEARING
BEFORE THE HONORABLE JOE L. WEBSTER
UNITED STATES DISTRICT MAGISTRATE JUDGE

N. Annette P. Myers, CVR-CM-M
WordServices, Inc.
3103 Virginia Pine Lane
Apex, North Carolina  27539
919.548.4914
wanda@mywordservices.com
Stenomask

APPEARANCES:

On behalf of the Plaintiffs:

JONATHAN K. YOUNGWOOD, ESQ.
Simpson Thacher and Bartlett, LLP
425 Lexington Avenue
New York, NY 10017-3954
212.455.3539
jyoungwood@stblaw.com


ALLISON JEAN RIGGS, ESQ.
MITCHELL BROWN, ESQ.
Southern Coalition for Social Justice
1415 W. Highway 54, Suite 101
Durham, NC 27707
919.323.3380, Ext 117
allison@southerncoalition.org


On behalf of the Defendants:

TERENCE P. STEED, ESQ.
PAUL M. COX, ESQ.
OLGA E. VYSOTSKAYA DE BRITO, ESQ.
North Carolina Department of Justice
P. O. Box 629
Raleigh, North Carolina  27602
919.716.6567
tsteed@ncdoj.gov
pcox@ncdoj.gov
ovysotskaya@ncdoj.gov

1          (Thursday, October 22, 2020, commencing at 10:02 a.m.)

2          THE COURT:  Good morning everyone.  If everyone is

3    ready, we are going to proceed in the matter of *North Carolina*

4    *A. Philip Randolph Institute, et al., versus North Carolina*

5    *State Board of Elections, et al.*

6          I will first have the attorneys for the plaintiffs

7    and then defendants to introduce yourselves, and then we will

8    proceed further.

9          MR. YOUNGWOOD:  Good morning, Your Honor.  Jonathan

10   Youngwood for the plaintiffs.

11         MR. BROWN:  Good morning, Your Honor.  Mitchell Brown

12   for the plaintiffs.

13         MS. RIGGS:  Good morning, Your Honor.  Allison Riggs

14   for the Southern Coalition for Social Justice on behalf of the

15   plaintiffs.

16         THE COURT:  All right, thank you.

17         MR. STEED:  Good morning, Your Honor.  Terence Steed,

18   Special Deputy Attorney General with the North Carolina

19   Department of Justice, on behalf of the defendants.

20         MR. COX:  Good morning, Your Honor.  Paul Cox with

21   the North Carolina Department of Justice.

22         MS. VYSOTSKAYA:  Good morning.  Olga Vysotskaya for

23   the North Carolina Department of Justice.

24         THE COURT:  Thank you.

25         My thought this morning is that we would proceed as

1  follows.  If you have any thoughts about it, I will be happy to

2  hear you on it, but I would -- I am going to have the

3  plaintiffs to argue first for 30 minutes or so.  We would then

4  take a ten-minute recess.

5          I know that if you are like me, you have found that

6  it takes a lot of energy and breath to talk through the mask

7  and so forth, but -- and then we would have the defendants

8  argue for 30 minutes.  And then we will then have the plaintiff

9  to come back for 15 or 20 minutes and the same for the

10 defendants.  And we will go from there.

11         All right.

12         Thank you, Madam Court Reporter, for being here

13 today, and court security and anybody else that's present.

14         MR. YOUNGWOOD:  Thank you, Your Honor, and good

15 morning.  Thank you for making time for this important hearing.

16 Just as a matter of housekeeping, I wanted to note we were in

17 communication with the Clerk and we were told that the Consents

18 would be sent out in connection with -- which the Court would

19 have authority for the matter.  Those were not received and so

20 they have not been returned.  But with that, I will proceed

21 with argument.

22         As Your Honor knows, this lawsuit challenges a

23 racially discriminatory and unconstitutionally vague North

24 Carolina statute that criminalizes voting by individuals with

25 felony convictions, who mistakenly believe they are eligible to

1  vote.

2        Virtually every other election crime punishable as a

3  Class 1 felony in North Carolina requires intent.  This one

4  does not.

5        This unjust and unconstitutional law was originally

6  enacted with racially discriminatory intent and continues to

7  disproportionally impact black individuals in North Carolina.

8  Recent high -- high-profile prosecutions under Section 163-

9  275(5) of individuals who mistakenly believed they were

10  eligible to vote has caused widespread fear of voting in the

11  state.

12        We are here, Your Honor, this morning on the

13  preliminary injunction.  The requirements are -- under the law

14  are clear.  Likelihood success on the merits, irreparable harm,

15  balance of hardship, and whether or not the injunction is in

16  the public interest.

17        I want to address each of the four factors.  I will

18  do the third through fourth first, and then I will return to

19  the merits, which is more focused with the discussion.

20        THE COURT:  Well, let me -- and I meant to say at the

21  outset, before we get into the preliminary injunction, the

22  issue concerning subject matter jurisdiction and standing.  So

23  I think that would be in order to hear that first.

24        MR. YOUNGWOOD:  I am happy to go to those topics, and

25  then I will come back, Your Honor.

1        So the defendants have raised *Ex Parte Young* and

2    immunity.  The standard -- so I will address *Ex Parte Young*

3    first and then the standing of the plaintiffs to bring these

4    claims second, in response to Your Honor's question.

5        *Ex Parte Young* requires that there be some connection

6    between the defendant and the enforcement of the alleged

7    unconstitutional law.  That standard is well-established here

8    with respect to both the State Board of Elections defendants

9    and the Attorney General.

10        As Your Honor knows, the State Board consists of five

11    members appointed by the Governor.  These members appoint an

12    executive director, who serves as the state's chief election

13    officer.  They are named as defendants.

14        The duties of the State Board and their involvement

15    with the -- this unconstitutional law is -- this

16    unconstitutional strict liability voting law are multitudes.

17    Under North Carolina Statute 163-278, it is the duty of the

18    Board of Elections and the district attorneys -- the Board of

19    Elections being here, to investigate any violations of this

20    unconstitutional law.

21        The State Board and the DAs can both subpoena

22    witnesses and get help from the State Board of Investigation in

23    this process.  The State Board is empowered to furnish the

24    district attorney a copy of its investigation.

25        As discussed in the papers, following an audit of the

2016 election the State Board investigated violations of the
strict liability law and referred cases to the DAs for
prosecution.  The State Board provide the district attorneys
with all the necessary documentation to prosecute.  In the
letter, I'm referring to Exhibit 3 to our papers, to certain
DAs, the State Board encouraged prosecution.

When certain prosecutors declined to bring charges,
the State Board wrote a letter proposing changes to the active
felon notification process to facilitate prosecutions and
convictions.

