# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE and ACTION NC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, in his official capacity as CHAIR OF THE STATE BOARD OF ELECTIONS; STELLA ANDERSON, in her official capacity as SECRETARY OF THE STATE BOARD OF ELECTIONS; JEFF CARMON, III, in his official capacity as MEMBER OF THE STATE BOARD OF ELECTIONS; KAREN BRINSON BELL, in her official capacity as EXECUTIVE DIRECTOR OF THE STATE BOARD OF ELECTIONS; and JOSH STEIN, in his official capacity as ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 1:20CV876 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiffs North Carolina A. Phillip Randolph Institute ("NC APRI") and Action NC (collectively "Plaintiffs") Motion for Preliminary injunction (Docket Entry 2)[1] pursuant to Federal Rule of Civil Procedure 65(a)(1). Defendants

---

[1] All citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

the North Carolina State Board of Elections ("NCSBE"), Damon Circosta, Stella Anderson, Jeff Carmon, III, Karen Brinson Bell (collectively "NCSBE Defendants"), and North Carolina Attorney General Josh Stein (collectively "Defendants") have filed a response to the motion. (Docket Entry 16.) Plaintiffs thereafter filed a reply. (Docket Entry 20.) The Court ordered a hearing on the matter on October 22, 2020 regarding Plaintiffs' Motion for Preliminary Injunction. (Minute Entry dated 10/22/2020.) For the following reasons, the Court recommends that the motion be denied.

## I.   BACKGROUND

On September 24, 2020, Plaintiffs commenced this action against Defendants alleging that N.C. Gen. Stat. § 163-275(5) (sometimes referred herein as "the challenged statute") is unconstitutional under two theories: (1) the statute is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment; and (2) the statute constitutes intentional racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. (*See generally*, Complaint, Docket Entry 1.) Plaintiffs simultaneously filed the instant Motion for Preliminary Injunction. (Docket Entry 2.)

### A.   Parties

Plaintiffs are nonprofit, nonpartisan organizations whose missions are, in part, to increase voter participation among Black communities in North Carolina. (Compl. ¶¶ 15-16.) NCSBE Defendants administer and investigate violations of North Carolina election laws. (*Id.* ¶¶ 17-21.) Defendant Josh Stein, the North Carolina Attorney General ("AG"), is statutorily authorized to receive reports of "violations of the election laws" from the NCSBE "for further investigation and prosecution." (*Id.* ¶ 22 (citing N.C. Gen. Stat. § 163-22(d))). The AG is also

2

statutorily required "[t]o consult with and advise" the State's District Attorneys "when requested by them, in all matters pertaining to the duties of their office." (*Id.* ¶ 22 (citing N.C. Gen. Stat. § 114-2(4))). Moreover, the AG may authorize attorneys in the Special Prosecution Division of the Office of the Attorney General "to prosecute or assist in the prosecution of criminal cases when requested to do so by a district attorney." (*Id.* ¶ 22 (citing N.C. Gen. Stat. § 114-11.6.))

### B. Construction of N.C. Gen. Stat. § 163-275(5)

Under the North Carolina Constitution, a person convicted of a felony cannot vote "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). This provision is enforced through N.C. Gen. Stat. § 163-275(5), which makes it a Class I felony "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law." N.C. Gen. Stat. § 163-275(5). A separate statute describes what constitutes a restoration of the rights of citizenship. *See* N.C. Gen. Stat. § 13-1. This statute ("Citizenship Restoration Law") restores the rights of citizenship automatically upon the occurrence of any of the following conditions:

> (1) The <u>unconditional discharge</u> of an inmate, of a probationer, or of a parolee by the agency of the State having jurisdiction of that person or of a defendant under a suspended sentence by the court. . . .

> (4) With regard to any person convicted of a crime against the United States, the <u>unconditional discharge</u> of such person by the agency of the United States having jurisdiction of such person . . . .

3

> (5) With regard to any person convicted of a crime in another state, the <u>unconditional discharge</u> of such person by the agency of that state having jurisdiction of such person . . . .

*Id.* (emphases added).

