# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Case No.: 1:20-cv-00876

| | | |
|---|---|---|
| **NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE and ACTION NC,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO** |
| **v.** | ) ) | **DISMISS ON BEHALF OF DA DEFENDANTS** |
| **THE NORTH CAROLINA STATE BOARD OF ELECTIONS et al.,** | ) ) ) | |
| **Defendants.** | ) | |

NOW COME Defendants Asbell, Banks, Locke Bell, Ted Bell, Boone, Bowman, Clodfelter, Cook, Crump, Ben David, Jon David, Deberry, Delbridge, Dixon, Doyle, Edwards, Evans, Frank, Freeman, Gregson, Horner, Kirkman, Hardin, Lee, Matthews, Merriweather, Miller, Newman, O'Neill, Ramey, Reilly, Robison, Saunders, Scott, Thomas, Vaneekhoven, Waters, Welch, West, Williams, Womble, Woodall (hereinafter "DA Defendants"), and hereby provide this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Amended Complaint filed contemporaneously herewith.

## STATEMENT OF THE CASE

On September 24, 2020, Plaintiffs filed this action naming as Defendants the North Carolina State Board of Elections and each of its executive officers in their official capacities, and Josh Stein, in his official capacity as Attorney General of the State of North Carolina. [DE 1] Plaintiffs also filed a Motion for Preliminary Injunction. [DE 2]

1

On October 16, 2020, Defendants filed a Response to Plaintiffs' Motion for Preliminary Injunction and a Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim. [DE 16, 18-19] On January 15, 2021, this Court denied Plaintiffs' Motion for Preliminary Injunction and dismissed North Carolina Attorney General Josh Stein. [DE 34]

On February 23, 2021, Plaintiffs filed an Amended Complaint, removing Defendant Stein and adding as Defendants each and every elected District Attorney in North Carolina, in their official capacities. [DE 36] The Court granted the DA Defendants motion for an extension of time to file an answer or other responsive pleading until April 19, 2021. [DE 41]

## NATURE OF THE CASE

The North Carolina Constitution forbids a person convicted of a felony from voting "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). To give full effect and enforce this provision, N.C.G.S. § 163-275(5) makes it a felony "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law."

Plaintiffs bring a facial challenge to N.C.G.S. § 163-275(5), arguing that the criminal statute is void for vagueness in violation of the due process clause of the Fourteenth Amendment and 42 U.S.C. § 1983, and was enacted with racially discriminatory intent in violation of the Equal Protection Clause and 42 U.S.C. § 1983.

2

[DE 36, p 58] Plaintiffs ask this Court to permanently enjoin enforcement of N.C.G.S. § 163-275(5). [DE 36, p 59]

This matter should be dismissed as this Court lacks subject matter jurisdiction and Plaintiffs fail to state a claim upon which relief can be granted because they cannot demonstrate the challenged statute is unconstitutional.

## STATEMENT OF THE FACTS

In the 2016 general election, nearly 4.8 million individuals cast votes in North Carolina. [DE 1-2, ¶ 4] Pursuant to N.C.G.S. § 163-22(d), the NCSBE conducted a post-election audit of the 2016 election, finding a possible 441 cases of suspected votes by felons still serving felony probation or post-release supervision. [DE 36, ¶ 48] Of those 441 individuals, district attorneys in only two counties, Alamance and Hoke Counties, prosecuted a total of 16 cases, or .0003% of all votes cast. [DE 1-2, p 5] The Black individuals charged with violation of N.C.G.S. § 163-275(5) in Alamance and Hoke Counties comprise only 0.00027% of individuals voting in the 2016 North Carolina primary election. [DE 36, ¶¶ 51, 54] None of these individuals are parties to this action, and no one was ultimately convicted of violating N.C.G.S. § 163-275(5). [DE 36, ¶ 53, 56] The amended complaint does not identify any convictions under N.C.G.S. § 163-275(5) in any county in North Carolina and Defendants case law search did not identify convictions either.

