IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No.: 1:20-cv-00876

| | |
|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE and ACTION NC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| THE NORTH CAROLINA STATE BOARD OF ELECTIONS, et al. | ) ) ) |
| Defendants | ) ) |

**MEMORANDUM IN SUPPORT OF DISTRICT ATTORNEY DEFENDANTS' MOTION TO STAY**

NOW COME Defendants Asbell, Banks, Locke Bell, Ted Bell, Boone, Bowman Clodfelter, Cook, Crump, Benjamin R. David, Jonathan M. David, Deberry, Delbridge, Dixon, Doyle, Edwards, Evans, Frank, Freeman, Gregson, Hardin, Horner, Kirkman, Lee, Matthews, Merriweather, Miller, Newman, O'Neill, Ramey, Reilly, Robison, Saunders, Scott, Thomas, Vaneekhoven, Waters, Welch, West, Williams, Womble, Woodall, all in their official capacities (hereinafter referred to collectively as the "District Attorney Defendants"), by and through their undersigned counsel, and respectfully move the Court to stay proceedings in this action pending resolution of the state court action *Community Success Initiative v. Moore, et al* (hereinafter "*CSI*") in the North Carolina appellate courts. *See Community Success Initiative, et al. v. Moore, et al.*, 19 CVS 15941, now 331 P 21. The issues in *CSI* bear directly upon the instant case. In support of this motion, DA Defendants state as follows:

## INTRODUCTION

In this case, Plaintiff organizations bring a facial constitutional challenge of N.C.G.S. § 163-275(5), which makes it a felony "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law." N.C.G.S. § 163-275(5). The "method provided by law" to "restore[] to the right of citizenship" is found in N.C.G.S. § 13-1, the subject of the *CSI* litigation.

In 2019, the *CSI* plaintiffs, consisting of four organizations and six felons, brought a lawsuit against Timothy K. Moore, in his official capacity as speaker of the North Carolina House of Representative, Philip E. Berger, in his official capacity as president pro tempore of the North Carolina Senate ("legislative defendants"), and the same NCSBOE defendants as this suit, challenging the constitutionality of N.C.G.S. § 13-1 and its application to convicted felons serving terms of post-release supervision under N.C.G.S. § 15A-1368 *et seq.* or probation under N.C.G.S. § 15A-1341 *et seq*, who must obtain an unconditional discharge from such sentences before their voting rights are restored. Importantly, these are the very same individuals from which Plaintiffs' alleged injury derives.

The *CSI* plaintiff sought a declaration that N.C.G.S. § 13-1 is facially unconstitutional and invalid under the North Carolina Constitution. The plaintiffs also sought injunctive relief. On September 4, 2020, the superior court entered a preliminary injunction. [DE 36, ¶ 5] A three-judge panel of the superior court conducted a trial in August 2021 and issued an expanded preliminary injunction, which both the NCSBOE defendants and legislative defendants appealed. *See Community Success Initiative v. Moore*, Nos. P21-340 and 22-136. The

North Carolina Supreme Court ultimately ordered that "the status quo be preserved pending defendant's appeal" of the August 23, 2021 expanded preliminary injunction.

The superior court issued its final order on March 28, 2022. [Exhibit A] Therein, that court declared N.C.G.S. § 13-1 in violation of the North Carolina Constitution's Equal Protection and Free Speech Clauses, to the extent it denied the franchise to persons on felony probation, parole, or post-release supervision. The superior court also permanently enjoined the State Board and others "from preventing any person convicted of a felony from registering to vote or voting due to probation, parole, or post-release supervision." [Exhibit A, p. 64, ¶ 2] The court clarified that "if a person otherwise eligible to vote is not in jail or prison for a felony conviction, they may lawfully register and vote in North Carolina." [Exhibit A. at 65, ¶ 3]

On March 30, 2022, the legislative defendants in *CSI* filed an appeal and emergency motion for stay pending appeal, which was denied by the superior court on April 1, 2022. [Exhibits B and C] On April 1, 2022, the legislative defendants filed a petition for writ of supersedeas and motion for temporary stay in the North Carolina Court of Appeals. [Exhibit D] On April 5, 2022 the North Carolina Court of Appeals granted the stay. [Exhibit E] On April 6, 2022, the NCBOE filed its response to the petition for writ of supersedeas. [Exhibit F]. On April 13, 2022, Plaintiffs filed their response to the petition for writ of supersedeas. [Exhibit G] As of the filing of this motion, the North Carolina Court of Appeals has not ruled on the petition for supersedeas.

Meanwhile, on April 4, 2022, the CSI plaintiffs filed a bypass petition in the North Carolina Supreme Court, seeking immediate review. [Exhibit H] On April 13, 2022, the

NCSBOE filed their response to the plaintiffs' bypass petition. [Exhibit I] On April 18, 2022, the legislative defendants filed their response to the plaintiffs' bypass petition. [Exhibit J] As of the filing of this motion, the North Carolina Supreme Court has not ruled on the bypass petition.

## LAW AND ARGUMENT

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013).

