EXHIBIT K:

APRIL 26, 2022

NORTH CAROLINA COURT OF

APPEALS ORDER ON PETITION FOR

WRIT OF SUPERSEDEAS



# North Carolina Court of Appeals

Fax: (919) 831-3615
Web:
https://www.nccourts.gov

Eugene H. Soar, Clerk
Court of Appeals Building
One West Morgan Street
Raleigh, NC 27601
(919) 831-3600

Mailing Address:
P. O. Box 2779
Raleigh, NC 27602

From Wake County
( 19CVS15941 )

No. P22-153

COMMUNITY SUCCESS INITIATIVE; JUSTICE SERVED NC, INC.; WASH AWAY UNEMPLOYMENT; NORTH CAROLINA STATE CONFERENCE OF THE NAACP; TIMOTHY LOCKLEAR; DRAKARIUS JONES; SUSAN MARION; HENRY HARRISON; ASHLEY CAHOON; and SHAKITA NORMAN,
    PLAINTIFFS,

v.

TIMOTHY K. MOORE, IN HIS OFFICIAL CAPACITY AS Speaker OF THE NORTH CAROLINA HOUSE OF REPRESENTATIVES; PHILIP E. BERGER, IN HIS OFFICIAL CAPACITY AS President PRO TEMPORE OF THE NORTH CAROLINA SENATE; THE NORTH CAROLINA STATE BOARD OF ELECTIONS; DAMON CIRCOSTA, IN HIS OFFICIAL CAPACITY AS CHAIRMAN OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; STELLA ANDERSON, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE NORTH CAROLOINA STATE BOARD OF ELECTIONS; STACY EGGERS IV, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONSs; JEFF CARMON, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS; AND TOMMY TUCKER, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE NORTH CAROLINA STATE BOARD OF ELECTIONS,
    DEFENDANTS.

## O R D E R

The following order was entered:

The petition for writ of supersedeas filed in this cause by defendants Timothy K. Moore, in his official capacity as Speaker of the North Carolina House of Representatives, and Phillip E. Berger, in his official capacity as President Pro Tempore of the North Carolina Senate, on 1 April 2022 is allowed in part for the purpose of staying the "Final Judgment and Order" entered by a divided three-judge panel of Wake County

Superior Court on 28 March 2022 for the upcoming elections on 17 May 2022 and 26 July 2022. *See Purcell v. Gonzalez*, 549 U.S. 1, 166 L. Ed. 2d 1 (2006) (*per curiam*). The status quo established by the North Carolina Supreme Court's 10 September 2021 order in this cause shall remain in effect through these elections. Thereafter, the North Carolina State Board of Elections is ordered to take actions to implement the "Final Judgment and Order" for subsequent elections.

Panel consisting of Judge ARROWOOD, Judge COLLINS, and Judge GRIFFIN.

GRIFFIN, Judge, dissenting.

I dissent from the majority's decision to stay the Final Judgment and Order only through the upcoming primary elections. The majority seemingly believes that, although there are good legal grounds to issue a writ of supersedeas at this time, those grounds will somehow disappear between this primary election and the upcoming general election. There is no basis in law or fact to justify such a conclusion. I would therefore allow the petition for writ of supersedeas unconditionally, for the purpose of staying the trial court's order and maintaining the status quo pending disposition of this appeal.

"'Supersedeas' is a writ issuing from an *appellate court* to preserve the *status quo* pending the exercise of the appellate court's jurisdiction." *New Bern v. Walker*, 255 N.C. 355, 356, 121 S.E.2d 544, 545–46 (1961) (citation omitted). As the majority's decision acknowledged implicitly, this criteria is satisfied. Felon voter applicants have not been permitted to register to vote in any upcoming elections. Issuing a writ of supersedeas would therefore maintain the status quo until Petitioners' appeal has been decided on the merits.

Moreover, and perhaps most salient here, there is a high risk of irreparable harm to Petitioners and the public interest absent this Court granting Petitioner's request through the completion of the appeal process. "A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation omitted). If convicted felons are permitted to vote in the November election and Petitioners subsequently prevail on the merits of their appeal, untold thousands of lawful votes cast by North Carolina citizens likely will be diluted by votes cast by convicted felons in violation of our State Constitution. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). Nonetheless, the majority has necessarily contemplated this risk and deemed it unworthy of even a brief analysis in its boiler-plate order.

