# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA A. PHILIP RANDOLPH
INSTITUTE and ACTION NC,

     *Plaintiffs*,

       v.

THE NORTH CAROLINA STATE BOARD OF
ELECTIONS, et al.,

     *Defendants*.

Civil Action No.
1:20-cv-00876

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE DISTRICT ATTORNEY DEFENDANTS' MOTION TO STAY

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................1

PROCEDURAL HISTORY .........................................................................................4

ARGUMENT ...............................................................................................................8

I.    The Court Should Not Stay This Action Pending the Full Appellate
      Resolution of *CSI* ...........................................................................................8

      A.    The District Attorney Defendants Have Not Established a Clear Case
            of Hardship or Inequity Warranting a Stay..................................................9

      B.    Plaintiffs Would Be Severely Harmed If the Court Were to Grant a
            Stay of This Action...................................................................................10

      C.    Concerns About Judicial Economy Do Not Warrant a Stay......................14

CONCLUSION..........................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Association Fe Y Allegria v. Republic of Ecuador*,
No. 98-cv-8650-BSJ, 98-cv-8693-BSJ, 1999 WL 147716 (S.D.N.Y. Mar. 16, 1999) ...................................................................................................13

*Common Cause v. Rucho*,
No. 1:16-cv-1026, No. 1:16-cv-1164, 2017 WL 3981300 (M.D.N.C. Sept. 8, 2017) .......................................................................................12, 14-15

*Diversified Foods and Seasonings, Inc. v. Basic Food Flavors, Inc.*,
No. 10-cv-4339, 2011 WL 13213833 (E.D. La. June 6, 2011) .............................. 14-5

*Kadel v. Folwell*, 446 F. Supp. 3d 1 (M.D.N.C. 2020),
*aff'd on other grounds*, 12 F.4th 422 (4th Cir. 2021).....................................9-10, 12

*Landis v. North American Co.,* 299 U.S. 248 (1936) ...................................................3, 8

*League of Women Voters of Mich. v. Johnson*,
No. 2:17-cv-14148, 2018 WL 10483912 (E.D. Mich. Mar. 14, 2018) ...........9, 11-12

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ..............................................4, 9

*MMIC Ins., Inc. v. Midwest Cardiology, P.C.*,
No. 8:16-cv-311, 2016 WL 8738219 (D. Neb. Oct. 3, 2016)....................................10

*N.C. State Conf. of NAACP v. Cooper*,
397 F. Supp. 3d 786 (M.D.N.C. 2019) ................................................................8, 12-13

*U.S. ex rel. Lindsey v. Trend Cmty. Mental Health Servs.*,
88 F. Supp. 2d 475 (W.D.N.C. 1999)...................................................................13-14

*Williford v. Armstrong World Indus., Inc.*, 715. F.2d 124 (4th Cir. 1983).....................3, 9

*Yadkin v. Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*,
141 F. Supp. 3d 428 (M.D.N.C. 2015) .................................................................12. 14

Case 1:20-cv-00876-LCB-JLW   Document 72   Filed 05/04/22   Page 3 of 22

**Statutes**

N.C.G.S. § 13-1 ................................................................................4-5, 14

N.C.G.S. § 163-275(5) ........................................................................*passim*

iii

Plaintiffs the North Carolina A. Philip Randolph Institute and Action NC (together, "Plaintiffs") respectfully submit this response in opposition to the District Attorney Defendants' Motion to Stay. For the reasons set forth below, the Court should deny the Motion and set a schedule for discovery and dispositive motions.

## INTRODUCTION

For the District Attorneys, never will be soon enough for the parties and the Court to reach the merits of this case. After trying and failing both before this Court and the District Court to win dismissal of the claims against them in this action, the District Attorney Defendants now assert for the first time that this Court should stay this case pending the complete appellate resolution of *Community Success Initiative v. Moore* ("*CSI*"), a case filed in state court by different plaintiffs more than two and a half years ago. At issue in *CSI* is the constitutionality of North Carolina's felony disenfranchisement scheme under the North Carolina State Constitution. The plaintiffs in *CSI* have not asserted any claims challenging N.C.G.S. § 163-275(5) (the "Strict Liability Voting Law"), the only statute at issue in this case.

