IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA A. PHILIP RANDOLPH INSTITUTE and ACTION NC,<br><br>   *Plaintiffs*,<br><br>      v.<br><br>THE NORTH CAROLINA STATE BOARD OF ELECTIONS, et al.,<br><br>   *Defendants*. | Civil Action No.<br>1:20-cv-00876<br><br>**MOTION HEARING ON NOVEMBER 14, 2023** |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

The Court should grant summary judgment that N.C.G.S. § 163-275(5) (the "Law") violates the Fourteenth Amendment. Defendants have conceded that they "do not possess any evidence to dispute" that the Law was enacted with discriminatory intent in 1877 (ECF 94, at 2), the Law was reenacted with discriminatory intent in 1899 (*id.* at 3), and the Law continues to have a disproportionate effect on Black voters through today (*id*. at 8, 10). Nothing in Senate Bill 747 ("SB 747") changes those undisputed facts. The Law is therefore unconstitutional and cannot be saved by SB 747. In addition, because SB 747 has not gone into effect and is not retroactive, the existing Law will continue to impede Plaintiffs' voter organization efforts. The case will not become moot.

First, Section 38 of SB 747, which amends the Law to add a scienter requirement, does not go into effect until January 1, 2024 and does not apply retroactively. *See* SB 747, § 50 ("Sections 38 through 43 of this act become effective January 1, 2024, and apply to elections on or after that date."). Accordingly, the current state of the Law has not changed. Under Fourth Circuit precedent, the Law, "as now written," continues to violate the Constitution and this "litigation may press on." *See Brusznicki v. Prince George's Cnty.*, 42 F.4th 413, 419 (4th Cir. 2022) (holding that "where, 'as now written,' a statute continues to abridge plaintiffs' rights, litigation may press on") (citation omitted). The prospective future change in the Law does not cure the existing constitutional violations or provide Defendants with an escape hatch to avoid summary judgment. There are still no genuine issues of material fact in dispute regarding the discriminatory intent and impact of the Law. And there is still no merit to Defendants'

1

novel argument that a 1971 constitutional amendment that did not mention the Law somehow indirectly cleansed the Law's undisputed taint. *See* ECF 96 at 3-6.

Second, this case will not become moot after SB 747 goes into effect on January 1, 2024. Defendants must satisfy a "demanding standard" to establish that this case will become moot. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019). "A case becomes moot *only* when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *United States v. Springer*, 715 F.3d 535, 540 (4th Cir. 2013). As long as the parties retain a "concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307-08 (2012) (citation omitted).

The Fourth Circuit has held that a legislative change will only moot a case when it "destroy[s] the basis for Plaintiffs' claims." *Brusznicki*, 42 F.4th at 419. When the challenged risks associated with a prior version of the law remain after the amendment, the case cannot be deemed moot. *See, e.g.*, *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609-10 (2013) ("[D]espite the recent amendment, a live controversy continues to exist regarding whether petitioners may be held liable . . . under the earlier version of the . . . Rule."); *Ctr. for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 293 (4th Cir. 2013) (case not moot given risk of prosecution for past violations of repealed law); *Rembert v. Sheahan*, 62 F.3d 937, 941 (7th Cir. 1995) ("[W]hen an intervening amendment provides no assurance that the complained-of conduct will cease, the case is not moot.").

SB 747 will not fully address Plaintiffs' claims. North Carolina voters will

continue to face the threat of prosecution under the Law in its current form even after SB 747 becomes effective. In North Carolina, "the amendment of a criminal statute does not affect the prosecution or punishment of a crime committed before the amendment becomes effective . . . as to such crimes the original statute remains in force." *State v. Teague*, 879 S.E.2d 881, 895 n.5 (N.C. Ct. App. 2022). Moreover, "no statute of limitations bars the prosecution of a felony." *State v. Taylor*, 713 S.E.2d 82, 90 (N.C. Ct. App. 2011). As Plaintiffs demonstrated in the undisputed record, the risk of potential prosecution under the Law—even among those eligible to vote—has hindered their voter organization efforts. *See* ECF 89-20 (declaration of Executive Director, North Carolina A. Philip Randolph Institute stating that "[r]ecent prosecutions under [the Law] have really frightened people who might otherwise have been willing to register to vote and cast a ballot"); ECF 89-21 (declaration of Executive Director, Action NC, stating that "Action NC has had a significantly harder time persuading individuals with criminal convictions to participate in the democratic process" as a result of prosecutions under the Law). As long as the risk of prosecution under the existing Law remains, Plaintiffs' voter organization efforts will be impeded. Indeed, continued prosecutions under the existing Law would cause great voter confusion as to the state of the Law post-January 1, 2024.