The standard under *Ex Parte Young* is easily satisfied
for the State Board defendants.

It is also satisfied for the Attorney General.  The
State Board can refer violations of the strict liability law to
the Attorney General for further investigation under 163-22(d).

If a DA requests that the Attorney General prosecute
in the first instance, the Attorney General is empowered to do
that under 114-11.6.  The Attorney General can consult with DAs
on prosecutions at their request, under Section 114-2(4).  And
significantly, the Attorney General is solely responsible for
criminal appeals flowing from the enforcement of this
unconstitutional statute.

So, but for the existence and the role of the
Attorney General, none of these cases could go through an
appellate process.

1     And finally, the Attorney General is empowered to

2 issue advisory opinions upon request on this statute as on many

3 others.

4     For those reasons, Your Honor, both on sets of

5 defendants who are named today, are -- are qualified or are

6 subject to these sections under *Ex Parte Young*, and the limited

7 immunity argument does not apply.

8     About standing, Your Honor, standing are three

9 elements and I think the parties are agreed on this, injury in

10 fact, that it is fairly traceable to the challenged conduct of

11 the defendant, and it is likely to be redressed by a favorable

12 judicial decision.  Each of those elements are easily satisfied

13 here.

14     Our plaintiffs are organizations whose core missions

15 include encouraging voting through voter registration and get-

16 out-the-vote activities.  Investigations and prosecutions under

17 the strict liability law have a chilling effect causing

18 eligible voters with criminal convictions to be afraid to vote

19 for fear of prosecution.  This chilling effect impedes

20 plaintiffs' core mission which is outlined in their

21 declarations.  To counteract this chilling effect, the

22 plaintiffs have diverted resources from their voter

23 registration and get-out-the-vote efforts to educate and

24 reassure voters.

25     This is the standard type of standing that appears in

1  voting cases such as this.  We've cited many cases on -- in --

2  in our briefs, but I would refer the Court to the *Common Cause*

3  -- *Common Cause of Indiana* case v. *Lawson*.  It is a Seventh

4  Circuit case and there are others.

5        I will go on to traceability, the second element.

6  Traceability is a fairly easily met standard here.  It requires

7  just some type of nexus between plaintiffs' injuries and

8  defendants' conduct or authority.

9        Plaintiffs' injuries:  the expenditure of resources,

10  the expenditure of efforts to counteract the fear of voting is

11  traceable to the threat of enforcement of the strict liability

12  law.

13        And in terms of redressability, Your Honor, it is not

14  required that plaintiffs demonstrate that a favorable decision

15  will relieve every possible injury they are suffering.  We need

16  only show that we would benefit -- the plaintiffs would benefit

17  in a tangible way from a Court's ruling on this motion in our

18  favor or a ruling, frankly, on the case in our favor.

19        Here, a preliminary injunction would benefit

20  plaintiffs by substantially reducing the threat of prosecution,

21  reducing the chilling effect and allowing plaintiffs to spend

22  less resources needed to reassure and educate voters that they

23  will not be subject and they are not at risk for prosecution

24  from this law.

25        If the State Board, for example, ceased investigating

1 violations of the strict liability law and ceased referring the

2 cases to DAs, there would be no cases.  The AG would not be

3 able to prosecute violations of the strict liability law at the

4 DA's request.

5          If this motion were granted, the AG could not

6 investigate violation -- violations referred to it by the State

7 Board pursuant to 163-22(d).  The AG could not defend

8 convictions on appeal.

9          Those are the elements of standing.

10          Connected to that, Your Honor, there is argument in

11 plaintiffs' brief about why other parties are not here in some

12 way that relates both, I think, to the *Ex Parte Young* arguments

13 and the standing arguments that we just discussed.  And the

14 defendants point to the DAs of the state and asked why they are

15 not also here.

16          Your Honor, they would be proper parties, but that

17 does not mean they must be parties to this case for plaintiffs

18 to get the relief that they seek.

19          There was reference to Federal Rule 19(a)(1) in terms

20 of the definition of necessary party.  And under that, the DAs

21 are not necessary parties to this.

22          The issue under Rule 19 is whether plaintiffs can get

23 the complete relief they seek from these defendants, not from

24 some potential other defendants.  And so while the DAs would be

25 proper parties, they are far from necessary parties.

1          The relief we seek that neither of these two sets of

2   defendants continue to take actions to enforce this law is

3   available absent the presence of the DAs.

4          Your Honor, unless you have questions on those two or

5   three --

6          THE COURT:  Is it --

7          MR. YOUNGWOOD:  -- issues --

8          THE COURT:  Is it the case that district attorneys

9   could possibly get information from someone other than the

10  state department of elections?

11         MR. YOUNGWOOD:  Your Honor, I can't preclude that,

12  but that is not, based on the pleadings and the facts presented

13  to this Court, how that has historically worked and

14  historically here speaking really of the last several years

15  directly, where, you know, the Board of Election conducted an

16  audit; identified hundreds of potential violators and made

17  referrals directly to DAs.

18         The DAs, in turn, at least in two counties in very

19  prominent sets of prosecutions proceeded, based on the

20  information given to them by the State Board.  It is that,

21  among others, type of act that we are seeking to bar from

22  happening in this upcoming election.

23         I also believe, Your Honor, that while there could be

24  suspicions on -- of other individuals, hypothetically again,

25  there has been no presentation of that.  To do the prosecution

1  they would still need the information from the State Board of

2  Elections to establish that there was actually a violation.  So

3  I don't believe the DAs could do it alone.

4       Your Honor, with that, I will return to the -- to the

5  PI standards and walk through those reasonably briskly but --

6  but of course, if you have questions on any.

7       The first element, Your Honor, is likelihood of

8  success on the merits.  And I think one of the most remarkable

9  things about the opposition about this hearing is on one of the

10  claims there is no -- no briefing whatsoever of substance

11  presented.  That is, the equal protection claim.

12       And so I think, at least for purposes of this

13  hearing, that needs to be conceded.  I suspect, Your Honor, it

14  will be conceded throughout the case because there really is no

15  defense on the equal protection claim.

16       As we outlined in our papers, the law we are

17  challenging and I know they raised, well, why did you wait 120

18  years to challenge it, but Your Honor, the law arises out of

19  the past and was enacted in a manner that, I think there is no

20  challenge to the conclusion whatsoever, that it was enacted

21  with a racially discriminatory intent.

22       Moreover, and more recently, and this gets to why we

23  are here now, it has been applied in a racially -- a racially

24  inappropriate manner.  And if you look at, for example, the

25  number of individuals that the State Board, in its 2016 audit

1   found had potentially violated the law, 441, 66 percent of them

2   were black.