The term "unconditional discharge" is not defined in this statute nor is it defined in any other North Carolina statute. In a recent North Carolina state court action challenging the Citizenship Restoration Law, the Wake County Superior Court interpreted the Citizenship Restoration Law to "preclude[ ] the restoration of citizenship rights until the completion of the sentence, including any period of parole, post-release supervision or probation." (Summary Judgment Order, *Comty. Success Initiative v. Moore,* No. 19-CVS-15941 (N.C. Super. Ct. Sept. 4, 2020), Ex. 13 to Pls.' Br., Docket Entry 3-13 at 6.)

### C. <u>Historical Background of N.C. Gen. § Stat. 163-275(5)</u>

Plaintiffs' Complaint avers that North Carolina's history of racism, including the large-scale disenfranchisement of Black residents, is undisputed. Between 1875 and 1877, the North Carolina legislature amended the North Carolina Constitution and enacted the first iteration of N.C. Gen. Stat. § 163-275(5) with the goal of disproportionally impacting Black individuals. (Compl. ¶¶ 27-28; Centennial Article, Ex. 15 to Pls.' Br., Docket Entry 3-15.) The 1877 version of N.C. Gen. Stat. § 163-275(5) made it illegal for a released felon to vote without having been legally restored to the rights of citizenship. (Ex. 17 to Pls.' Br., Docket Entry 3-17.) In 1899, the State legislature reenacted the 1877 version of the challenged statute almost verbatim, (1899 Session Law Provisions at Ch. 507 § 72, Ex. 19 to Pls.' Br., Docket Entry 3-19), with the goal of "rescu[ing] the white people . . . from the curse of negro domination."

4

(Compl. ¶¶ 32, 34-35; 1898 Democratic Party Handbook, Ex. 18 to Pls.' Br., Docket Entry 3-18 at 20.)

In 1931, the State legislature again reenacted the challenged statute, retaining strict felony-level criminal liability for voting after a felony conviction before their citizenship restoration. (Compl. ¶ 38; 1931 Session Law Provisions at Ch. 348 § 10(5), Ex. 21, Docket Entry 3-21.) Since 1931, the State legislature has essentially changed just one word in the challenged statute,[2] leaving the remainder of it unchanged. (Compl. ¶ 41.) Today, as Plaintiffs claim, the challenged statute is virtually the only election crime punishable as a Class I felony that does not require any fraudulent intent. (*Id.* ¶ 43; *see, e.g.*, N.C. Gen. Stat. §§ 163-275(1, 3-4, 7-9).)

### D. Prosecutions Stemming from the 2016 Election Audit

Following the 2016 presidential election, sixteen individuals were prosecuted under N.C. Gen. Stat. § 163-275(5). (Compl. ¶¶ 4, 47-50, 53.) Thirteen of those prosecuted are Black. (*Id.* ¶ 4.) The NCSBE's audit of the election determined that 441 individuals with felony convictions may have voted before their sentences were completed. (*Id.* ¶ 47; Post-Election Audit Report, Ex. 2 to Compl., Docket Entry 1-2 at 5.) Of that total, 68% were Black. (Compl. ¶ 47; Post-Election Audit Report Racial Breakdown, Ex. 4 to Compl., Docket

---

[2] The legislature changed the word from "him" to "the person":

> It shall be unlawful: . . . For any person convicted of a crime which excludes ~~him~~ the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law.

N.C. Gen. Stat. § 163-275(5) (edited to reflect changes from 1931 version).

Entry 1-4 at 2.) As required by N.C. Gen. Stat. § 163-22(d), the NCSBE referred the cases to the State district attorneys ("DAs"). (Compl. ¶ 48; August 12, 2018 NCSBE Letter, Ex. 3 to Compl., Docket Entry 1-3.) A majority of the district attorneys chose not to bring charges due to a lack of evidence that felon individuals were ever notified of their ineligibility to vote. (Compl. ¶ 49; August 9, 2017 NCSBE Letter, Ex. 5 to Compl., Docket Entry 1-5 at 1-2.) However, in 2018, the district attorney of Alamance County charged twelve individuals with violating N.C. Gen. Stat. § 163-275(5). (Compl. ¶ 50.) Nine of the twelve individuals charged were Black. (*Id.*) In 2019, the district attorney of Hoke County charged four individuals, all Black, with violating the same statute. (*Id.* ¶ 53.) Most of the individuals charged had no intent to violate the statute, and were in fact, unaware of it. (*Id.* ¶¶ 50-51, 54.) Plaintiffs further allege that some of the individuals charged with a violation of the challenged statute expressed "a deep-seated fear of voting in the future." (*Id.* ¶¶ 56-59.)