## LAW AND ARGUMENT

**I.    THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE DA DEFENDANTS**

3

### a. Standard of Review

On a Rule 12(b)(1) motion to dismiss, a court assumes that all factual allegations in the complaint are true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). The Court is not obligated to assume that Plaintiffs' legal conclusions or arguments are also true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). The plaintiff bears the burden of proving subject matter jurisdiction. *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 816–17 (E.D. Va. 2000).

When standing is in dispute, "general factual allegations of injury" may be sufficient to show standing. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 878 (11th Cir. 2000). While plaintiffs are accorded more latitude to state a claim than in motions for summary judgment, if a plaintiff cannot establish standing to sue, "relief from this Court is not possible, and dismissal under 12(b)(1) is the appropriate disposition." *Am. Fed'n of Gov't Emps., Loc. 2119 v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999).

### b. Plaintiffs Lack Standing

The U.S. Constitution only permits courts to adjudicate "cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). *See also* U.S. Const. art. III, § 2. To establish Article III standing, Plaintiffs must show that they: (1) suffered injury-in-fact; (2) which is causally connected to the complained of conduct undertaken by the defendant; and (3) will likely be redressed if the plaintiff prevails. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–62 (1992). Plaintiffs bear the burden of establishing standing, and must satisfy each of these three elements. *Id.* In a multi-defendant action, Plaintiffs must establish each element of standing as to each Defendant. *Dash v. FirstPlus Home Loan Owner Tr. 1996-2*, 248 F.

4

Supp. 2d 489 (M.D.N.C. 2003). Here, Plaintiffs fail to establish standing as to each District Attorney Defendant.

i. *Plaintiffs Cannot Show An Injury-In-Fact.*

Plaintiffs must establish each element of standing for each newly added DA Defendant. Plaintiffs are two organizations whose missions include increasing voter registration and participation among low income communities and African American communities. [DE 36, ¶¶ 14-15] Plaintiffs bring this action solely on behalf of themselves, and not in a representational capacity on behalf of their members. [DE 36, ¶¶ 14-15] Therefore, the injury-in-fact must be suffered by the organization alone. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). To establish organizational standing, the organizational plaintiff must satisfy the constitutional standing test in the same manner as would an individual bringing a claim. *Id.*

Here, Plaintiffs allege that the future "specter of prosecution" under N.C.G.S. § 163-275(5) of unknown and unnamed individuals who are otherwise eligible to vote has hindered their ability to carry out their missions. [DE 36, ¶ 15] Plaintiffs assert that N.C.G.S. § 163-275(5) frustrates their missions in particular with respect to persuading eligible Black North Carolinians with criminal convictions to register to vote and vote, as well as diverting time, money and resources to educate volunteers about the existence of voting laws, in particular N.C.G.S. § 163-275(5) and (13). [DE 36, ¶¶ 14-15]. Admittedly, Courts have recognized that an organization "may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d

668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). However, when Plaintiffs core mission includes educating voters [DE 36, ¶ 14], it would necessarily follow that allocating resources to know and understand North Carolina's voting laws, and educate voters of the same, would be inherent in that mission, and not an impediment. It is simply illogical that organizations, whose mission includes "voter education," would not allocate resources to know and understand the State's voter registration and voting laws.

### ii. *Plaintiffs Cannot Trace Any Injury to the DA Defendants.*

Plaintiffs cannot show that the organizational injury they complain of is traceable to an action by each of the DA Defendants. In this action, Plaintiffs amended their complaint to add the DA Defendants because they are responsible for prosecuting all criminal actions and are specifically empowered to investigate and prosecute any violations of voting-related statutes. [DE 36, ¶ 23] However, Plaintiffs concede that only two district attorneys (Alamance and Hoke Counties) have ever brought charges under the challenged the statute in just sixteen cases. [Id.] Plaintiffs do not allege that the remaining forty DA Defendants are investigating, prosecuting, threatening to prosecute or have previously prosecuted crimes under the challenged statute. Importantly, Plaintiffs acknowledge that "[m]any District Attorneys 'summarily declined' to bring charges because they 'determined there was insufficient evidence to prove that the defendant was ever notified of his or her ineligibility to vote.'" [DE 36, ¶ 50] The amended complaint fails to allege any injury traceable to these forty DA Defendants and they should be dismissed.