Courts in the Fourth Circuit generally look to three factors in evaluating a stay. They are: (1) "the interests of judicial economy"; (2) the "hardship and equity to the moving party" in the absence of a stay; and (3) the "potential prejudice to the non-moving party" in the event of a stay. *N. Carolina State Conf. of NAACP v. Cooper*, 397 F. Supp. 3d 786 (M.D.N.C. 2019). Each of these factors tilts in favor of this Court staying this action pending the resolution of the constitutional review of N.C.G.S. § 13-1 by the North Carolina appellate courts.

In conducting an analysis of the merits of a potential stay, first and foremost comes the consideration whether a stay will forward the interests of judicial economy that prioritize the just, speedy and inexpensive determination of every action and proceeding. The interests of judicial economy weigh heavily in favor of a stay in the present case.

The seminal case on discretionary stays, *Landis*, reaffirms that judicial economy is served by staying a case pending a separate decision even if that decision "may not settle every question of fact and law in [the case], but in all likelihood it will settle many and simplify them all." *Landis*, 299 U.S. at 256. The substantial overlap between the legal issues present in *CSI* and in the case at bar weighs in favor of a stay, which will help avoid the possibility of duplicative and futile litigation progressing in the federal court system that could lead to inconsistent outcomes. Staying this proceeding in this Court allows the North Carolina appellate courts to secure a concrete interpretation of North Carolina law regarding restoration of citizenship rights after felony conviction, which is explicitly referenced in the challenged statute. *See generally, Leiter Mins., Inc. v. United States*, 352 U.S. 220 (1957).

The process of restoration of citizenship rights after felony conviction is integral to Plaintiffs' claims. Plaintiff organizations allege they must expend extra time and resources to assist eligible voters in the community with prior criminal convictions because of these community members' hesitance to vote because of their confusion as to how and when their citizenship rights are restored. [DE 36, ¶¶ 3-6, 14-15, 46, 47, 76-78, 81, 84, 89-95] In other words, Plaintiff organizations are allegedly expending time and money to assist community members who are unsure if they are ineligible to vote because of a prior felony conviction. [DE 60, p 12] This alleged confusion in turn causes eligible voters to fear unintentionally violating the law and triggering criminal charges. [DE 60, p 3-4]

In its Order in this case, this Court discussed, "as presently constructed" violation of N.C.G.S. § 163-275(5) "while on parole, probation or post-release supervision for a felony conviction may result in imprisonment for up to two years." [DE 60, p. 4] However, that

"present construction" is wholly dependent on the interpretation of N.C.G.S. § 13-1, the subject of *CSI*. Indeed, the superior court's order in *CSI* is in direct contradiction to this Court's finding, declaring "if a person otherwise eligible to vote is not in jail or prison for a felony conviction, they may lawfully register and vote in North Carolina." [Exhibit A] Because this Court must necessarily interpret N.C.G.S. § 13-1 to determine which persons are subject to prosecution under N.C.G.S. § 163-275(5), it is imperative that this Court stay further proceedings in this matter until the North Carolina appellate courts have resolved *CSI*.

The final resolution of *CSI* has the potential to moot this case. A federal district court does not have jurisdiction over cases which are moot, because when a case is moot, there is no actual case or controversy between the parties. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). A case may become moot due to either a change in the facts or a change in the law. *Ross v. Reed*, 719 F.2d 689, 693–34 (4th Cir. 1983). Plaintiffs allege that Black individuals in North Carolina who are no longer incarcerated but are still serving some aspect of a sentence for a felony conviction are the category of individuals the challenged statute targets. [DE 36, ¶ 47] If the North Carolina Supreme Court upholds the decision of the superior court in *CSI*, the law regarding restoration of citizenship rights in North Carolina will change. Persons on parole, probation or post-release supervision for a felony conviction will unequivocally be eligible to vote, and not subject to prosecution under N.C.G.S. § 163-275(5). Therefore, Because Plaintiffs' asserted injury is solely based upon their diversion of resources to assist persons who are directly addressed by the *CSI* order, there will cease to be a live case or controversy before the court sufficient to invoke Article III jurisdiction

Additionally, Plaintiffs claim that N.C.G.S. § 163-275(5) is facially unconstitutional because it "fails to provide individuals of ordinary intelligence fair notice of what conduct is prohibited . . ." [DE 36, ¶ 98] Plaintiffs argue that N.C.G.S. § 163-275(5) provides "no guidance on when an individual regains his or her citizen rights" because it incorporates N.C.G.S. § 13-1. [DE 48, p. 20] Plaintiffs assert this is because North Carolina's Citizen Restoration Law, N.C.G.S. § 13-1 does not define the term "unconditional discharge." [DE 36, ¶ 100] Because this claim rests wholly upon the interpretation of N.C.G.S. § 13-1, this Court cannot address this claim without engaging in statutory interpretation and analysis of N.C.G.S. § 13-1. *See* DE 36, ¶¶ 61-65, DE 60, pp. 21-26.