Finally, Petitioners are exceedingly likely to succeed in overturning the trial court's order on appeal. Plaintiffs contend that the prohibition on voting for felons now serving parole, probation, or post-release supervision violates the Equal Protection Clause and Free Elections Clause of our State Constitution. But these constitutional provisions are not the operative ones for convicted felons seeking to vote. Our State Constitution provides that "[n]o person adjudged guilty of a felony . . . shall be permitted to vote unless that person shall be first restored to the rights of citizenship in the manner prescribed by law." N.C. Const. art. VI, § 2(3). The framers of our State Constitution, and the people of this State, established in this provision that convicted felons would *not* be treated the same as similarly situated, law-abiding citizens and would *not* be entitled to same right to vote in free elections. Instead, convicted felons would not have the right to vote *unless* their voting rights are restored "in the manner prescribed by law." N.C. Const. art. VI, § 2(3).

N.C. Gen. Stat. § 13-1 provides, *inter alia*, that a convicted felon's voting rights are automatically restored upon the "unconditional discharge" from the criminal sentence—language that, by its plain terms, requires completion of any parole, probation, or post-release supervision that is a part of the felon's criminal sentence. The trial court enjoined section 13-1's restoration provisions, finding that "if a person otherwise eligible to vote is not in jail or prison for a felony conviction, they may lawfully register and vote in North Carolina." In so doing, the superior court stepped outside of the judicial role of reviewing and interpreting a statute expressly authorized by our State Constitution and usurped the role of the General Assembly, rewriting section 13-1 as it saw fit. "It is axiomatic that . . . rewrit[ing] a statute is antithetical to the proper role of a court in our system of government." *Fairfield v. WakeMed*, 261 N.C. App. 569, 575, 821 S.E.2d 277, 281 (2018) (citing *State v. Cobb*, 262 N.C. 262, 266, 136 S.E.2d 674, 677 (1964); *see also Badaracco v. Comm'r*, 464 U.S. 386, 299 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement."). Petitioners are therefore likely to succeed on the merits of their appeal.

By granting what effectively is only a temporary stay of the order through the primary elections, the majority risks allowing an unknown number of convicted felons to vote in the general elections. All the while, there is a high likelihood that either our Supreme Court or a panel of this Court will determine in a later proceeding that those votes were unlawfully cast. This Court's order poses an unacceptable risk of diluting lawful votes and compromising the integrity of our election process. There is no reason to believe that any of the factors weighing in favor of a writ of supersedeas will change after the primary elections have ended. Indeed, none of the factors we consider contain any temporal elements that would alter this analysis. The majority is silent as to what, if anything, about the need for the writ changes simply because of the completion of all primary elections. I therefore dissent from the majority's order and encourage my colleagues on this Court to consider re-hearing this cause *en banc* to protect an orderly election, the rule of law, and the appeal process.

By order of the Court this the 26th of April 2022.

WITNESS my hand and the official seal of the North Carolina Court of Appeals, this the 26th day of April 2022.

Eugene H. Soar
Clerk, North Carolina Court of Appeals

Copy to:
Ms. Nicole J. Moss, Attorney at Law, For Anderson, Stella (as Secretary of State Board of Elections) - (By Email)
Mr. Daryl V. Atkinson, Attorney at Law, For Community Success Initiative - (By Email)
Ms. Caitlin Swain, Attorney at Law, For Community Success Initiative - (By Email)
Ms. Whitley J. Carpenter, Attorney at Law, For Community Success Initiative - (By Email)
Ms. Kathleen F. Roblez, Attorney at Law, For Community Success Initiative - (By Email)
Ms. Ashley Mitchell, Attorney at Law, For Community Success Initiative - (By Email)
Mr. Terence Steed, Assistant Attorney General, For The North Carolina State Board of Elections - (By Email)
Ms. Elisabeth S. Theodore, Attorney at Law, Pro Hac Vice, For Community Success Initiative - (By Email)
Mr. Farbod K. Faraji, Attorney at Law, For Community Success Initiative - (By Email)
Ms. Mary Carla Babb, Special Deputy Attorney General, For The North Carolina State Board of Elections - (By Email)
Mr. R. Stanton Jones, Attorney at Law, Pro Hac Vice, For Community Success Initiative - (By Email)
Mr. David Thompson, Attorney at Law, For Berger, Philip E. (Official Capacity as President Pro Tempore), et al - (By Email)
Mr. Peter Patterson, Attorney at Law, For Moore, Timothy K. (Official Capacity as Speaker), et al - (By Email)
Mr. Joseph O. Masterman, Attorney at Law, For Berger, Philip E. (Official Capacity as President Pro Tempore), et al - (By Email)
Mr. William V. Bergstrom, Attorney at Law, For Berger, Philip E. (Official Capacity as President Pro Tempore), et al - (By Email)
Hon. Frank Blair Williams, Clerk of Superior Court