Under the orders presently in place in *CSI*, individuals who are on extended probation or post-release supervision for a felony conviction solely due to outstanding fines and fees are eligible to vote. Other individuals who are on post-release supervision, parole or probation for a felony conviction who registered to vote between August 23, 2021 and September 3, 2021 are also eligible to vote. All other individuals who are on post-release supervision, parole or probation for a felony conviction who did not register

1

to vote during this short window are ineligible to vote in the upcoming primary elections on May 17, 2022 and July 26, 2022; but they will be eligible to vote in the November 8, 2022 general election and all future elections pending a decision by the North Carolina Court of Appeals or the North Carolina Supreme Court.

The North Carolina Court of Appeals has yet to review the Wake County Superior Court's Final Judgment and Order in *CSI*. Once an appellate decision is issued, that ruling may then be appealed to the North Carolina Supreme Court. Even if the North Carolina Supreme Court exercises its discretion to review the Final Judgment and Order without waiting for the North Carolina Court of Appeals to hear the case first, as the *CSI* plaintiffs have requested, it will likely take several months or longer before a decision is issued.

Regardless of how the *CSI* case is resolved, the Strict Liability Voting Law will remain in effect. It will continue to provide a vehicle for the District Attorney Defendants to prosecute individuals with past felony convictions who mistakenly vote in violation of North Carolina's current felony disenfranchisement law, or any future felony disenfranchisement law the General Assembly passes. Contrary to the District Attorney Defendants' contentions, the *CSI* cannot render this action moot or irrelevant.

Moreover, granting a stay of this 18-month old action pending the full appellate resolution of *CSI* will severely prejudice Plaintiffs, whose missions will continue to be impeded by the chilling effect caused by the fear of prosecution under the Strict Liability Voting Law among eligible voters with past criminal convictions. Plaintiffs will have to

2

continue to divert resources from their other voter engagement efforts to educate and reassure eligible voters with criminal records that they can safely vote notwithstanding the Strict Liability Voting Law.

While *CSI* is pending, the District Attorney Defendants will be free to prosecute individuals who mistakenly voted while on probation, parole or post-release supervision for a felony conviction in the 2016 and 2020 elections, or who mistakenly vote in the upcoming May 16, 2022 and July 26, 2022 elections. Even a single prosecution under the Strict Liability Voting Law would exacerbate the fear of voting among eligible voters with criminal convictions. This chilling effect could persist even if the North Carolina Supreme Court ultimately rules in favor of the *CSI* plaintiffs, because the Strict Liability Voting Law will remain on the books.

In view of the prejudice to Plaintiffs by any further delay of this action, the District Attorney Defendants "must make out a clear case of hardship or inequity" to merit a stay under *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). They must also "justify" their need for a stay "by clear and convincing circumstances outweighing" the harm to Plaintiffs. *Williford v. Armstrong World Indus., Inc.*, 715. F.2d 124, 127 (4th Cir. 1983). The District Attorney Defendants do not and cannot meet this heavy burden to warrant a stay. Although the District Attorney Defendants had no trouble litigating their motion to dismiss and filing timely objections to this Court's recommendation that their motion be denied, they now assert that they will "face considerable hardship" if they are required to file an Answer (for which they recently

3

obtained a 60-day extension) and respond to discovery requests. Memorandum in Support of District Attorney Defendants' Motion to Stay ("Motion") at 7. But "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Notably, the District Attorney Defendants have not disclaimed their intent to enforce the Strict Liability Voting Law with respect to any individual with a felony conviction who mistakenly votes before the restoration of citizenship rights during the pendency of the stay they are seeking. Absent such a disclaimer of intent to enforce, granting a stay of this action would result in a manifest injustice to Plaintiffs.

Because of the importance to Plaintiffs of a prompt resolution of this action, Plaintiffs have filed the instant response in opposition to the District Attorney Defendants' Motion to Stay as early as practically possible, nine days ahead of the filing deadline.