The record further indicates that Defendants are likely to continue to enforce the Law in its current form after SB 747 becomes effective. Documents produced by Defendants show there are more than 200 cases currently subject to DA review for potential prosecution, and NCSBE's general counsel testified the Board was committed

3

to referring all violations of the Law for potential prosecution.  *See* ECF 97-1; ECF 89-5 at 81:21-82:13 (noting that the NCSBE follows "a mandatory requirement to refer any case of a violation of election laws under the jurisdiction of the State Board").  The experience with the NCSBE's 2016 election audit further indicates that prosecutions from these pending referrals could occur years after the Law has been changed.  *See* ECF 86 at 13-14 (discussing prosecutions in 2018 and 2019 that arose from voting in 2016).  Public prosecutions under the existing, historic Law in the lead up to the 2024 election cycle would cause voter confusion and impede Plaintiffs' efforts.  And, while Defendants have not agreed to cease prosecutions under the existing Law, "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).

       This Court's decisions on standing further demonstrate that Plaintiffs will still have a sufficiently concrete interest in the outcome of this litigation even after SB 747 becomes effective.  *See Knox*, 567 U.S. at 307.  In denying the DA Defendants' motion to dismiss, the Court found that Plaintiffs had standing because (i) "resources have been diverted to address fears surrounding the enforcement of [the Law]"; (ii) "Plaintiffs core missions are impeded . . . by the possibility of the DA Defendants exercising their authority to enforce the challenged statute against eligible voters with criminal convictions"; and (iii) enjoining Defendants from enforcing the Law "would be a tangible benefit to Plaintiffs as it would necessarily prohibit them from investigating or referring for prosecution any violation of the statute."  ECF 60 at 12-18.  Those facts will remain

unchanged after January 1, 2024.  Plaintiffs will still need to divert resources to educate eligible voters who face uncertainty and confusion as to the state of the Law; the fear of prosecution will continue to loom over voters who may avoid participating in elections altogether; and enjoining enforcement of the Law will result in a tangible benefit to Plaintiffs by reducing the burden imposed on their organization efforts.

Finally, SB 747 has no impact on Plaintiffs' standing, which is determined solely based on "the facts at the time the complaint was filed." *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022); *see also Friends of the Earth*, 528 U.S. at 180 ("[W]e have an obligation to assure ourselves that FOE had Article III standing at the outset of the litigation."); *Republic Bank & Tr. Co. v. Kucan*, 245 F. App'x 308, 315 (4th Cir. 2007) (standing is "determined by the facts in existence at the time the action is commenced"); *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (same, citing *Friends of the Earth* and decisions of six other circuit courts).  "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) (citing, *e.g.*, *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)).

In sum, far from it being "impossible for [the Court] to grant any effectual relief whatever to the prevailing party" as a result of SB 747, *Springer*, 715 F.3d at 540, the Court can still prevent ongoing and future harm by permanently enjoining an indisputably racist law.  Plaintiffs respectfully request that the Court grant summary judgment.

Dated: November 3, 2023

By:   /s/ *Jeffrey Loperfido*

| | |
|---|---|
| SIMPSON THACHER & BARTLETT LLP<br>Jonathan K. Youngwood (*specially appearing*)<br>David Elbaum (*specially appearing*)<br>Nihara K. Choudhri (*specially appearing*)<br>Jacob Lundqvist (*specially appearing*)<br>425 Lexington Avenue<br>New York, NY 10017<br>Tel: (212) 455-2000<br>Fax: (212) 455-2502<br>jyoungwood@stblaw.com<br>delbaum@stblaw.com<br>nchoudhri@stblaw.com<br>jacob.lundqvist@stblaw.com | SOUTHERN COALITION FOR SOCIAL JUSTICE<br>Jacob H. Sussman (State Bar No. 31821)<br>Jeffrey Loperfido (State Bar No. 52939)<br>Mitchell D. Brown (State Bar No. 56122)<br>1415 West Highway 54, Suite 101<br>Durham, NC 27707<br>Tel: (919) 323-3380<br>Fax: (919) 323-3942<br>jsussman@scsj.org<br>jeffloperfido@scsj.org<br>mitchellbrown@scsj.org |

*Attorneys for Plaintiffs*

# CERTIFICATE OF WORD COUNT

Pursuant to Local Rules 7.3(d)(1), the undersigned counsel hereby certifies that the foregoing Supplemental Brief in Further Support of Plaintiffs' Motion for Summary Judgment contains 1,473 words (including headings and footnotes) as measured by Microsoft Word.

/s/ *Jeffrey Loperfido*
Jeffrey Loperfido

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of November, 2023, the foregoing Supplemental Brief in Further Support of Plaintiffs' Motion for Summary Judgment was served through the ECF system to all counsel of record, with consent of all counsel to accept service in this manner.

/s/ *Jeffrey Loperfido*
Jeffrey Loperfido