3           And so a law that was enacted long ago with a

4   racially improper intent has the significant risk today, and in

5   fact, is today being applied in a racially disparate manner.

6           On the void for vagueness argument under equal

7   protection, Your Honor, there is some argument -- again, I

8   would submit to you it's rather tentative and this law is

9   inherently void.  The voidness in law is related to directly

10  the fact that it is a strict liability law because if you have

11  a law that isn't strict liability, even if the statute has some

12  problems, you still have to prove an intent element.

13          And the problem with this law is that when you strip

14  away the intent element somebody can, as we began this -- we

15  began our papers and we began our complaint, be convicted with

16  no knowledge whatsoever and no intent to violate the law.

17          They can be convicted of a Class 1 felony on a

18  mistake, mistaken behavior.

19          To interpret this law you have to look as the

20  defendants did in their papers.  You have to look at the law

21  163-275(5), you then have to look at the North Carolina

22  Constitution, but there is no cross-reference in the law to it,

23  so you have no way of doing that.  And then you have to look at

24  North Carolina law 13-1(1), which defines the term "rights of

25  citizenship" and refers to unconditional discharge.

1        So you have to make this three-way combination of
2   words to get to an answer that if you don't get right and you
3   don't even know that you are not getting right, you are
4   convicted of a Class 1 felony.
5        The statute is void for vagueness and it is a
6   violation of the equal protection clause.  And again, I submit
7   to you that there is no -- no argument at all on -- I'm sorry,
8   I said, void for vagueness, under the due process clause not
9   the equal protection clause.  There is no argument at all on
10  equal protection, and the due process argument is without merit
11  and it is not in, frankly, any detail or serious way presented
12  here.
13       So when you go through the four elements of the PI,
14  you begin, where you rarely do in PIs, with an incredibly
15  strong argument on the likelihood of success on the merits.
16  And I believe, Your Honor, under any balancing of these four
17  elements that influences the reading of the other three, which
18  in any event, independently are satisfied.
19       So the second element is irreparable harm.  Well, the
20  irreparable harm here to our clients is what they are doing
21  between now and the election and what they have been doing.
22  And the existence of this law and the knowledge that it could
23  be prosecuted as it was in 2016 continues every day to divert
24  attention, resources from our clients as they seek to pursue
25  their core mission.

On the third element, Your Honor, balance of the hardships. On the plaintiffs' side, it's this irreparable harm that's going to continue through the election, that has been continuing and that can't be fixed. That is the irreparable harm, but it also weighs on balance.

On the defendants' side, one of their arguments that I haven't addressed in detail -- I'll be happy to if they raise it during rebuttal -- is that they said this isn't a priority. The State Board of Elections said that enforcing this particular law -- I should say that differently. They said other things are their priorities and they haven't listed this as a priority.

Well, Your Honor, that is not enough for us because the fear is still there. Just because something isn't a priority, it doesn't mean you are not going to do it. They say they won't do it when the PI is over, that is what we are seeking as relief. But for them, the hardship isn't there. There is no hardship in not enforcing an unconstitutional law, particularly one that you've said isn't the priority.

And finally, Your Honor, public interest. Well, it's in the public interest, it's in everyone's interest for every eligible voter to vote. And this law and what the PI seeks to prevent is chilling, that it is interfering with what our clients are trying to do to give people the opportunity to vote. Help people, to point them in the right places, it's

1 diverting resources.

2 And so the public interest would say don't enforce an

3 unconstitutional law that will certainly result in certain

4 people, who have the right to vote, not voting in this

5 election.

6 Your Honor, with that, I'm not -- I haven't kept

7 track of my own time, but I'll pass and look forward to

8 addressing you again.

9 THE COURT: All right, thank you.

10 Mr. Steed.

11 MR. STEED: Thank you, Your Honor.

12 I will begin, as Your Honor requested, with the

13 procedural standing arguments that include limited immunity.

14 I'll start with the limited immunity.

15 The plaintiffs have put forward an analysis test that

16 draws from circuits around the country and ignores primarily

17 the test that is applied in the Fourth Circuit, which may be

18 found in *McBurney*, *McBurney versus Cuccinelli*.

19 In *McBurney* they require -- they required a special

20 relationship, as they said, but that special relationship is

21 more narrowly defined in the Fourth Circuit. It's defined as a

22 proximity to and responsibility for the challenged action. And

23 in *McBurney,* that court stressed that it requires specific

24 statutory authority to initiate proceedings.

25 In this case, that is precisely what they are missing

1    because the specific statutory authority for this particular

2    crime can be found in 163-278.  163-278 does state that the

3    State Board of Elections may investigate, shall investigate and

4    authorizing power to subpoena, compel attendance for purpose of

5    making those investigations and they are authorized to call

6    upon the State Board of Investigations to furnish assistance.

7    But at each step in that statute, it's the State Board and

8    district attorneys.

9           District attorneys can investigate.  District

10   attorneys are empowered to subpoena and compel witnesses.  The

11   district attorneys may call upon the State Bureau of

12   Investigation for additional help, if their offices are not

13   capable of doing it.

14          And finally, the actual enforcement of the statute

15   falls only to district attorneys, who are the only parties

16   empowered under this specific statute that authorizes

17   prosecutions for this crime.  They are the only ones who shall

18   initiate and prosecute any violations of this article.

19          When that is put up against the general authority in

20   162 -- 163.2(d) which states that general -- general

21   investigations of the State Board can be referred to the

22   Attorney General's office, the specific statute controls under

23   statutory construction.  And because that is the specific

24   statute, then under *McBurney* it is not the AG that is

25   authorized under the specific statute to prosecute.

1    So they are not the proper defendants because they
2  are not the one prosecuting.

3    Additionally, there is absolutely no authority
4  anywhere for the State Board to prosecute anything, much less
5  this crime.

6    They are called upon to investigate their
7  specialization in elections.  That is an investigation that
8  would happen whether this statute was enjoined or not because
9  they have a duty to make sure that eligible voters are voting
10 and ineligible voters are not voting.

11    Additionally, the reference to the special
12 prosecution statute, 114-11.6, this does not create independent
13 authority for the Attorney General to prosecute crimes.  The
14 Attorney General cannot go off and prosecute this crime if he
15 wants to.  It requires a request from a district attorney to do
16 it, and then the Attorney General has to agree to it.

17    Based on our own research in our office, that has
18 never occurred.  The pros- -- the Attorney General has never
19 prosecuted this and he has never been requested to prosecute
20 this.

21    The reference to the Attorney General's non-delegable
22 duty to defend the state in criminal appeals.  Again, if a
23 prosecution happened under this crime and the conviction
24 happened under this crime, and if it was appealed, then it
25 would fall to the Attorney General to make the decision on how

1   that defense would happen.