### E. The Wake County Superior Court Preliminary Injunction

A recent ruling in the Wake County Superior Court action challenging the Citizenship Restoration Law temporarily enjoined the NCSBE and other state defendants "from preventing a person convicted of a felony from registering to vote and exercising their right to vote if that person's only remaining barrier" to the completion of their sentence "is the payment of a monetary amount." (Preliminary Injunction Order, *Moore,* Ex. 13 to Pls.' Br., Docket Entry 3-14 at 11.)

However, the Superior Court's preliminary injunction did not cover "persons convicted of a felony who are no longer incarcerated," but are subject to probation, parole, or post-release supervision. (*Id.* at 10.) Despite this injunction, however, Plaintiffs allege that

6

"individuals with only outstanding financial obligations in connection with a felony conviction might and indeed will opt not to vote because of the fear of criminal prosecution under [N.C. Gen. Stat. § 163-275(5)]."  (Compl. ¶ 5.)

### F.  **Plaintiffs' Claims**

In the instant case, Plaintiffs assert to claims: (1) the challenged statute is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment; and (2) the challenged statute violates the Equal Protection Clause of the Fourteenth Amendment because it was originally enacted with racially discriminatory intent, its key features have never been substantively amended, and it continues to disproportionately impact Black North Carolinians. (Compl. ¶¶ 98-115.)  Plaintiffs seek a declaration that N.C. Gen. Stat. § 163-275(5) is unconstitutional and to enjoin Defendants from enforcing the Strict Liability Voting Law. (Compl. ¶ 8.)

## II.  DISCUSSION

Plaintiffs seek a preliminary injunction enjoining Defendants from enforcing N.C. Gen. Stat. § 163-275(5).  (Docket Entry 2.)  As a preliminary matter, Defendants raise Article III standing and Eleventh Amendment immunity arguments invoking inquiries into this Court's jurisdiction over this action.  More specifically, Defendants argue that Plaintiffs lack standing to seek a preliminary injunction regarding the enforcement of N.C. Gen. Stat. § 163-275(5) because Plaintiffs have not suffered any injury-in-fact, have not alleged a risk of injury traceable to Defendants, and have not proposed a remedy to address the alleged injuries.  (Docket Entry 16 at 13-16.)  Defendants also argue that this action is barred under the Eleventh Amendment. (*Id.* at 5-12.)  For the reasons stated herein, the Court concludes that Plaintiffs lack standing

Case 1:20-cv-00876-UA-JLW   Document 24   Filed 11/04/20   Page 7 of 21

to bring this suit against the AG. However, the NCSBE are proper parties to this action as explained below.

## Standing

Federal district courts exercise limited jurisdiction in that the court "possess only the jurisdiction authorized . . . by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). Article III of the United States Constitution outlines the federal court's jurisdictional limits, which implicates certain doctrines including standing and ripeness. *See* U.S. Const. art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 & n.5 (2014). For any case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004)). Article III standing is "an integral component of the case or controversy requirement." *CGM, LLC v. BellSouth Telecomms., Inc.,* 664 F.3d 46, 52 (4th Cir. 2011) (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)).

The burden of satisfying Article III's standing requirement lies with the party seeking to invoke the federal court's jurisdiction. *Miller*, 462 F.3d at 316. To establish constitutional standing, "(1) the plaintiff is required to have sustained an injury in fact; which (2) must be causally connected to the complained-of conduct undertaken by the defendant; and (3) will likely be redressed if the plaintiff prevails." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). The Court address each of these factors in turn.

8

1. **Injury-In-Fact**

Injury-in-fact, the first component of standing, requires Plaintiffs to allege an actual or threatened injury. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). Defendants contend that Plaintiffs cannot establish injury in fact because the harm to Plaintiffs is "too attenuated to support standing." (Docket Entry 16 at 14). Plaintiffs NC APRI and Action NC are both organizations. (*See* Compl. ¶¶ 15-16.) Organizations may establish standing to bring suit on their own behalf and for injuries on behalf of their members. *See White Tail Park*, 413 F.3d at 458. To bring suit on its own behalf an organization must meet the same standing requirements that apply to individuals. *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013). "The Supreme Court has held that if a defendant's practices have hampered an organization's stated objectives causing the organization to divert its resources as a result, then 'there can be no question that the organization has suffered injury in fact.'" *Action NC v. Strach*, 216 F. Supp. 3d 597, 616 (M.D.N.C. 2016) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see also Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ("An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission.").