6

The remaining two DA Defendants also should be dismissed because they never have prosecuted or threatened to prosecute Plaintiffs. A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). The Supreme Court "has made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution under the statute to present a case or controversy." *Doe v. Duling*, 782 F.2d 1202, 1205 (4th Cir. 1986); *Babbitt*, 442 U.S. at 298. This threat must be credible, and "alive at each stage of the litigation." *Doe*, 782 F.2d at 1206 (quoting *Ellis v. Dyson*, 421 U.S. 426, 433 (1975)). The plaintiff must show a "threat of prosecution that is both 'real and immediate' before a federal court may examine the validity of a criminal statute. *Id.* at 1206 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969).

Plaintiffs cannot show that they, two organizations, face a credible threat of prosecution under N.C.G.S. § 163-275(5) in this action, brought on behalf of themselves only, and not on behalf of any person. N.C.G.S. § 163-275(5) makes it a felony for a *person* who has been convicted of a crime (i.e. felony) which excludes the person from the right of suffrage, to vote in any primary or general election without first being restored their rights of citizenship, including the right to vote. *Id.* (emphasis added). Plaintiffs, as organizations, are not *persons* who may vote in a primary or general election, nor are they *persons* who have been convicted of a felony. As this Court pointed out, "[w]hile it is true that traceability may be established when a plaintiff faces a credible threat of prosecution under the challenged criminal statute, Plaintiffs, as organizations, face no credible threat."

[DE 24, p. 13, DE 34]; *see also Babbitt*, 442 U.S. at 298–99; (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971) (stating that when plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," they do not allege a dispute susceptible to resolution by a federal court)) Therefore, Plaintiffs fail to demonstrate traceability as to all DA Defendants, including the district attorneys in Alamance and Hoke Counties.

### iii. *Plaintiff's Remedy Does Not Redress the Alleged Injuries.*

Redressability is satisfied "where there is a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Cooksey v. Futrell*, 721 F.3d 226, 238 (4th Cir. 2013). Here, the injury asserted by the organizational Plaintiffs is that they have diverted resources from voter registration and get-out-the-vote activities to educate volunteers on the potential risks of registering an individual with a felony conviction and to caution community members on the potential risks of voting after a felony conviction before sentence completion. [DE 36, ¶¶ 14-15] Invalidating N.C.G.S. § 163-275(5) leaves intact felon disenfranchisement in North Carolina, which is established not by the challenged statute, but by the North Carolina Constitution. If this Court grants Plaintiffs the relief they seek, enjoining prosecution of disenfranchised felons under N.C.G.S. § 163-275(5), Plaintiff's mission still demands that they educate volunteers and potential voters of criminal disenfranchisement in North Carolina. To do otherwise would run afoul of N.C.G.S. § 163-275(13), which makes it unlawful for any person to falsely make or present any certificate or other paper to qualify any person fraudulently as a voter,

or to attempt thereby to secure to any person the privilege of voting. . . ." N.C.G.S. § 163-275(13).

Additionally, the NCSBE will still be statutorily mandated to "investigate . . . the administration of election laws, frauds and irregularities in elections in any county and municipality and special district, and shall report violations of the election laws to the Attorney General or district attorney or prosecutor of the district for further investigation and prosecution." N.C.G.S. § 163-22(d). A felon voting while disenfranchised may still be prosecuted under other provisions Chapter 163, including under N.C.G.S. § 163-275(4), for example, by signing the current North Carolina voter registration form and attesting falsely, under penalty of perjury, that:

> I have not been convicted of a felony, or if I have been convicted of a felony, I have completed my sentence, including any probation, post-release supervision, or parole OR I am serving an extended term of probation, post-release supervision, parole, I have outstanding monetary obligations, and I am not aware of other reasons for the extension of my period of supervision.