Because resolving this lawsuit is completely dependent upon the interpretation of N.C.G.S. § 13-1, which is implicitly incorporated by N.C.G.S. § 163-275(5), this Court should stay this action while the state appellate courts determine the constitutionality and interpretation of N.C.G.S. § 13-1. *See Moore v. Sims*, 442 U.S. 415, 427–428 (1979) (holding that a federal action should be stayed pending determination in state court of state-law issues central to the constitutional dispute presented in federal court.)

Secondly in the absence of a stay, DA Defendants face considerable hardship. As noted in the DA Defendants' Motion for Extension of Time to File an Answer, the DA Defendants are not an organization, but 42 individual defendants. Filing an answer on behalf of 42 individuals located across the state, as well as responding to discovery is complicated and will take a substantial amount of time. For example, just a 30 minute conversation with each of the 42 district attorneys will be logistically challenging to schedule, and take 21 hours to complete. Likewise, although this is a facial constitutional challenge, Plaintiffs have indicated

they intend to request discovery from the DA Defendants. Responding to discovery requests for 42 individuals has the potential to be extremely onerous.

If this court continues the adjudication of this claim in federal court, undersigned counsel will incur many hours of potentially unnecessary work, as will the 42 elected district attorneys, many of whom are working diligently to work through unprecedented case backlogs due to the Covid-19 pandemic.[1] Additionally, unnecessary costs would be incurred to proceed with litigation that would ultimately be rendered moot if the *CSI* order is upheld by the North Carolina Supreme Court. This would be a waste of both Plaintiffs' and Defendants' time and State resources. *See Crowell v. North Carolina*, No. 1:17CV515, 2018 U.S. Dist. LEXIS 195753 (M.D.N.C. Nov. 16, 2018). A stay could prevent unnecessary responses, discovery, briefing, accumulation of attorney's fees and other litigation burdens upon the State, in the event that the North Carolina courts decide that all of the persons Plaintiff organizations serve are eligible to vote under North Carolina law and not subject to prosecution under the statute challenged in this case.

The potential prejudice to the non-moving party also weighs in favor of the stay. Plaintiff's request for a preliminary injunction was denied, in part, because of the delay of Plaintiffs filing this action. In denying the preliminary injunction, this Court observed that the challenged statute is alleged to be unchanged since 1931 and the source of Plaintiffs' claims rest on prosecutions that occurred in 2018 and 2019. [DE 24, p. 20]. Furthermore, the addition of these 42 new individuals as defendants was a discretionary decision by Plaintiffs.

---

[1] https://www.ncleg.gov/documentsites/committees/jlocjps/2021-22 interim/march 16, 2022/pending case backlog report_february 22_2022.pdf

Even if the North Carolina appellate courts ultimately uphold the constitutionality of N.C.G.S. § 13-1 and this proceeding can continue in federal court, a stay of the proceedings until the state courts can interpret the scope and breadth of N.C.G.S. § 13-1 will assist this Court in deciding this case on the merits. The potential value in temporarily preventing possibly expansive litigation from proceeding, at this point, is high. The value of such a stay was recognized in the Fourth Circuit in *Neal v. Wal-Mart Stores, Inc.*, where the Court granted a discretionary stay pending the outcome of a US Supreme Court case, recognizing the guidance the ruling could provide to the federal case. No. 3:17-CV-022-KDB-DCK, 2020 U.S. Dist. LEXIS 88203 (W.D.N.C. May 18, 2020). There, the court also recognized that the parties would be expected to file a status report once the Supreme Court decision was released. If a stay is granted, the undersigned pledges to follow this practice and will monitor the progress of the state appellate review and inform the court of the progress or disposition of that matter.

After considering the interests of judicial economy; the hardship and equity to the moving party in the absence of a stay; and the potential prejudice to the non-moving party in the event of a stay, this Court should grant the DA Defendants' motion to stay this action pending the review of the *CSI* order by the North Carolina appellate courts.

Respectfully submitted, this the 22nd day of April, 2022.

JOSHUA H. STEIN
Attorney General


/s/ Kathryn H. Shields
Kathryn H. Shields
Special Deputy Attorney General
N.C. State Bar No. 43200
Email: kshields@ncdoj.gov

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. State Bar No. 28885
Email: eobrien@ncdoj.gov
North Carolina Dept. of Justice
P.O. Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6800
Facsimile: (919) 716-6755
*Counsel for District Attorney Defendants*

# CERTIFICATE OF WORD COUNT

I hereby certify that this brief, including the body of the brief, headings and footnotes, but excluding the caption, signature lines, certificate of service, and any cover page or index not included, does not exceed the 6,250 word limit on briefs supporting motions and responsive briefs, or if a reply brief does not exceed the 3,125 word limit. *See* LR 7.3(d)(1).

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General

# **CERTIFICATE OF SERVICE**

  This is to certify that the undersigned has this day electronically filed the foregoing DA DEFENDANTS MEMORANDUM IN SUPPORT OF MOTION TO STAY using the CM/ECF system, which will send notification of such filing to all the counsel of record for the parties who participate in the CM/ECF system.

  This the 22nd day of April, 2022.

/s/ Elizabeth Curran O'Brien
Elizabeth Curran O'Brien
Special Deputy Attorney General
N.C. Department of Justice