## PROCEDURAL HISTORY

Nearly a year before Plaintiffs filed the Complaint in this action, Community Success Initiative and several other nonprofit organizations filed suit in Wake County Superior Court challenging North Carolina's felony disenfranchisement scheme. The *CSI* plaintiffs challenge the constitutionality of N.C.G.S. § 13-1 under the North Carolina State Constitution insofar as it disenfranchises individuals who have been released from incarceration for a felony conviction, in particular those who have completed all terms of

4

their sentences but for the full payment of fines, fees and restitution. The *CSI* plaintiffs do not claim that the term "unconditional discharge" in § 13-1 is unconstitutionally vague, nor do they assert any claims challenging the constitutionality of the Strict Liability Voting Law. Moreover, none of the Plaintiffs in the instant action are plaintiffs in *CSI*; and no District Attorney is named as a defendant in *CSI*.[1]

On September 24, 2020, Plaintiffs filed their original Complaint in the instant action. Plaintiffs assert two claims challenging the constitutionality of the Strict Liability Voting Law under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. Neither of these claims is at issue in *CSI*.

Plaintiffs initially named the North Carolina State Board of Elections, its Executive Director, its members, and the North Carolina Attorney General as defendants. However, the Court found that "it is the State district attorneys"—and not the North Carolina Attorney General—"that have been conferred specific statutory authority to prosecute" under the Strict Liability Voting Law. Dkt. 24 at 12, *adopted by*, Dkt. 34. On February 23, 2021, Plaintiffs filed an Amended Complaint naming all of the state's District Attorneys as defendants in lieu of the Attorney General. Dkt. 36.

On March 18, 2021, the District Attorney Defendants sought a thirty-day

---

[1] The *CSI* plaintiffs named as defendants the following individuals in their official capacities: the Speaker of the North Carolina House of Representatives, the President Pro Tempore of the North Carolina Senate, and the members of the North Carolina State Board of Elections. The *CSI* plaintiffs also named the North Carolina State Board of Elections as a defendant.

5

extension to answer or otherwise respond to the Amended Complaint. Dkt. 41. Counsel for the District Attorney Defendants represented to the Court as follows with respect to the need for this extension:

> The plaintiffs' amended complaint is 60 pages long and contains 113 paragraphs, with many historical references and sources related to legislative history not readily available on online legal research platforms. Additionally, the undersigned represent each elected District Attorney in North Carolina, which are 42 individuals, and not one entity. The need for the undersigned to investigate the claims asserted in the complaint and appropriately analyze and research the allegations raised by the plaintiffs, as well as any available defenses prior to responding, necessitates additional time.

*Id.* at ¶ 11. Plaintiffs consented to the District Attorneys Defendants' request for a thirty-day extension. *Id.* at ¶ 13. On March 18, 2021, the Court granted the District Attorney Defendants an extension until April 19, 2021 to answer or otherwise respond to the Amended Complaint.

On April 19, 2021, the District Attorney Defendants moved to dismiss the Amended Complaint. Dkt. 46. On February 14, 2022, the Court issued a Memorandum Opinion and Recommendation ("R&R") recommending that the District Court deny the District Attorney Defendants' motion to dismiss. Dkt. 60. On February 28, 2022, the District Attorney Defendants objected to the R&R. Dkt. 63. On March 28, 2022, the District Court adopted the R&R in its entirety, and denied the District Attorney Defendant's motion to dismiss the Amended Complaint. Dkt. 66.

On April 14, 2022, the District Attorney Defendants moved for an extension of

6

time to answer or otherwise respond to the Amended Complaint. Dkt. 68. Counsel for the

District Attorney Defendants represented to the Court as follows with respect to the need

for this lengthy extension:

> 15. Plaintiffs' amended complaint is 60 pages long and contains 113 paragraphs.
>
> 16. The District Attorney Defendants are not an organization, but are 42 individually elected officials located across the State of North Carolina. Each of these individual district attorneys have significant responsibilities and busy schedules. . . . .
>
> 17. Undersigned counsel is duty bound to consult with each of the 42 individual district attorney defendants to answer the factual allegations of the amended complaint.
>
> 18. Once undersigned counsel has been able to schedule and conduct consultations with each of the 42 individual defendants, the undersigned will then need time to assess whether one answer, or multiple answers should be filed, and if any individual district attorneys will require separate counsel.
>
> 19. The need to consult with the 42 individual defendants necessitates additional time.