2        But a review of Lexus and all of the cases in the

3   Court of Appeals and North Carolina Supreme Court appeals,

4   that's never occurred in the 120-year history of this statute.

5        Additionally, even if the Court were to find a

6   special relationship existed between the defendants and this

7   action -- between the defendants and the challenged state

8   action, *McBurney* requires that they also must have acted or

9   threatened to act, not just the hypothetical that they could.

10       Again, the Board of Elections has never prosecuted

11  this crime because they can't prosecute any crime.  The AG has

12  never prosecuted or threatened to prosecute, and he has no

13  authority to prosecute this crime.

14       Finally, and in connection with this because it

15  follows along as almost a third level of this test, under

16  Section 1983, there must be an ongoing violation in order to be

17  -- for the individual defendants to be here, for this plaintiff

18  to move forward.  There is no ongoing violation.

19       The only -- the only reference they have to anything

20  historical done by either of these is the audit from 2016

21  election by the State Board.  And in the time period between

22  then and now, an entirely new State Board has been seated, and

23  the 2019 policy outlining the priority of investigations was

24  put out publicly to -- to let everyone know and to let their

25  investigators know what the focus will be.

1        And they provided a list that focuses on election
2   officials, but primarily it is focused on culpability.  And
3   nowhere on that list is a reference to strict liability for
4   this crime.
5        Moving to the lack of standing.  We do agree that an
6   injury in fact -- there must be an injury in fact.  They have
7   argued that they are trying to seek organizational standing
8   based on what is essentially an argument that high-profile
9   prosecutions under the statute have created a chilling effect
10  frustrating their purpose.
11       Now, the purpose of having eligible voters register
12  and vote is noble, it is righteous, and we commend them on
13  that.  However, the problem with the frustration of that
14  purpose is not these defendants that have frustrated it.  Even
15  if everything they say about the organizational injury is true,
16  the only cases that they can cite to are district attorneys in
17  Hoke County and district attorneys in Alamance County that
18  prosecuted this.
19       Even then, their injury is not on behalf of those
20  non-parties who were prosecuted.  They must show their injury,
21  and what they are focused upon is non-parties who have told
22  them that they are concerned about future prosecution by
23  district attorneys for an act they haven't committed yet and by
24  people who may or might -- may or may not even violate the
25  crime statute by voting.

1      Presumably they are not advising former felons who
2  haven't completed their conditions to vote because that would
3  be in violation of the statute.  So the people they are
4  concerned with are people who are not voting but are eligible
5  to vote.  In such a situation, allegations of future injuries,
6  they don't create standing under *Whitmore v. Arkansas*.
7      Additionally, their -- their definition of
8  traceability is a bit looser than -- than it should be.
9      This is a closer argument to causation.  What
10  *McBurney* says is causation is a traceable connection between
11  the injury complained -- between the injury and the complained
12  of conduct of the defendant.  And I don't want to hammer the
13  same factual arguments over and over, but there was no conduct
14  of these defendants that caused this injury.  They didn't
15  prosecute this crime.  Local district attorneys did.
16      Even the outcome of the investigation, the audit of
17  2016 in the letter that was -- that was presented to district
18  attorneys and to the state from the Board of Elections about
19  this happened, the summary just provides a list of things that
20  could be done to prevent it from happening in the future.
21      It talks about working with public safety and the
22  courts, increase data-sharing, helping felons understand what
23  is happening when they are -- when they are prosecuted and
24  found convicted so that -- so that the possibility of people
25  who are out there and don't realize that they might commit this

1    crime is lessened to the greatest extent possible.

2           There is no focus upon prosecution.  It is quite the

3    opposite.

4           Finally, the redressability arguments are -- are

5    strong on the behalf of the State.  They might not have -- they

6    make the argument that DAs are proper parties but not required

7    as necessary parties.  They are -- the redressability argument

8    is precisely why they are necessary parties.

9           They say that if -- if the investigation and referral

10   by the State Board were enjoined, there would be no

11   prosecutions.  A reading of 278 shows that that is absolutely

12   not true.

13          278 empowers district attorneys to do exactly what

14   the State Board does.  If this Court were to enjoin this and

15   stop the State Board from doing its investigation, which would

16   also, I think, enjoin them from being able to just make sure

17   that ineligible voters didn't vote as part of their general

18   duty to ensure the election was done properly, that wouldn't

19   stop district attorneys from doing exactly the same thing,

20   even district attorneys that have minimal resources because

21   they can call upon the State Bureau of Investigations and use

22   their additional resources.

23          Your Honor asked a question about whether district

24   attorneys could obtain this information otherwise.  Not only do

25   they have subpoena power under the statute so they can subpoena

1    this information from the State Board, all of these records are

2    public records of the State Board.  Anyone can go online right

3    now and look up a registered voter's name and see if they

4    voted.  In a couple of weeks that will show who voted in this

5    election.

6           Additionally, there is nothing stopping anyone from

7    going online right now and looking up on the Department of

8    Public Safety's offender information reports, which shows

9    everyone's criminal history but also active sentences for those

10   who are in prison and active sentences for those who are

11   outside of prison.

12          So any district attorney, with just a computer and

13   the Internet, could do this as the starting point for an

14   investigation.

15          Additionally, just the concept that they would enjoin

16   investigations of -- which essentially are creating public

17   records, the investigations really must happen, whether they

18   are referred out for criminal conduct or not, just for the

19   safety and integrity of the election that then create public

20   records, and somehow the district attorneys would not be able

21   to subpoena those records.  I'm not sure there's ever been or

22   any case law that would support a preemptive injunction against

23   non-parties to obtain public records.

24          Finally, in addition to this, just one other point

25   that they -- they made that I think is important to note.  If

1    the Attorney General is enjoined from prosecution, he has no
2    authority to tell district attorneys not to prosecute.  There's
3    no -- there's no statute that places him as a higher -- in a
4    hierarchal organization with the state's district attorneys.
5    They are all independently elected officials.
6             I will turn now, Your Honor, to the lack of imminent
7    and irreparable harm.
8             I think it important to note that while they have
9    made a strong argument on behalf of those who have been
10   prosecuted under this law following the 2016 election, those --
11   those people are not parties here and their prosecutions are
12   not part of the -- of membership standing or the organizational
13   injury.
14            The organizational injury is entirely made up of non-
15   parties who fear a potential prosecution.  And while there is a
16   -- it is an argument that is -- I think has weight to it, that
17   is not an actual argument they are making.  It is just
18   additional surplusage of facts that don't actually have any
19   bearing on this analysis.
20            And then one of the points that we had in our
21   argument, which I would like to hit again, is that this
22   reliance on what third parties may or may not do is too
23   attenuated to support irreparable harm to these plaintiffs, and
24   that can be found, Your Honor, in *Whitmore v. Arkansas* and
25   *Clapper versus Amnesty International*.