The Complaint alleges that the "specter of prosecution" under N.C. Gen. Stat. § 163-275(5) has hindered Plaintiffs' ability to carry out their missions. (*See* Compl. ¶ 6.) More specifically, Plaintiff NC APRI alleges that

> To advance its core mission of advancing racial equality, NC APRI works to increase access to the polls, voter registration and voter education, particularly among working class African Americans . . . [N.C. Gen. Stat. § 163-275(5)] has substantially

9

> impeded the NC APRI's ability to carry out its mission with respect to Black community members with criminal convictions. NC-APRI has had difficulty persuading eligible Black individuals with criminal convictions to register to vote and vote, because of their fear of prosecution under [N.C. Gen. Stat. § 163-275(5)].

(Compl. ¶ 15). Additionally, Plaintiff NC APRI attested that it has "diverted substantial time and resources" from its general voter registration and get-out-the vote activities to educating individuals with prior convictions. (Melvin Montford Declaration ¶ 11, Docket Entry 3-22.)

> Similarly, Plaintiff Action NC alleges that

> As part of its mission of community engagement and empowerment, Action NC is committed to increasing voter participation in North Carolina's low-income communities . . . . [N.C. Gen. Stat. § 163-275(5)] has substantially impeded the Action NC's ability to carry out its mission with respect to community members with criminal convictions. Action NC has had difficulty persuading eligible North Carolina residents with criminal convictions to register to vote and vote, because of their fear of prosecution under [N.C. Gen. Stat. § 163-275(5)].

(Compl. ¶ 16). Plaintiff Action NC has further attested that it "has diverted substantial time and resources from its voter registration and get-out-the-vote activities to reassure eligible individuals that voting will not lead to criminal prosecution." (Pat McCoy Declaration ¶ 10, Docket Entry 3-23.) Accordingly, because Plaintiffs' efforts to carry out their missions have been impeded, and because they have both been forced to divert resources to address fears surrounding the enforcement of N.C. Gen. Stat. § 163-275(5), the Court finds that Plaintiffs have established organizational injury for the purposes of standing. *See Democracy N. Carolina v. N. Carolina State Bd. of Elections*, No. 1:20CV457, 2020 WL 4484063, at *12-14 M.D.N.C. Aug. 4, 2020) (unpublished).

## 2. **Traceability**

Defendants next argue that Plaintiffs do not meet the standing requirements because "they cannot show that the injury they complain of is traceable to an action by these Defendants." (Docket Entry 16 at 15). The causation element of standing requires "a causal connection between the injury and the conduct complained of[.]" *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013). Furthermore, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action some third party not before the court." *Id.* at 234-35. However, "the defendant's conduct need not be the last link in the causal chain[.]" *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 212 (4th Cir. 2020), as amended (Aug. 31, 2020). Rather, there must be a "genuine nexus" between the defendant's conduct and the plaintiff's injury. *Kadel v. Folwell*, 446 F. Supp. 3d 1, 10 (M.D.N.C. 2020) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000)).

Here, there is clearly a causal connection between Plaintiffs' injury and the challenged actions of the NCSBE Defendants. Following the 2016 presidential election, the NCSBE Defendants conducted an audit pursuant to their statutory duties under N.C. Gen. Stat. § 163-22(d) and referred the violations of N.C. Gen. Stat. § 163-275(5) they found to the state district attorneys. (*See* Compl. ¶ 48; *see also* Post-Election Audit Report, Ex. 2 to Compl., Docket Entry 1-2 at 5 ("Investigators have begun referring investigation reports regarding felons to local prosecutors."); August 12, 2018 NCSBE Letter, Ex. 3 to Compl., Docket Entry 1-3 (letter referring violations of N.C. Gen. Stat. § 163-275(5) to the Hoke County District Attorney).) Those investigations and referrals by the NCSBE resulted in the filing of criminal charges under N.C. Gen. Stat. § 163-275(5) in 2018 for twelve individuals in Alamance County and in

11

2019 for four individuals in Hoke County. (*See* Compl. ¶¶ 47-53.) Plaintiffs allege that these prosecutions, and the media attention they received, have made even eligible voters fearful of casting ballots, thus impeding Plaintiffs' ability to carry out their missions. (*See* Compl. ¶¶ 4, 15-16.) Though NCSBE's actions did not constitute the "last link in the causal chain," *see Maryland Shall Issue,* 971 F.3d at 212, they appear to have *initiated* the causal chain that resulted in Plaintiff's injuries, which is a sufficiently genuine nexus between NCSBE's conduct and Plaintiffs' injuries. Thus, traceability is established as to the NCSBE Defendants for the purposes of standing.