North Carolina Voter Registration Application (found at https://dl.ncsbe.gov/Voter_Registration/NCVoterRegForm_06W.pdf.

The language that is presently contained on the North Carolina Voter Registration Form is plain and unmistakable. In North Carolina, a person that signs a written instrument, such as the voter registration form, is under a duty to ascertain its contents, and absent evidence of fraud, is held to have signed with full knowledge as to the contents. *In re Baby Boy Shamp*, 82 N.C. App. 606 (1986). "[A] defendant's ignorance of the law is no excuse for his or her unlawful conduct." *State v. Bonetsky*, 246 N.C. App. 640, 647, *writ denied, review denied,* 786 S.E.2d 917 (N.C. 2016).

9

Plaintiffs assert that the voters charged in Alamance County said they did not understand the voter forms they signed and were not aware of the law, [DE 36, ¶ 52], and that individuals with criminal convictions may be unsure if they are on probation as a result of a felony or misdemeanor conviction. [DE 36, ¶ 84] Enjoining prosecution under N.C.G.S. § 163-275(5) will not assist individuals in understanding: forms they sign, if they have been convicted of a felony, the conditions imposed upon them as a result of their felony criminal conviction, or any other provisions of North Carolina law that may be applicable to their status as a convicted felon. Therefore, Plaintiff organizations' asserted diversion of resources injury will not be redressed by invalidation of N.C.G.S. § 163-275(5).

### c. Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution bars a suit in law or equity against a State absent the State's consent to such a suit. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). Eleventh Amendment immunity extends to state officers acting in their official capacity. *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995). A suit against a state official sued in their official capacity is not a suit against the individual official but is a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiffs bring this suit against the DA Defendants in their official capacities, therefore the Eleventh Amendment bars this suit.

A narrow exception to Eleventh Amendment immunity allows a federal court to issue an injunction against a state official in his official capacity who is acting contrary to federal law. *Ex parte Young*, 209 U.S. 123 (1908). This exception is limited, and Plaintiffs

must allege (a) an ongoing violation of federal law and (b) seek only prospective injunctive relief. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). In order for the *Ex parte Young* exception to apply, a "special relationship" must exist between the state officer sued and the challenged statute. *Id.*

Here, there is no special relationship that supports application of the *Ex parte Young* exception. Plaintiffs do not allege DA Defendants are currently violating federal law. Plaintiffs only mention past prosecutions in two counties, none of which resulted in convictions. [DE 36, ¶¶ 53, 56]. In their amended complaint, Plaintiffs do not allege any specific ongoing prosecutions or threats of prosecution by the DA Defendants under N.C.G.S. § 163-275(5).

Because Plaintiffs have not alleged ongoing violation of federal law by DA Defendants sufficient to invoke the narrow *Ex parte Young* doctrine, Plaintiffs' amended complaint must be dismissed as it is barred by the Eleventh Amendment.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Supreme Court has repeatedly stated that facial challenges to statutes are disfavored. *United States v. Chappell*, 691 F.3d 388, 392 (4th Cir. 2012). They are not favored, because facial challenges often rest on speculation and they raise the risk of "premature interpretation of statutes." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Facial invalidation of a statute is contrary to principles of judicial restraint, under which "courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of

constitutional law broader than is required by the precise facts to which it is to be applied." *Washington State Grange*, 552 U.S. at 450–51 (internal quotations omitted). "[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Washington State Grange*, 552 U.S. at 451. In order to prevail in a typical facial attack, the plaintiff "would have to establish that no set of circumstances exist under which [a statute] would be valid, or that the statute lacks any plainly legitimate sweep." *United States v. Stevens,* 559 U.S. 460, 472 (2010) (citations omitted).