Dkt. 68 at ¶¶ 15-19.[2] On April 18, 2022, the Court granted the District Attorney

Defendants' motion for an extension and reset the deadline by which the District

---

[2] Plaintiffs offered to agree to the District Attorney Defendants' request for a sixty-day extension to answer or otherwise respond to the Amended Complaint provided the District Attorney Defendants consented to accepting and responding to discovery requests during that time. Counsel for the District Attorney Defendants did not respond to that offer but instead moved the Court for an extension.

7

Attorney Defendants must answer or otherwise respond to the Amended Complaint to June 17, 2022.

On April 22, 2022, the District Attorney Defendants moved for the first time "to stay proceedings in this action pending resolution of [*CSI*] in the North Carolina appellate courts." Motion at 1. By this point, *CSI* had been pending for well over two years, and the District Attorney Defendants had been defendants in this case for approximately a year and two months.

## ARGUMENT

## I.    The Court Should Not Stay This Action Pending the Full Appellate Resolution of *CSI*

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.[3] "The burden rests on the party seeking the stay to justify it by clear and convincing circumstances outweighing potential harm to the opposing party." *N.C. State Conf. of NAACP v. Cooper*, 397 F. Supp. 3d 786, 797 (M.D.N.C. 2019); *see also Landis*, 299 U.S. at 255 ("[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.").

---

[3] Unless otherwise noted, internal citations, alterations and quotation marks are omitted throughout.

8

**A.    The District Attorney Defendants Have Not Established a Clear Case of Hardship or Inequity Warranting a Stay**

Defendants have been complaining of the burden of responding to the Amended Complaint since March of 2021, well over a year ago. *See* Dkt. 41 at ¶ 11. On the basis of this purported hardship, they have successfully obtained two extensions to answer or otherwise respond to the Amended Complaint. Notably, however, the District Attorney Defendants were able to file detailed briefs in support of their motion to dismiss and their objections to the Court's recommended denial of that motion within the applicable two-week period without any need for extensions.

The District Attorney Defendants now assert that they would "face considerable hardship" if they were required to file an Answer and respond to discovery requests in this action during the continued pendency of *CSI*, in which they are not named as defendants. Motion at 7. But the usual burdens of litigation do not rise to the level of a "clear case of hardship or inequity" sufficient to outweigh the harm to Plaintiffs under *Landis*. *See Lockyer*, 398 F.3d at 1112; *see also, e.g.*, *Williford*, 715 F.2d at 128 (recognizing that "burdens are inevitable for all parties in [complex] litigation," but finding that this litigation burden did "not constitute a sufficient offset to the plaintiff's right to have his case resolved without undue delay"); *League of Women Voters of Mich. v. Johnson*, No. 2:17-cv-14148, 2018 WL 10483912, at *2 (E.D. Mich. Mar. 14, 2018) (finding defendants' "concerns about the usual burdens of litigation" insufficient to "make out a clear case of hardship or inequity" necessary "to obtain a stay"); *Kadel v.*

9

*Folwell*, 446 F. Supp. 3d 1, 19 (M.D.N.C. 2020) (finding that defendants "fail[ed] to present clear and convincing circumstances outweighing th[e] harm" to plaintiffs from a delay where "the 'harm' to [d]efendants of not staying [the] case appear[ed] to be nothing more than the inconvenience of having to begin discovery"), *aff'd on other grounds*, 12 F. 4th 422 (4th Cir. 2021).

The District Attorney Defendants also vastly overstate the burdens of discovery given the nature of the claims in this action. Plaintiffs' vagueness claim is a pure question of law, and Plaintiffs' Equal Protection claim primarily turns on the question of whether the Strict Liability Voting Law was originally enacted with discriminatory intent in 1877 and re-enacted with discriminatory intent in 1899. Because this case will likely involve only minimal fact and expert discovery, any purported burdens of responding to discovery requests do not warrant the issuance of a stay. *See, e.g., MMIC Ins., Inc. v. Midwest Cardiology, P.C.*, No. 8:16-cv-311, 2016 WL 8738219, at *2 (D. Neb. Oct. 3, 2016) (denying the defendant's motion for a stay pending the resolution of a dispositive motion in a related state court action where the plaintiff needed only "minimal discovery" to move for summary judgment).