1     I will now turn, Your Honor, to the due process

2 claims.  I think -- I think that the due process on void for

3 vagueness truly struggles to make its point.  There is nothing

4 vague about this statute.  It's simple.  It's not terribly

5 long.  It says that it is unlawful for any person convicted of

6 a crime, which excludes them from the right of suffrage, to

7 vote in an election without having that right restored under a

8 method provided by law.

9     Would it perhaps be clearer if it directly cited to

10 13.1, the law that was passed to automatically restore their

11 rights after they completed their sentence?

12     I think that would be nice, but there is no

13 requirement for that, or the fact that we reference 13.1, the

14 statute that specifically restored rights as a way to help

15 explain this.  There is -- there is no law that says that other

16 statutes can't help explain things or that other cases can't

17 help or that even the agency could help define what that means.

18     In fact, under *Kolbe v. Hogan,* it explains that there

19 are -- that these are the exact type of things that can be

20 incorporated into the analysis of a statute to save it from

21 criminal statutes being unconstitutionally vague.

22     The citation is 813 F.3d 160 at page 191.  That's a

23 Fourth Circuit case, Your Honor.

24     THE COURT:  What page was that?

25     MR. STEED:  Page 191.

```
 1            THE COURT:  All right, thank you.

 2            MR. STEED:  Your Honor, it's precisely why the

 3  argument makes sense to look at the restoration of rights

 4  argument -- the restoration of rights statute which provides

 5  again, the plain language of unconditional discharge.

 6            The argument in their initial moving papers that

 7  unconditional discharge is now vague and that that is somehow

 8  making people -- made it difficult for people to understand

 9  whether they are eligible or not to vote.  I struggle to see

10  how unconditional discharge is difficult to understand because

11  it literally just means discharged without conditions.  If a

12  person has completed their probation and they are released,

13  they don't have any more court appearances, they don't have to

14  keep up with their parole or probation officer, then they are

15  released without conditions.

16            It -- it seems to me the plain language of that

17  statute, the plain language of the other statute are quite

18  clear, don't present a void for vagueness claim.

19            Just briefly, just to reiterate our position on equal

20  protection claim.  We are not conceding the merits of the equal

21  protection claim.  It is just as opposed to the due process

22  argument, which is an entirely legal challenge to the face of

23  the statute, the equal protection claim is heavily fact-

24  intensive.  It would require -- it will require time.  It will

25  require diving into the archives of both the state and of
```

1    newspapers, the subsequent amendments, and also the recent

2    consideration of amendments.

3         They -- it's not that this statute has laid dormant

4    for 120 years without consideration.  It -- this particular

5    issue of intent has been brought to the floor of the General

6    Assembly twice in the last three years.  It even made it out of

7    the House once.

8         So in order to consider whether there is the same

9    type of intentional discriminatory effect that may very well

10   have been there and in the 1890s when this was initially

11   considered perhaps, it would require more time and more effort

12   to find out the exact reason why such a statute remains and the

13   intent and the understanding of it now from -- either from

14   subsequent amendments that happened over the years, in any sort

15   of record, but also from the legislature today.

16        So our contention is that it simply is not

17   appropriate or we cannot make that argument right now and it is

18   not appropriate to find on the merits on that particular

19   argument as there is no time to do this and this was brought at

20   a late hour and with no time to do that for emergency ruling.

21        Turning to balance of the equities.  Generally, when

22   a state is enjoined from enforcing one of its own laws, that

23   visits a harm upon the state.  That comes from *Maryland v.*

24   *King*, 133 Supreme Court 1, page 3.

25        Additionally, the timeliness of this application also

1   goes to the balancing of the hardships.  The statute is 120

2   years old.  They offer no explanation for why now at the end it

3   must be urgently enjoined by this Court.  There is no

4   explanation for why it wasn't brought ten years ago or 20 years

5   ago or earlier.

6         Even if the explanation was that they were not aware

7   of it or that its chilling effect did not occur until 2018 when

8   the prosecutions happened, counsel for the plaintiffs was

9   counsel the defendants in their prosecutions in 2018, as they

10  note in the complaint at paragraph 52 and footnote 74 and 75,

11  in which they raise the exact same equal protection and due

12  process claims in state court, that ultimately were -- resulted

13  in dismissals of these particular charges either through plea

14  or through -- in one of the cases where it was dismissed

15  outright and new charges were brought that I presume relied on

16  intent.

17        So there is no explanation for why when that happened

18  in 2018 the case wasn't brought, if they were aware of it.  And

19  additionally, if they were aware of it in 2018, and it happened

20  and they thought it was a one-time thing, it happened again in

21  2019 in Hoke County and they still didn't bring a claim.  At

22  the same time the state action happened, the community -- CSI,

23  Community -- (turns to co-counsel) --

24        MR. COX:  Success Initiative.

25        MR. STEED:  -- Success Initiative.  Thank you.

1          But that was filed over approximately a year ago.

2     Nothing in that case prevented them from filing this case then.

3     Instead, they waited until weeks before the election to seek an

4     emergency ruling.  That timeliness goes to the balance of the

5     hardships, but it also goes to the irreparable harm.

6          It's hard to accept an argument of irreparable harm

7     that the organization was feeling throughout this whole time

8     when they saw no need to bring suit until the very last minute.

9          If it was truly an irreparable harm and they were out

10    in the field registering people to vote and were running into

11    this repeatedly since the time of the high-profile prosecutions

12    by district attorneys in 2018, it clearly wasn't very

13    irreparable to them since they didn't bring suit for nearly two

14    years.

15         Finally, one -- one argument in relation to the

16    equities in that this would not be difficult for the state

17    defendants.

18         They are correct that there is no action or threat of

19    an action on behalf of the state defendants, but the priorities

20    of the investigation of the State Board, that doesn't support

21    the plaintiffs' argument that this Court should enjoin it

22    because they weren't going to do it anyway.  It supports the

23    defendants' argument that the Court should not be enjoining

24    actions that have not happened.  There is no reason why the

25    federal court should be stepping into state law for something

1    that is not actually a threat.

2            Unless Your Honor has any questions.

3            THE COURT:  Is it the defense position that all of

4    the district attorneys in the state of North Carolina would

5    have to be brought in as defendants in order for plaintiffs to

6    obtain relief?