The Court, however, reaches a different conclusion as to the AG Defendant. Plaintiffs have failed to show any connection between the AG and the prosecutions they assert caused their injuries. The AG does have general prosecutorial authority, including an obligation to represent the State in criminal appeals, and advisory and consultative duties to the State district attorneys and the NCSBE. *See* N.C. Gen. Stat. §§ 114-2, 114-11.6, 163-22(d). However, there are no allegations nor is there evidence that the AG has ever prosecuted or threatened to prosecute under N.C. Gen. Stat. § 163-275(5). In fact, it is the State district attorneys that have been conferred specific statutory authority to prosecute under N.C. Gen. Stat. § 163-275(5). *See* N.C. Gen. Stat. § 163-278 ("The district attorney shall initiate prosecution and prosecute any violations of this Article [to include the challenged statute].")[3]

---

[3] To the extent applicable, the North Carolina courts have recognized that "[w]hen two statutes regulate the same conduct, it is well-established that the statute 'special and particular shall control over the statute general in nature . . . unless it clearly appears that the legislature intended the general statute to control.'" *Bush v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 124 F. Supp. 3d 642, 654 n.16 (E.D.N.C. 2015) (quoting *Trustees of Rowan Tech. College v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 238, 328 S.E.2d 274 (1985)).

The AG further contends that "it appears [its] office has never been called upon to defend a conviction under [the challenged statute], has never issued an Attorney General Opinion on this statute pursuant to N.C.G.S. § 114-2(5), and is unaware of any instance of being requested to prosecute this violation pursuant to N.C.G.S. § 114-11.6." (Docket Entry 16 at 3.) Plaintiffs cite no evidence to the contrary, but instead argue that traceability is met because the AG has not disclaimed any intent to enforce the challenged statute. (Docket Entry 20 at 14.) While it is true that traceability may be established when a plaintiff faces a credible threat of prosecution under the challenged criminal statute, Plaintiffs, as organizations, face no such threat. *Cf. N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) ("When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute."); *see also Driehaus*, 573 U.S. at 161-66 (finding standing established where a plaintiff seeks to engage in conduct prohibited by the challenged statute, the state has prosecuted individuals in the past, and the state has not disavowed future prosecution).

The undersigned concludes the conduct alleged here is not fairly traceable to the AG. Plaintiffs' Complaint alleges specific actions of the NCSBE Defendants as well as the district attorneys of Alamance and Hoke Counties. (*See* Compl. ¶¶ 47-53.) However, none of such conduct establishes a causal connection between Plaintiffs' injuries and the conduct of the AG. As such, the traceability requirement is not met as to the AG Defendant. *See NC RSOL v. Boone*, 402 F. Supp. 3d 240, 254 (M.D.N.C. 2019) ("Had Plaintiffs alleged that the district attorneys actually instructed the North Carolina Attorney General's office to investigate or

prosecute . . . for a potential violation of [the relevant statute] this injury would be fairly traceable to both the directing district attorney and the Attorney General's office[.]").

### 3. **Redressability**

Finally, Defendants argue that Plaintiffs do not have standing because the injunction Plaintiffs seek does not redress their alleged injuries. (Docket Entry 16 at 16.) Having ended the standing inquiry for the AG Defendant, the Court will address redressability solely as to the NCSBE Defendants. Redressability is satisfied "where there is a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Cooksey*, 721 F.3d at 238 (internal quotations and citation omitted). The Fourth Circuit has recognized that a plaintiff "need not show that a favorable decision will relieve [their] every injury." *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) (citing *Larson v. Valente*, 456 U.S. 228, 242-44 & n.15 (1982)). Instead, Plaintiffs here "need only show that they 'personally would benefit in a tangible way from the court's intervention.' " *Id.* (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (en banc)). *See also Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (same).