The Supreme Court has recognized the right to vote as a fundamental right entitled to protection under the Fourteenth Amendment. *Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 (1969); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). While Plaintiffs aver to only challenge N.C.G.S. § 163-275(5), the facts presented in the amended complaint make clear that this action is a thinly veiled attempt to undermine felon disenfranchisement in North Carolina generally. However, the law is well settled that states are permitted to disenfranchise felons. The Fourteenth Amendment itself permits the denial of the right to vote upon criminal conviction. U.S. Const. amend. XIV, § 2. The United States Supreme Court declared that "the exclusion of felons from the vote has an affirmative sanction in section 2 of the Fourteenth Amendment to the Constitution of the United States . . . ." *Richardson v. Ramirez*, 418 U.S. 24, 54 (1974). Likewise, the felon disenfranchisement provision contained in N.C. Const. art. VI, § 2(3) does not violate the Equal Protection Clause of the Fourteenth Amendment. *Fincher v. Scott*, 352 F. Supp. 117, 119 (M.D.N.C. 1972), *aff'd,* 411 U.S. 961 (1973) ("a state may constitutionally continue

12

the "historic exclusion" of felons from the franchise without regard to whether such exclusion can pass muster under the Equal Protection Clause"); *Wilson v. Goodwyn*, 522 F. Supp. 1214, 1216 (E.D.N.C. 1981) ("Provisions in state statutes and constitutions which deny convicted felons the right to vote do not violate the various rights guaranteed by the Constitution of the United States.")..

Because the law is well settled that felon disenfranchisement pursuant to N.C. Const. art. VI, § 2(3) is lawful, Plaintiffs instead narrowly focus on the constitutionality of the statute that provides the criminal penalty for violation of the North Carolina Constitution's felon disenfranchisement provision, N.C.G.S. § 163-275(5). These claims should be dismissed for failure to state a claim.

### a. Standard of Review

This Court may dismiss any complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Requiring a claim to be plausible does not impose a probability requirement at the pleading stage. *Thomas v. Collins*, 323 U.S. 516, 556 (1945). However, the plausibility requirement requires more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* While the court "must take the facts in the light most favorable to the plaintiff, [the court] need not accept the legal conclusions drawn from the facts." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *see also Papasan*, 478 U.S. at 286 (on a motion to dismiss for failure to state a claim, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

### b. Plaintiffs' Claims Under 42 U.S.C. § 1983 For Violations Of Their Rights To Due Process And Equal Protection Under The Fourteenth Amendment Fail.

Plaintiffs bring this action against the DA Defendants pursuant to 42 U.S.C. § 1983 challenging the constitutionality of N.C.G.S. § 163-275(5) on the basis that it is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment and constitutes intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. For the reasons discussed above, this Court should dismiss Plaintiffs Section 1983 claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Section 1983 requires that Plaintiffs establish that a "person" acted in such a way as to deprive her of rights, privileges, or immunities secured by the Constitution and laws. As explained in Section I.b. above, Plaintiffs fail to allege that the DA Defendants took or threatened any action against Plaintiffs in violation of their rights. Plaintiffs are organizations that do not have the capacity to be prosecuted under N.C.G.S. § 163-275(5). Therefore, Plaintiffs fail to assert an essential element of a claim under Section 1983, which is the statutory basis for both of their constitutional claims. Plaintiffs' Section 1983 claims

against the DA Defendants should be dismissed for failure to state claim upon which relief can be granted.

### c. N.C.G.S. § 163-275(5) is not Void for Vagueness in Violation of the Due Process Clause of the Fourteenth Amendment.

Plaintiffs attack the State's constitutional ability to curb the rights of felons to vote by asserting that N.C.G.S. § 163-275(5) is unconstitutionally void for vagueness because "it fails to provide individuals of ordinary intelligence fair notice of what conduct is prohibited" and "subjects them to strict felony-level liability." [DE 36, ¶ 98] In particular, Plaintiffs contend the challenged statute is facially invalid for two reasons: (1) because it does not define what crimes "exclude[] the person from the right of suffrage," and (2) because it does not explain how an individual may be "restored to the right of citizenship." *Id.*

The void for vagueness doctrine is rooted in the Due Process Clause of the Fifth and Fourteenth Amendments. *See Doe v. Cooper*, 842 F.3d 833, 842 (4th Cir. 2016). "Under the Due Process Clause, a law is void for vagueness if it 'fails to give ordinary people fair notice of the conduct it punishes' or is 'so standardless that it invites arbitrary enforcement.'" *Jones v. Governor of Fla.*, 975 F.3d 1016, 1046–48 (11th Cir. 2020); quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015).