### B.     Plaintiffs Would Be Severely Harmed If the Court Were to Grant a Stay of This Action

If the Court were to stay this action, the threat of enforcement of the Strict Liability Voting Law would continue to deter eligible voters with criminal convictions from exercising their constitutional right to vote during the entire pendency of *CSI*, which

10

could take months or even years to resolve. *See generally League of Women Voters of Mich.*, 2018 WL 10483912, at *1 (observing that "[v]oting rights litigation is notoriously protracted"). During this time, the District Attorney Defendants could prosecute individuals who voted in past elections based on a good-faith belief that they were eligible to do so. This possibility is far from speculative, as the North Carolina State Board of Elections recently referred for prosecution 46 cases of individuals voting before felony sentence completion just in the period between September 1, 2020 and January 4, 2022.[4] Moreover, given the recent orders issued in rapid succession in *CSI*, individuals who are on parole, probation or post-release supervision for a felony conviction may mistakenly believe that they are eligible to vote in the upcoming May 16, 2022 and July 26, 2022 elections and be subject to investigation and prosecution for doing so. If the District Attorney Defendants exercise their discretion under the Strict Liability Voting Law to prosecute any of these individuals during the pendency of *CSI*, such prosecutions will exacerbate the chilling effect of the Strict Liability Voting Law among eligible voters with criminal records.

Plaintiffs would suffer substantial harm if they were precluded from litigating this action pending the full resolution of *CSI*. Courts have denied motions for stays in

---

[4] 2021 NCSBE Incident and Case Data, *available at* https://s3.amazonaws.com/dl.ncsbe.gov/Investigations/NCSBE%20Incident%20and%20 Case%20Data%201.4.22.pdf. No statute of limitations applies to prosecutions under the Strict Liability Voting law, because it is a felony-level offense. *See State v. Taylor*, 713 S.E.2d 82, 90 (N.C. Ct. App. 2011).

11

analogous circumstances. *See, e.g., Kadel,* 446 F. Supp. 3d at 19 (denying motion for a stay pending the resolution of a Supreme Court case, and reasoning that "it may be months before a decision is issued in [that case]—a substantial delay for those seeking to vindicate their civil rights"); *Common Cause v. Rucho*, No. 1:16-cv-1026, No. 1:16-cv-1164, 2017 WL 3981300, at *7 (M.D.N.C. Sept. 8, 2017) (denying a motion for a stay pending the resolution of a Supreme Court case and reasoning that staying the case "creates a substantial risk that, in the event Plaintiffs prevail, this Court will not have adequate time to afford Plaintiffs the relief they seek" in time for the upcoming election); *League of Women Voters of Mich.*, 2018 WL 10483912, at *1-2 (denying a motion to stay a redistricting case pending the resolution of two Supreme Court redistricting cases, and reasoning that defendants' "concerns about the usual burdens of litigation and judicial economy" did not outweigh "the prejudice to [p]laintiffs and the public interest that would arise if th[e] case were to persist through [multiple] election cycles"); *Yadkin v. Riverkeeper, Inc. v. Duke Energy Carolinas, LLC*, 141 F. Supp. 3d 428, 452 (M.D.N.C. 2015) (finding that "the balance of factors weigh[ed] against" staying a federal court action pending the resolution of a state court case because "[a] stay would allow [the defendant's] alleged violations to persist").

The District Court's decision in *North Carolina State Conference of NAACP v. Cooper* is particularly instructive. There, defendants moved to stay an action challenging North Carolina's voter identification law pending the resolution of two state court cases challenging the same law. The Court found it significant that the case involved

12

"constitutional challenges to a statute which allegedly imposes discriminatory and unlawful burdens on individuals' right to vote based on race." 397 F. Supp. 3d at 797. The Court denied the stay because "the potential harm to [p]laintiffs' attempt to vindicate their voting rights prior to the impending election vastly outweigh[ed] any countervailing interests of judicial economy and hardship to [the] [d]efendants." *Id.* at 798. As in *North Carolina State Conference of NAACP*, the Court should deny the District Attorney Defendants' motion for a stay in view of the harm Plaintiffs will suffer from any further delays in the litigation of this action.