7            MR. STEED:  The relief that they are seeking, yes.

8    To address what they are particularly seeking which is that

9    their -- the people that they interact with in the field feel

10   threatened for prosecution, absolutely.

11           The threat of prosecution is not coming from the

12   state defendants.  It comes from local district attorneys.  And

13   were you to enjoin the state defendants, as I said, under the

14   statute, the district attorneys would be free to go about doing

15   this.

16           And the fact that what they are specifically

17   referencing is the chilling effect from the 2018 and 2019

18   prosecutions by district attorneys speaks to that.  The state

19   defendants did not -- did not prosecute those.  In fact, it was

20   local district attorneys.  Local district attorneys are free to

21   continue doing that, whether this Court enjoins or not, without

22   them here as parties.

23           THE COURT:  Tell me again why you believe the state

24   believes that the statute is not unconstitutional.

25           MR. STEED:  The due process argument, Your Honor.  I

1  think that the plain language of the statute is comprehensible

2  under -- let me see if I have the cite for it, Your Honor.

3  Sorry, I don't have it here in my notes, but it is in our

4  brief.

5       The plain language of the statute is comprehensible.

6  What is required is when a normal person, an ordinary person

7  reading the statute, understands what it means.  It is not a

8  long statute.  It is not speaking of multiple independent

9  elements or acts.  It is very simply are you completely -- have

10 you completed your active sentence, whether that was all done

11 in custody or whether you had a probation or parole post-

12 release sentence and, if so, then you can vote.  But if you

13 have not, then you are not eligible to vote until your rights

14 are restored, and it is a felony to do so.

15      I think that the plain reading of the statute is

16 clear, and it is not void for vagueness on those grounds.

17      THE COURT:  All right, we will take a 15-minute

18 recess and then come back.

19    (A recess was taken from 10:47 a.m. to 11:10 a.m.)

20      THE COURT:  All right, I'll give counsel for

21 plaintiffs to -- their opportunity to address the Court.

22      MR. YOUNGWOOD:  Thank you, Your Honor.

23      And I am going to move around through my colleague's

24 arguments.  But I want to start with a general proposition that

25 much of the argument, certainly concerning the elements, but

1    frankly, also the standing and the *Ex Parte Young,* seem to
2    revolve around the statement that you don't know we are going
3    to do it again or we won't be doing it again, or it is not our
4    priority, or where are the instances of it being done now.

5        And that all really circles around the idea that sort
6    of a trust us and as long as, you know, good people who don't
7    want to enforce the strict liability voting law are making the
8    decisions, everything will be fine.  But that's not what the
9    case is about.

10       The case is about ensuring that our clients aren't
11   diverting resources to try to help people interpret an
12   inherently unconstitutional law that violates both the equal
13   protection clause, and that is under due process clause
14   incredibly vague and difficult to read.  And that it requires
15   lawyers, frankly, to interpret it, as counsel did a very nice
16   job.  But counsel is not the typical voter.

17       I want to look at a few of the cases that were cited
18   in the *Ex Parte Young* discussion and perhaps start on -- with
19   the *Limehouse* case, which is the Fourth Circuit case that
20   counsel cited that does apply *Ex Parte Young*.  But there is
21   nothing in *Limehouse* that in any way narrows *Ex Parte Young*,
22   nor frankly, could it.

23       It starts by citing *Ex Parte Young* and then says --
24   and then cites the very same standard I cited to Your Honor
25   where a state law is challenged as unconstitutional, the

1  defendant must have some connection with the enforcement.

2  That's on page -- let me get that -- 332 of the Federal

3  Reporter decision.

4        I'm skipping some sentences, but going to the end of

5  the discussion in that paragraph -- and this is in the context

6  of the director, who is at issue, the director of an agency,

7  the director's connection to the project -- and I am skipping a

8  word or two, need not be qualitatively special -- rather the

9  special relation, that's the words that my colleague read under

10 *Ex Parte Young*, has served as a measure of proximity to and

11 responsibility for the challenged state action.

12       Well, Your Honor, that's what we've established with

13 respect to the DA and with certainly the State Board of which

14 there were very few arguments about.

15       I'll go next to the *McBurney* case, which I think was

16 cited concerning the Attorney General.  And I am looking at

17 page 400 of this decision.  The *McBurney* case is wholly

18 distinguishable from our case.  It concerned the Virginia

19 Attorney General, I should say, not the North Carolina Attorney

20 General and that, frankly, is the distinguishing part of that

21 and the law at issue.

22       What the Court says is that we agree with the

23 Attorney General.  First, he does not have a specific statutory

24 duty to enforce the statute at issue against state officials.

25       Your Honor, here we have pointed through the

statutory duties that this Attorney General does have with
respect to this statute, and I won't recite all of them again.
But perhaps most easily accessible and in contrast to this, but
for the Attorney General there can be no defense of a criminal
conviction under this strict liability voting statute.  And so
that completely distinguishes this case, this pleading, this
statute and the Attorney General's role from *McBurney*.

Your Honor, there wasn't -- they are not arguing
about -- about the Attorney General.  There was almost none
about the State Board of Elections.  I won't repeat everything
I said earlier, but it is really quite clear that the State
Board of Elections has had -- and again, I guess I can't tell
you exactly what they will do tomorrow -- has had direct
involvement with the enforcement of this law.

And again, I will refer Your Honor to Exhibit 4 of --
I'm sorry, Exhibit (looks through documents)  -- 3, which is
the August 12, 2018, letter sent to Hoke County from the North
Carolina State Board of Elections.  And I won't read through
the three-page, very detailed letter, but this is, I think,
fairly read as a plea for prosecution.

And so that is the type of thing that our clients are
dealing with when they deal with people in the community who
are coming to them to figure out how to vote.

I want to briefly go to the timeliness argument
because I don't believe I addressed each of the points that

1    counsel addressed when I first spoke.

2         Your Honor, could we have eliminated more irreparable

3    harm if we had gotten before Your Honor before October 22?

4    Well, yes, we could.  But irreparable harm continues.

5         We've explained in our papers this case was filed in

6    the wake of the *CSI* decision in early September.  It was filed

7    within weeks of that decision and it was filed after our

8    clients concluded that the very harms that had been experienced

9    previously, which is the fear of voting that our clients have

10   to deal with to try to explain to people who can and who can't

11   vote were still present.  That fear of being prosecuted under

12   this law was still present post-*CSI* decision.

13        And so that is the explanation, the notion that it

14   should have been brought a hundred years ago.  I don't think

15   that was a serious argument, Your Honor.  I'm telling you why

16   it was brought now.

17        The irreparable harm continues and will continue

18   every day that this strict liability law remains a threat of

19   prosecution on people that our clients seek to serve.