Here, enjoining the NCSBE Defendants from enforcement of the challenged statute would necessarily prohibit them from investigating or referring for prosecutions any violation of the statute. While Defendants argue that an injunction here may not interfere with the non-party State district attorneys' ability to initiate prosecution under N.C. Gen. Stat. § 163-275(5), there can be no question that enjoining the NCSBE Defendants would be a tangible benefit to Plaintiffs. Indeed, "[t]he removal of even one obstacle to the exercise of one's rights, even

14

if other barriers remain, is sufficient to show redressability." *Sierra Club*, 899 F.3d at 285. Thus, redressability is satisfied as to the NCSBE Defendants for the purposes of standing.

### Eleventh Amendment Immunity

Defendants also contend that they are immune from suit pursuant to the Eleventh Amendment. (Docket Entry 16 at 5-12.) Pursuant to the Eleventh Amendment, sovereign immunity prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). "[U]nder the Eleventh Amendment, a State cannot be sued directly in its own name regardless of the relief sought, absent consent or permissible congressional abrogation." *Id.* (internal quotation omitted). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 195 N.C. App. 485, 492-93, 673 S.E.2d 374, 380-81 (2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted); *see also Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity.").

The general rule notwithstanding, "[t]he doctrine of Ex parte Young provides an exception to Eleventh Amendment immunity where suit is brought against state officials in their official capacities and "(1) the violation for which relief is sought is an ongoing one, and

(2) the relief sought is only prospective." *Al-Deen v. Trustees of Univ. N.C., Wilmington*, 102 F. Supp. 3d 758, 764-65 (E.D.N.C. 2015) (internal citations omitted) (quoting *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998)). However, "the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally protected rights." *Id.* To determine whether the Ex parte Young exception applies, the Court "need only conduct a straightforward inquiry into whether the complaint [(1)] alleges an ongoing violation of federal law and [(2)] seeks relief properly characterized as prospective." *Constantine v. Rectors & Visitors George Mason Univ.*, 411 F.3d 474, 496 (4th Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n Md.*, 535 U.S. 635, 645 (2002)). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001).

Here, Plaintiffs are seeking prospective relief and have alleged that N.C. Gen. Stat. § 163-275(5) is unconstitutional. Defendants argue that they are improper parties in this action. "Ex parte Young requires a 'special relation' between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar." *Waste Mgmt.*, 252 F.3d at 331. This "special relation" "requires *proximity to* and *responsibility for* the challenged state action." *Wright v. North Carolina*, 787 F.3d 256, 261-62 (4th Cir. 2015) (quotation omitted).

The NCSBE Defendants are proper parties to this action. The NCSBE is statutorily empowered to investigate violations of N.C. Gen. Stat. § 163-275(5). *See* N.C. Gen. Stat. §§ 163-22(d), 163-278. The NCSBE is also "authorized and empowered to subpoena and compel

16

the attendance of any person before them for the purpose of making such investigation." N.C. Gen. Stat. § 163-278. Finally, North Carolina statute requires the NCSBE to refer the results of its investigations for prosecution. *See* N.C. Gen. Stat. §§ 163-22(d), 163-278. As Plaintiffs alleged in the Complaint, following the 2016 election audit, the NCSBE determined that "441 individuals with felony convictions may have voted," (*see* Compl. ¶ 47), and thereafter provided such information to the State district attorneys for further investigation and potential prosecutions under N.C. Gen. Stat. § 163-275(5). (*See* Post-Election Audit Report, Ex. 2 to Compl., Docket Entry 2-1.) This conduct on the part of the NCSBE, and the statutory authority given to them, sufficiently established a connection required to invoke the Ex parte Young exception.

## Preliminary Injunction

A party seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).[4] "Satisfying these four factors is a high bar, as it should be." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 67 (2018).

---

[4] The original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). However, the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345-47, stating the facts and articulating the standard for issuance of a preliminary injunction, before remanding it to the

A party must make a clear showing that he is likely to succeed on the merits of his claim. *Winter*, 555 U.S. at 20; *Real Truth*, 575 F.3d at 345-46. Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. *Winter*, 555 U.S. at 20-22; *Real Truth*, 575 F.3d at 347. Only then does the court consider whether the balance of equities tips in the favor of the party seeking the injunction. *See Real Truth*, 575 F.3d at 346-47. Finally, the court must pay particular regard to the impact of the extraordinary relief of an injunction upon the public interest. *Real Truth*, 575 F.3d at 347 (quoting *Winter*, 555 U.S. at 23-24). Injunctive relief, such as the issuance of a preliminary injunction, is an extraordinary remedy that may be awarded only upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (citation and quotation omitted) (a preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances").