Plaintiffs initially allege that N.C.G.S. § 163-275(5) does not provide ordinary people with notice of the crimes that will exclude a person from the right to vote because a person must look at the State constitution and N.C.G.S. § 163-55(a)(2) to determine the

15

type of crime that excludes a convicted person from voting.  [DE 36, ¶¶ 62, 99]  This argument fails.

First, a statute is not void-for-vagueness, and therefore unconstitutional, because the type of disenfranchising crime is not defined in the challenged statute. Statutory provisions must be read in context, and those in context must be construed *in pari materia*, as together constituting one law, and harmonized to give effect to each other. *Trayford v. N. Carolina Psychology Bd.*, 174 N.C. App. 118, 123 (2005), *aff'd,* 360 N.C. 396 (2006); *see also Cooper*, 842 F.3d at 844 (stating "[i]t is a fundamental canon of statutory construction that statutes that are *in pari materia*, i.e., which relate or are applicable to the same matter or subject, must be construed together to ascertain legislative intent.")  Second, while the type of crime that excludes someone from voting is not specified in N.C.G.S. § 163-275(5), it is clearly defined as a felony in N.C. Const. art. VI, § 2 and in N.C.G.S. § 163-55(a)(3).  [DE 36, ¶ 62]  Article VI, Section 2 of state's constitution is titled "Qualifications of voter" and it sets forth the qualifications for a person to vote in North Carolina. Subsection (3) of Article VI, Section 2 is titled "Disqualification of felon" and clearly states that a person found guilty of a felony may not vote. N.C. Const. art. III, § 2(3).  Likewise, N.C.G.S. § 163-55(a)(3), titled "Qualifications to vote; exclusion from electoral franchise," also clearly states that a person who has been found guilty of a felony is not permitted to vote.  Notably, N.C.G.S. 163-55(a)(2) contains nearly identical language to the language used in Art. VI, § 2(3) of the State constitution.  Therefore, an ordinary person plainly has fair notice that if they have been convicted of a felony, they will not be permitted to vote until their rights of citizenship have been restored.

16

Plaintiffs also allege that N.C.G.S. § 163-275(5) is vague, and therefore unconstitutional, because it does not explain how an individual may be "restored to the right of citizenship." [DE 36, ¶ 99] Plaintiffs again argue that the challenged statute is invalid because an individual has to look outside the State's election statutes to learn how and when a person's citizenship rights are restored. [Id.]

Chapter 13 of the General Statutes was rewritten by the legislature in 1971 to provide for the automatic restoration of citizenship rights to persons who forfeited such rights upon the occurrence of certain specified conditions. *State v. Currie*, 284 N.C. 562, 564 (1974). The process for restoring a person's citizenship rights after those rights are forfeited on account of a felony conviction is set out in N.C.G.S. § 13-1, which provides that a person's citizenship rights are "automatically restored" when the person is unconditionally discharged as an inmate, probationer, or parolee by the State agency that has jurisdiction over them or they are unconditionally discharged from under a suspended sentence entered by the court. N.C.G.S. § 13-1(1) (2021).

Plaintiffs contend that the State's citizenship restoration process does not provide notice to an ordinary person because "unconditional discharge" is not defined. However, the phrase "unconditional discharge" does not have to be defined by statute for an ordinary person to have fair notice of the phrase's meaning. A plain reading of N.C.G.S. § 13-1(1) can be understood as a person's rights of citizenship are automatically restored at the completion of their criminal sentence, including their release as an inmate from prison, their release from supervised or unsupervised probation, or their release from parole. Indeed, the Fourth Circuit Court of Appeals has interpreted N.C.G.S. §13-1 with

17

no confusion as to the meaning of unconditional discharge in several opinions. *See generally United States v. King*, 119 F.3d 290 (4th Cir. 1997); *U.S. v. Thomas*, 52 F.3d 82 (1995).