Defendants suggest that granting a stay would not prejudice Plaintiffs because the Strict Liability Voting Law has remained substantively unchanged for several decades. But the chilling effect that is the source of Plaintiffs' injuries dates back to relatively recent voter prosecutions in 2018 and 2019. Moreover, even if Plaintiffs injuries were "longstanding, rather than recent," that would not "diminish the prejudice to [P]laintiffs of further delay." *Association Fe Y Allegria v. Republic of Ecuador*, No. 98-cv-8650-BSJ, 98-cv-8693-BSJ, 1999 WL 147716, at *1 (S.D.N.Y. Mar. 16, 1999) (finding that plaintiffs would be unfairly prejudiced by a stay of discovery even though they "waited more than eleven years since accrual of their claims to file suit").

At this point, Plaintiffs' case has been pending for more than eighteen months, and discovery has not yet commenced. The Court should not "allow the case to further languish." *U.S. ex rel. Lindsey v. Trend Cmty. Mental Health Servs.*, 88 F. Supp. 2d 475, 477 (W.D.N.C. 1999) (denying a motion to stay proceedings pending the resolution of a

13

Supreme Court case; and reasoning that "[a]lmost two years" after filing suit, plaintiffs still had "not had the initial pretrial conference," "[n]o case management plan ha[d] been entered" and "no discovery ha[d] occurred").

### C. Concerns About Judicial Economy Do Not Warrant a Stay

Contrary to the District Attorney Defendants' contentions, the *CSI* case cannot moot the claims at issue in this case because the *CSI* plaintiffs do not challenge the Strict Liability Voting Law. That unconstitutional law will remain in effect pending the resolution of *this* litigation. Moreover, if the North Carolina Supreme Court determines that N.C.G.S. § 13-1 is unconstitutional under the state constitution insofar as it applies to individuals who are not incarcerated for a felony conviction, the North Carolina Legislature could at any point enact a new felony disenfranchisement law . Individuals with felony convictions who mistakenly vote in violation of such a law would be subject to prosecution under the Strict Liability Voting Law.

Even if the Court finds that it might be more efficient to await the final resolution of *CSI* before deciding this case, the Court should not grant a stay based on concerns regarding judicial economy alone. *See, e.g., Diversified Foods and Seasonings, Inc. v. Basic Food Flavors, Inc.*, No. 10-cv-4339, 2011 WL 13213833, at *2  (E.D. La. June 6, 2011) ("[J]udicial economy is insufficient by itself to warrant a stay of litigation."); *see also, e.g.*, *Yadkin*, 141 F. Supp. 3d at 454 ("While judicial economy is one of the factors the Court must consider in granting a stay, when balanced against the potential harm to individuals and families, considerations of judicial economy must give way."); *Common*

14

*Cause*, 2017 WL 3981300, at *7 (denying a stay that would "minimally advance the interests of judicial economy and preventing hardship to [the] [d]efendants" because "such a stay would expose Plaintiffs to substantial prejudice").

## CONCLUSION

For the foregoing reasons, this Court should deny the District Attorney Defendants' Motion for a Stay and set a schedule for discovery and dispositive motions.

15

Dated: May 4, 2022

By:   /s/ Mitchell D. Brown

SIMPSON THACHER & BARTLETT
LLP
Jonathan K. Youngwood (*specially appearing*)
Nihara K. Choudhri (*specially appearing*)
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502
jyoungwood@stblaw.com
nchoudhri@stblaw.com

SOUTHERN COALITION FOR SOCIAL
JUSTICE
Allison J. Riggs (State Bar No. 40028)
Mitchell D. Brown (State Bar No. 56122)
1415 West Highway 54, Suite 101
Durham, NC 27707
Tel: (919) 323-3380
Fax: (919) 323-3942
allisonriggs@southerncoalition.org
mitchellbrown@scsj.org

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Response in Opposition to the District Attorney Defendants' Motion to Stay contains 3760 words (including headings and footnotes) as measured by Microsoft Word.

/s/ Mitchell D. Brown
Mitchell D. Brown

17

## CERTIFICATE OF SERVICE

I certify that on the 4th day of May, 2022, the foregoing Response in Opposition to the District Attorney Defendants' Motion to Stay was served through the ECF system to all counsel of record, with consent of all counsel to accept service in this manner.