20        And on the DAs, Your Honor, and I think there was a

21   statement from counsel that we have to name every DA to seek

22   the relief.  Well, first, Your Honor, I will cite you in the

23   *Woman's Medical Corp versus Voinovich* case.  It's a Sixth

24   Circuit case that is cited, but I will also give the cite.

25   It's 130 F. 3d. 187.

1          THE COURT:  It's what, one --?

2          MR. YOUNGWOOD:  130 F.3d 187, Your Honor.

3          THE COURT:  I think there is one district attorney in

4    that case, isn't it?

5          MR. YOUNGWOOD:  There -- there is one prosecutor.

6          THE COURT:  Prosecutor.

7          MR. YOUNGWOOD:  You are correct, Your Honor, but the

8    point, if you take the logic, their logic to get everyone,

9    you've got to get every one, that's incorrect, Your Honor.

10         If Your Honor were to rule that the Attorney General

11   and the State Board of Elections are precluded from taking

12   actions in support of this unconstitutional law in this

13   election cycle, I am certain that the -- that that will be the

14   law.  It may be appealed, it may be whatever, but that will be

15   the law and these DAs cannot interfere with that law.  They

16   cannot take actions contrary to that.  That would be the ruling

17   of the Court.

18         You don't have to -- and that's really what *Voinovich*

19   stands for, that you don't have to get everyone who could

20   violate the law to have a ruling on the law, if you have people

21   that satisfy the *Ex Parte Young* requirements which I submit,

22   for the reasons we've discussed, that we do.

23         Your Honor, I've somewhat already covered this but to

24   be clear, I think there is a misunderstanding of what this --

25   the standing argument for what the core plaintiffs are why --

1  why they have the need to bring this case.  We are not the

2  voters in this scenario.

3       The plaintiffs are not the voters.  These are the

4  people whose mission is to serve various communities in North

5  Carolina to help people who want to vote to vote.

6       And so the burden on them and the reason that this

7  law is a burden is to try to explain it and try to work with

8  people when they have seen press reports from the last

9  election, they've seen other stuff that causes them a very real

10  fear of making a mistake and for exercising their right to vote

11  they end up being convicted of a new felony.

12       It's the resources of our clients that are at stake.

13  We are not standing here today representing individual voters.

14  We are representing people who are trying to help individual

15  voters.

16       Your Honor, I'll head toward the end here returning

17  to the merits, which again there is limited discussion of with

18  respect -- and some of it, I think, incorrectly summarized.

19       Plaintiffs are not proposing a preliminary injunction

20  because they think there are facts that need to be developed.

21  If there were, they would have sought discovery.  They would

22  have asked, perhaps, for more time to get the discovery.  They

23  would have challenged the facts.  That is not what they have

24  done here.  And so for purposes at least of this hearing, maybe

25  more, at least for this hearing, we can hear no merits

1    arguments on the equal protection claim.

2              The notion that counsel says that we need a deep

3    factual inquiry to figure out if these laws were passed at the

4    end of the 19th century, early 20th century with a racially

5    discriminatory intent, I -- Your Honor, no discovery is needed

6    for that.  That is unchallengeable, which I submit to you is

7    why they didn't challenge it.

8              The second element, I think counsel inadvertently

9    misstated, is not whether there is a discriminatory intent

10   today.  It is whether there is a discriminatory impact.  And

11   the evidence of that, unchallenged, is that 60 percent of the

12   people identified in that audit from the last presidential

13   election cycle, 60 -- either 66 or 61, Your Honor -- I don't

14   have it right in front of me -- were black in a state that has

15   a much lower black population.  Hugely disproportionate impact.

16             And then when you go to the 12 people prosecuted in

17   one county, the four prosecuted in another, in one county four

18   of four are black and in the other county nine of 12 are black.

19   That is the impact; those are the statistics.

20             But again, Your Honor, they are not challenged here

21   today.  So for purposes of this hearing, I actually think you

22   need to accept that there is a substantial likelihood of

23   success on the equal protection claim and, so too, on the void

24   for vagueness claim, Your Honor.

25             Counsel -- I referred to this before -- did an

excellent job stringing together, as they do in their briefs,

statutes, constitution, another statute. But if you go back,

Your Honor, I submit, to the transcript, and you read what

counsel said the statute says -- I didn't get it precisely and

I don't want to get it wrong, so I won't say that, but the

statute itself doesn't say what he said it says.

The statute says that for any person convicted of a

crime which excludes the person from the right of suffrage, to

vote at any primary election without having been restored to

the right of citizenship in due course and by the method

provided by law. No intent, no anything, and the words I think

we're -- we're debating are the "without having been restored

the right of citizenship."

But what he said is it's whether or not you have

unconditional discharge. Unconditional discharge is not in the

statute. That is our point. It is not tangled, as I think he

said it was. It's simply that if you have a non-standard base

statute with words that do not give the reader any real sense

as to what it means to violate the statute, that is a violation

of the due process clause of the United States Constitution.

Your Honor, this a case being heard just 12 days

before the next election. Each day that continues with these

defendants being permitted to have -- continue to take actions

or have the threat or the possibility of taking actions that

could enforce or lead to the enforcement of this

1  unconstitutional statute are days that our clients, who are

2  trying to sort this all out for people who just want to vote,

3  are being irreparably harmed.  And that's the reason we came to

4  you for this preliminary injunction.

5          Thank you.

6          MR. STEED:  Thank you, Your Honor.

7          First of all, I would like to clarify one thing that

8  I did say.  When you asked me about redressibility and whether

9  every district attorney needed to be involved, I believe I did

10 say that it would make sense to have them all involved as

11 parties.  I think the better understanding of that, because of

12 1983's implication of an ongoing violation, would be the actual

13 two district attorneys who have prosecuted under this statute.

14         Those would be the required parties, I believe, to be

15 able to provide a remedy that is actually useful and addresses

16 the concerns argued in this case.

17         Additionally, there was -- there was argument just

18 now that if Your Honor were to issue this order it is likely

19 that district attorneys across the state wouldn't prosecute

20 under this.  I -- I'm not sure how strong the likelihood there

21 is, but if a final ruling of declaratory relief were issued,

22 then it would stop prosecution.  But a preliminary injunction

23 does not have that reach, and that is why it doesn't address

24 their injuries because essentially their -- their injury boils

25 down to their conversation with a voter.

1    They are -- they are trying to convince a voter to

2    register and vote, and the voter is telling them they are

3    afraid of prosecution under the statute.  So if Your Honor

4    entered the injunction as it is requested, the advice that they

5    must give to that voter is the State Board and the AG cannot

6    prosecute you under this crime, but you should know that the

7    same local district attorneys, who previously did, are still

8    free to do so.