## 1. **Irreparable Harm**

A preliminary injunction analysis generally begins with the inquiry of whether Plaintiffs are likely to succeed on the merits of their claim. However, the Court concludes that it is unnecessary to address that factor of the *Winter* test as Plaintiffs have failed to demonstrate irreparable harm absent the requested injunctive relief. Plaintiffs contend that they "will suffer irreparable harm unless this Court enjoins the enforcement of the [challenged statute] before the registration window closes for the November 3, 2020 general election." (Docket Entry 3

---

district court for consideration in light of *Citizens United*. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 607 F.3d 355 (4th Cir. 2010).

at 26.)  Defendants, on the other hand, insist that Plaintiffs "have failed to demonstrate even the possibility of some remote future of harm caused by Defendants" and that, even if the Court does enjoin Defendants from enforcing the challenged statute, "[t]he alleged fear of prosecution would continue unabated" because the district attorneys are not parties to this case.  (Docket Entry 16 at 20.)

To establish irreparable harm, "a party must establish that (1) the harm is certain and great, actual and not theoretical, and so imminen[t] that there is a clear and present need for equitable relief; and (2) that, once incurred, the threatened harm would be beyond remediation." *N. Carolina State Conference of NAACP v. Cooper*, 430 F. Supp. 3d 15, 51 (M.D.N.C. 2019) (internal quotations omitted).  As further explained below, the Court finds that Plaintiffs have not established a harm so imminent that there is a present and immediate need for preliminary relief.

Courts have found that delaying the pursuit of legal redress may undermine allegations of irreparable harm.[5]  *See Jewell*, 2013 WL 6188998, at *9 ("Plaintiffs also undermined their own argument of 'irreparable harm' due to the dilatory manner in which they pursued legal redress."); *Quince Orchard*, 872 F.2d at 80 (internal quotations and citation omitted) ("Although a particular period of delay may not . . . bar a permanent injunction, it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction.");

---

[5]  As in the case of *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989), courts most often consider delay when balancing the hardships of the parties.  However, delay has been considered in the inquiry of irreparable harm. *See e.g.*, *Turn & Bank Holdings, LLC v. Avco Corp.*, No. 1:19-CV-503, 2019 WL 4773667, at *11 (M.D.N.C. Sept. 30, 2019) (unpublished); *Eagle On All. v. Jewell*, No. 2:13CV371, 2013 WL 6188998, at *9 (E.D. Va. Nov. 22, 2013) (unpublished); *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985).

*Majorica*, 762 F.2d at 8 ("Lack of diligence, standing alone, may, however, preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm rather than occasioned prejudice."). The challenged statute has essentially been unchanged since 1931 and a source of Plaintiffs' claims rest on prosecutions that occurred in 2018 and 2019, respectively. (*See* Compl. ¶¶ 41, 50, 53.) However, Plaintiffs delayed filing this action and request for injunctive relief until September 24, 2020, mere weeks before the North Carolina voter registration deadlines and the 2020 election. Considering both the delay in Plaintiffs' filing of this action and the fact that the election has now passed, the circumstances simply do not support the kind of irreparable harm required to support a preliminary injunction.

Without question, the undersigned recognizes the high stakes of the November 2020 election. But it will not be the last. Plaintiffs efforts to "encourag[e] broad political participation by members of Black and low-income communities in North Carolina" (Docket Entry 3 at 25) will be relevant to all upcoming elections. However, prior to future elections, this Court, through the progression of this action, will have the opportunity to adequately delve into the constitutionality of N.C. Gen. Stat. § 163-275(5). As such, a preliminary injunction is not warranted at this time.

## III. CONCLUSION

In sum, the undersigned concludes that Plaintiffs have established Article III standing necessary to confer this Court's limited jurisdiction over this action. However, the AG Defendant should be dismissed. Moreover, because Plaintiffs have failed to demonstrate irreparable harm, their motion for preliminary injunction should be denied. Accordingly,

20

**IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Preliminary Injunction (Docket Entry 2) be **DENIED** and that North Carolina Attorney General Josh Stein be **DISMISSED** from this action.

_____
Joe L. Webster
United States Magistrate Judge

November 4, 2020
Durham, North Carolina