Moreover, an ordinary person knows that the word "unconditional" plainly means without conditions. Likewise, an ordinary person knows that the word "discharge" is commonly known to mean release. The fact that "unconditional discharge" is not defined in Chapter 13 or Chapter 163 does not make the phrase unconstitutionally vague, especially when its plain meaning can be readily discerned by an ordinary person and courts have had no difficulty giving the term its plain meaning.

Finally, North Carolina law provides that when a person's citizenship rights have been restored, that the state agency, department, or court that had jurisdiction over the person must "immediately issue a certificate or order in duplicate evidencing the offender's unconditional discharge and specifying the restoration of his rights of citizenship." N.C.G.S. § 13-2(a) (2021). This certificate is filed with the Clerk of Superior Court in the county where the conviction occurred. *Id*. Also, N.C.G.S. § 163-82.20A requires the State Board of Elections, the Division of Adult Correction, and the Administrative Office of the Courts to work together to inform persons of their restoration of rights and provide an opportunity to register that individual to vote. N.C.G.S. § 163-82.20A (2021). Practically speaking, this means that the Division of Adult Corrections will issue the certificate when the person is discharged from prison if the person does not have any post-release supervision, that the person's probation officer will issue the certificate when the person's probation is complete, or the N.C. Post-Release Supervision and Parole Commission will

18

issue the certificate when the person's supervision is complete and also provide the person a voter registration form. *See* North Carolina Department of Public Safety Division of Adult Correction and Juvenile Justice Community Corrections Policy & Procedures, found at https://files.nc.gov/ncdps/documents/files/Policy.pdf, p. 227. These state measures further indicate that a person has fair notice of their unconditional discharge and that their rights of citizenship, including the right to vote, have been automatically restored.

For the reasons discussed above, Plaintiffs' claim that N.C.G.S. § 163-275(5) is facially invalid because it is unconstitutionally vague fails, and therefore, this claim should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### d. N.C.G.S. § 163-275(5) does not violate the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Whether a statute was enacted with discriminatory intent is a factual question. *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). First, Plaintiffs must demonstrate that racial discrimination was a "'substantial' or 'motivating' factor behind enactment of the law" that "continues to this day to have effect." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (internal citations omitted). Second, if Plaintiffs demonstrate racial discrimination was a substantial or motivating factor in enacting the law, the burden

shifts to Defendants to demonstrate that the law would have been enacted without this factor. *Id.*

Demonstrating discriminatory intent requires looking at the four factors from the Supreme Court's *Arlington Heights* decision: (1) historical background; (2) the specific sequence of events leading to the law's enactment, including any departures from the normal legislative process; (3) the law's legislative history; and (4) whether the law "bears more heavily on one race than another." *Arlington Heights*, 429 U.S. at 265–69. Once racial discrimination is shown to have been a 'substantial' or 'motivating' factor behind enactments of law, only then does the burden shifts from the plaintiff to the defendant to demonstrate the law would have been enacted without this factor." *Hunter,* 471 U.S. at 228. Here, Plaintiffs provide no facts to support their conclusion that racial discrimination was a substantial or motivating factor in enacting N.C.G.S. § 163-275(5).

Throughout the amended complaint, Plaintiffs argue that felon disenfranchisement is rooted in post-Civil War intentional racial discrimination. However, felon disenfranchisement laws have a "long history in English, European and even Roman law." See ALEXANDER KEYSSAR, THE RIGHT TO VOTE: THE CONTESTED HISTORY OF DEMOCRACY IN THE UNITED STATES 62-63 (2000); see also THE NATIONAL COMMISSION ON FEDERAL ELECTION REFORM, TO ASSURE PRIDE AND CONFIDENCE IN THE ELECTORAL PROCESS 45 (2001), available at https://verifiedvoting.org/wp-content/uploads/2020/09/NCFER_2001.pdf (noting that "[t]he practice of denying the vote to individuals convicted of certain crimes is a very old one that existed under English law, in the colonies, and in the earliest suffrage laws of the states.") Indeed, prior to the Civil