9    In fact, it -- that just prevents exactly why they

10   are not redressing the injury that they brought to the Court.

11   This -- the injunction would not solve their problem.

12   There was reference to one of the exhibits that is

13   the State Board letter of 2017 from the investigator.  I would

14   just like to point out that that was before -- and I addressed

15   that earlier -- before the administrative change, the State

16   Board members changed and the 2019 priorities policy was put

17   out.

18   Additionally, there was an argument made about the

19   timeliness.  And I believe counsel's words were fear was still

20   present in the people that they do outreach with after the

21   state court decision and that's why they decided to bring this.

22   So, essentially, that is an admission that they made a

23   strategic choice about a fear that they knew were with people

24   that they were working with before that case, to let that case

25   carry itself out over the course of nine to ten months and only

1  when that case with different parties didn't give them the

2  relief that they were looking for, that they decided it was

3  time to bring their case.  I don't think it argues in favor of

4  them on timeliness or irreparable harm.

5        And the final point that I would like to -- or the

6  final point that they addressed was that they -- it's their

7  argument that the Court should read this statute in the little

8  window of just those words without referencing any other

9  authority.

10        It is our argument that *Kolbe* cited before provides

11  the Court the ability to look at other statutes and

12  specifically the ones that references the restoration of

13  rights.  And the fact that those two work together does not

14  render one or the other vague.

15        And the last point would only be just to clarify my

16  own argument that was raised by counsel.  I did not intend to

17  state that the late 19th century of this state was not replete

18  with acts as other states that were full of discrimination.

19  Our history is well-known and it is harmful and the state would

20  not take that position, does not want that to appear to be the

21  position of the state's case.

22        THE COURT:  If a person reads the strict voting

23  rights law, then turns to other statutes for further guidance,

24  where are they to seek guidance when they reach the

25  unconditional discharge language that they see in the statute,

1  13-1, the citizen's restoration statute?

2  　　　　MR. STEED:  My understanding, Your Honor, is that it

3  is just the plain language at that point.  I don't think there

4  is another definition of the statute on unconditional discharge

5  in -- in the statute, that I am aware of.

6  　　　　THE COURT:  All right.

7  　　　　MR. STEED:  Thank you.

8  　　　　THE COURT:  Counsel for plaintiffs, do you have

9  evidence that the individuals who were part of the Alamance 12

10  and the Hoke County four reviewed or investigated the strict

11  voting rights law prior to the 2016 election?

12  　　　　MR. YOUNGWOOD:  Hold on a second, Your Honor.

13  (Confers with Ms. Riggs).

14  　　　　If Ms. Riggs may address the Court.

15  　　　　MS. RIGGS:  Your Honor, having represented the --

16  some of the Alamance 12, I can represent to you that all of our

17  clients believed that they were eligible.  That is, they did

18  not understand reading -- and none of them are lawyers -- they

19  did not understand from the face of the statute what

20  unconditional discharge meant.

21  　　　　One client, for instance, believed she had been off

22  probation for ten years, and it turns out she wasn't.

23  　　　　THE COURT:  Thank you.

24  　　　　Is there anything else from either side?

25  　　　　MR. YOUNGWOOD:  Your Honor, if I could just have a

1  minute; one second, please.

2          THE COURT:  All right.

3          Do we need to -- I'll be happy to take another ten-

4  minute recess and let y'all decide whether you need --

5          MR. YOUNGWOOD:  Your Honor, I think you have been

6  very generous with your time.  I just -- if you don't mind, I'd

7  cite you to two cases that just, I think, touch on some of the

8  colloquy you had with counsel on the void for vagueness and the

9  incorporation by reference of one statute to another where

10  there is no actual cross-reference.

11          Your Honor, I would refer you to two cases that I

12  believe are in the briefs.  I'll cite them.

13          One is Fourth Circuit case, *Manning versus Caldwell*,

14  930 F.3d 264.  This was a case concerning the undefined term

15  "habitual drunkard" which was found void for vagueness in a

16  quasi-criminal statute and involved some of the cross-reference

17  issues that were just discussed.

18          And the second case is a voting case, not -- not out

19  of the Fourth Circuit but out of the Eleventh Circuit, *Jones*

20  *versus Governor of Florida*, a very recent case, 220 Westlaw

21  5493770.  And it's notable because that court sitting en banc

22  found that its scienter requirement is that statute has

23  scienter requirement, unlike this one, was dispositive in not

24  finding the statute void for vagueness.

25          Thank you, Your Honor.

1          MR. STEED:  Your Honor, very quickly, I wanted to

2    point out that 13-1, which does reference unconditional

3    discharge, reads:

4               "The unconditional discharge of an inmate, of a

5               probationer, or of a parolee by the agency of the

6               state having jurisdiction of that person."

7          So it provides a little bit more detail on where they

8    -- where they are concerned with their discharge and the

9    conditions related to that discharge and referred to the agency

10   that would be in control at that point as to their post-release

11   supervision.

12         I also just wanted to point out that it wasn't only

13   the defendants that made reference to 13-1.  Plaintiffs' own

14   brief made reference to 13-1.1 in their papers by referencing

15   the unconditional discharge, and then trying to argue that that

16   was also vague.  So there's -- it's -- the argument that there

17   can't be -- can't check with another statute to provide clarity

18   is one that was made by all the parties.  That was on page 14

19   of plaintiffs' brief.

20         THE COURT:  Thank you.

21         All right.  If that is all, we will -- I certainly

22   understand the timing involved in all of this, but I am not in

23   a position to make a decision and write the opinion today, but

24   I will be doing that the first part of next week.

25         MR. YOUNGWOOD:  Thank you very much, Your Honor.

1          THE COURT:  You're welcome.

2          MR. STEED:  Thank you, Your Honor.

3              (Proceedings end at 11:31 a.m.)

4    _____

5                    (END OF TRANSCRIPT.)

6    _____

NORTH CAROLINA

GRANVILLE COUNTY

                    CERTIFICATION OF REPORTER

     I, N. Annette P. Myers, CVR-CM-M, contract court reporter

for the United States District Court for the Eastern District

of North Carolina, do hereby certify that pursuant to Section

753, Title 28, United States Code, that the forgoing is a true

and correct transcript of the proceedings held in the above-

entitled matter;

     That the proceedings were reported by me using the voice-

writing (Stenomask) method; and

     That the transcript page format is in conformance with the

regulations of the Judicial Conference of the United States.

     Dated this 26th day of October, 2020.


                    /s/ N. Annette P. Myers
                    N. Annette P. Myers, CVR-CM-M
                    Contract Court Reporter