War and subsequent nationwide Black suffrage, many states, including North Carolina, excluded persons who had committed serious crimes from voting. *Id*; [DE 36, ¶ 25]

One of the key post-Civil War amendments was the Fourteenth Amendment, which was enacted to help secure the rights of Black Americans. In order to be readmitted to the United States after the Civil War, southern states had to ratify the Fourteenth Amendment. Act of Congress of June 25, 1868, c. 70, 15 Stat. 73. The Fourteenth Amendment itself and the Act admitting North Carolina to the Union after the Civil War provided explicit permission for North Carolina to disenfranchise criminals. *Id*; U.S. Const. amend. XIV, cl. 2.

While Plaintiffs make numerous conclusory allegations that criminal disenfranchisement under the North Carolina Constitution was enacted to "frustrate and impede the influence of Black citizens" [DE 36 ¶ 28], they do not challenge that provision of our state constitution that forbids a person convicted of a felony from voting "unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). Instead, Plaintiffs argument is narrowly focused on N.C.G.S. § 163-275(5). [DE 36, ¶ 1]

Plaintiffs conclude that 1876-77 N.C. Sess. Laws 537, which provided the penalty for individuals who vote while criminally disenfranchised, is a "racially discriminatory criminal law," but do not provide any facts to support that conclusion. [DE 36, ¶ 29] Likewise, Plaintiffs do not allege facts that demonstrate that intentional racial discrimination was a "substantial or motivating factor" for the enactment of N.C.G.S. § 163-275(5), which they allege is identical to the 1877 law [DE 36, ¶ 29], nor do they

21

provide any facts to support their conclusion that its purpose "was to deter Black individuals with criminal convictions from ever attempting to vote." [DE 36, ¶ 107]

Plaintiffs do not present evidence as to many of the *Arlington Heights* factors with regard to N.C.G.S. § 163-275(5), including the historical background, the specific sequence of events leading to the law's enactment, including any departures from the normal legislative process, or the law's legislative history. Instead, Plaintiffs rely upon reprehensible statements made in the years following the statute's enactment to demonstrate the general racism of the Democratic Party in North Carolina in the 1880s and 1890s. [DE 36, ¶¶ 30-33] When examining the *Arlington* Heights factors, evidence largely unconnected to the passage of the actual law in question is not indicative of legislative intent. *See Greater Birmingham Ministries v. Sec'y of State for State of Alabama*, No. 18-10151, 2021 WL 1323510 (11th Cir. Apr. 9, 2021) ("The Plaintiffs' position is weakened significantly by the fact that the evidence presented in this case is largely unconnected to the passage of the actual law in question.") Here, statements made after the statute was enacted, remote in time, unconnected to the passage of the actual law in question and in unrelated contexts are not probative of the intent of the General Assembly at the time of enactment and do not provide factual support for Plaintiffs' conclusory allegation of intentional racial discrimination. *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020).

Plaintiffs fail to provide sufficient evidence to demonstrate discriminatory intent of N.C.G.S. § 163-275(5), therefore, Plaintiffs' claim should be dismissed for failure to state a claim under the Equal Protection Clause of the Fourteenth Amendment.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' claims against the DA Defendants should be dismissed because the Court lacks jurisdiction and Plaintiffs fail to state a claim upon which relief can be granted.

Respectfully submitted this the 19th day of April, 2021.

JOSHUA H. STEIN
Attorney General

/s/Kathryn H. Shields
Special Deputy Attorney General
N.C. State Bar No. 43200
E-mail: kshields@ncdoj.gov

/s/Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
E-mail: eobrien@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Fax: (919) 716-6755

23

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index not included, does not exceed the 6,250 word limit on briefs supporting motions and responsive briefs, or if a reply brief does not exceed the 3,125 word limit. *See* LR 7.3(d)(1).

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FILED ON BEHALF OF DA DEFENDANTS** using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system.

This the 19th day of April, 2021.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice

Case 1:20-cv-00876-LCB-JLW   Document 47   Filed 04/19/21   Page 25 of 25