# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA A. PHILIP      )
RANDOLPH INSTITUTE and       )
ACTION NC,                            )
                                       )
          Plaintiff,             )
                                       )
          v.                    )          1:20CV876
                                       )
THE NORTH CAROLINA STATE      )
BOARD OF ELECTIONS; et al.,       )
                                       )
          Defendants.          )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Plaintiffs', North Carolina A. Philip A. Randolph Institute ("NC APRI") and Action NC (collectively "Plaintiffs"), Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56.1. (Docket Entry 85.) The Motion seeks a judgment on all claims asserted in the Amended Complaint that North Carolina General Statute § 163-275(5) (sometimes referred to herein as "the challenged statute" or the "old law"),[1] which imposes criminal penalties on those who vote while on parole, probation, or post-release supervisions for a felony conviction, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment. (*See* Docket Entry 85 at 1.)[2] Defendants, the North Carolina State Board of Elections ("NCSBE"), Damon Circosta, Stella Anderson, Jeff Carmon, III, Karen Brinson Bell, Stacy "Four" Eggers IV,

---

[1] Plaintiffs' challenge is specifically to subsection 5 of N.C. Gen. Stat. § 163-275. Thus, references herein to the "challenged statute" or the "old law" refer only to that subsection.

[2] All citations in this recommendation to documents filed with the Court refer to the page number located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Case 1:20-cv-00876-LCB-JLW   Document 107   Filed 01/02/24   Page 1 of 24

Tommy Tucker (collectively "NCSBE Defendants"), and North Carolina District Attorneys

("DA Defendants") (collectively "Defendants"), filed a Response. (Docket Entry 94.)

Plaintiffs thereafter filed a Reply. (Docket Entry 96.) On October 18, 2023, the NCSBE

Defendants filed a notice of legislative action, which stated that on October 10, 2023, the

North Carolina General Assembly enacted Senate Bill 747 (sometimes referred to as "the new

law"), which, among other things, amended the challenged statute to include a scienter

requirement. (*See* Docket Entry 103; *see also* Docket Entry 103-1.) On October 27, 2023, the

Court ordered the parties to file limited supplemental briefing to further assist the Court with

their positions and arguments in their Motion for Summary Judgment in light of Senate Bill

747, particularly Section 38, due to the possible implications for standing. (*See* Text Order

dated 10/27/2023.) The Court also ordered oral arguments, which were held on November

14, 2023. (Minute Entry dated 11/14/2023.) For the following reasons, the undersigned

recommends that the Motion for Summary Judgment be denied as moot, and the action be

dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing to pursue their

claims.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2020, Plaintiffs commenced this action against the NCSBE

Defendants,[3] along with North Carolina Attorney General Josh Stein ("AG"), alleging that

---

[3] As later discussed, NCSBE members Stacy "Four" Eggers IV and Tommy Tucker were
added later in this action.

N.C. Gen. Stat. § 163-275(5) is unconstitutional.[4]  (*See* Docket Entry 1.)  Plaintiffs also filed a Motion for Preliminary Injunction on the same day.  (Docket Entry 2.)

In October 2020, the NCSBE Defendants and AG filed a Motion to Dismiss for lack of jurisdiction and failure to state a claim, alleging that (1) Defendants were entitled to Eleventh Amendment Immunity, (2) the NCSBE Defendants and AG were improper parties, and (3) Plaintiffs lacked standing because (a) they had not suffered an injury-in-fact that (b) was traceable to Defendants and (c) had not proposed a remedy to address the alleged injuries. (*See* Docket Entry 19 at 7-18.)  They further argued that Plaintiffs' claims should be dismissed because Defendants had not taken any action to deprive Plaintiffs of their rights, and the statute was not constitutionally vague.  (*See id.* at 19-23.)

In November 2020, the undersigned recommended Plaintiffs' Motion for Preliminary Injunction be denied and further recommended that the AG be dismissed from the action. (*See* Docket Entry 24.)  The undersigned concluded that Plaintiffs had satisfied all three elements to establish organizational injury as to the NCSBE Defendants.  (*See id.* at 8-14.) First, Plaintiffs had been "forced to divert resources to address fears surrounding the enforcement of N.C. Gen. Stat. § 163-275(5)" thus satisfying the first injury-in-fact element for standing.  (*Id.* at 10.)  Second, there was a clear causal connection between the injury and the NCSBE Defendants' actions, which satisfied the second standing element. (*Id.* at 11-12.) However, the Court found that there was no causal connection between the AG and the

---

[4] N.C. Gen Stat § 163-275(5) (amended by 2023 North Carolina Laws S.L. 2023-140 (S.B. 747)) made it a Class I felony "for any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law."

3

"prosecutions [Plaintiffs] assert caused their injuries," and thus all claims against the AG were dismissed. (*Id.* at 12-14, 20.) Third, the undersigned found that Plaintiffs had sufficiently shown they would tangibly benefit were the Court to grant their requested relief, so the third redressability element was satisfied for purposes of standing against the NCSBE Defendants. (*Id.* at 14-15.) Lastly, the Court held that the NCSBE Defendants were not immune under the Eleventh Amendment because of the Ex parte Young exception for ongoing violations. (*See id.* at 15-17.) The District Judge subsequently adopted the Recommendation over Plaintiffs' objections. (*See* Docket Entry 34.)

Prior to the Court's adoption of the Recommendation, Plaintiffs filed a Motion to Amend the Complaint. (Docket Entry 29.) The Motion sought to name additional defendants, including the DA Defendants and additional NCSBE members,[5] and to make other changes, including adding more allegations concerning Defendants' role in the enforcement of the challenged statute. (*See id.* at 4.) On February 8, 2021, by stipulation of the parties in the action at said time, the previously filed motion to dismiss was withdrawn and the Amended Complaint was filed. (*See* Stipulation, Docket Entry 35; Am. Compl., Docket Entry 36.)[6]

After the Amended Complaint was filed, summonses were issued for the newly added Defendants. (Docket Entry 37.) On March 9, 2021, the NCSBE Defendants filed an answer

---

[5] The two additional members of the NCSBE were Stacy "Four" Eggers IV and Tommy Tucker. (*See* Am. Compl. ¶¶ 20-21; *see also* Docket Entry 37 at 17, 37.)

[6] Plaintiffs filed a notice explaining that the exhibits to the original Complaint were inadvertently excluded when the Amended Complaint was filed. (*See* Docket Entry 50.) As a result, each of the exhibits cited in the Amended Complaint refers to the correspondingly numbered exhibit to the original Complaint.

to the Amended Complaint.  (Docket Entry 39.)  On April 19, 2021, the DA Defendants filed a motion to dismiss in response to the Amended Complaint.  (Docket Entry 46.)  In addition, Phillip E. Berger, President Pro Tempore of the North Carolina Senate, and Timothy K. Moore, Speaker of the North Carolina House of Representatives, filed a motion to intervene. (Docket Entry 44.)  The District Judge adopted the undersigned's recommendation that the Proposed Intervenors' motion to intervene and the DA's motion to dismiss be denied.  (*See* Docket Entries 60, 66.)  The DA Defendants filed an answer to the Amended Complaint and discovery commenced.  (Docket Entries 75-77.)  Plaintiffs then filed the pending Motion for Summary Judgment, and other filings including the notice of legislative action by the NCSBE Defendants, followed.

### a.  Amended Complaint

According to the Amended Compliant, Plaintiffs are nonprofit, nonpartisan organizations whose missions are, in part, to increase voter participation among Black and low-income communities in North Carolina.  (Am. Compl. ¶¶ 14-15.)  The NCSBE Defendants administer and investigate violations of North Carolina election laws.  (*Id.* ¶¶ 16-22.)  The DA Defendants are responsible for prosecuting "all criminal actions" and are also specifically empowered to "investigate . . . and prosecute any violations" of certain voting-related criminal statutes.  (*Id.* ¶ 23 (quoting N.C. Gen. Stat. §§ 7A-61, 163-278).)  The Amended Complaint further alleges that at least two of the DA Defendants have brought criminal charges pursuant to the challenged statute against individuals "who mistakenly voted in the 2016 election while still on probation or parole for a felony conviction."  (*Id.*)

5

The challenged statute made it a Class I felony, regardless of intent, "[f]or any person convicted of a crime which excludes the person from the right of suffrage, to vote at any primary or election without having been restored to the right of citizenship in due course and by the method provided by law." (*See id.* ¶ 42 (quoting N.C. Gen. Stat. § 163-275(5) (alterations omitted)).) Violation of this statute while on parole, probation, or post-release supervision for a felony conviction may result in imprisonment for up to two years. (*Id.* ¶ 46 (citing N.C. Gen. Stat. § 15A-1340.17 and Deposition of Karen Brinson Bell at 127:4-9, Docket Entry 1-1 at 34).)

Plaintiffs allege that the challenged statute was originally enacted with racially discriminatory intent, its key features have never been substantively amended, and it continues to disproportionately impact Black North Carolinians. (*See* Am. Compl. ¶¶ 24-60.) As such, Plaintiffs claim that it violates the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶¶ 105-113.) In addition, the Amended Complaint alleges that the challenged statute fails to provide fair notice of criminal liability by failing to define which crimes "exclude[ ] the person from the right of suffrage," and not providing information on restoration of citizenship rights. (*Id.* ¶¶ 61-78.) Moreover, Plaintiffs allege that there is confusion caused by North Carolina's voting material which is "exacerbated by the State's inadequate procedures" for providing notice to felons who are ineligible to vote. (*Id.* ¶ 68.) Plaintiffs also allege that the vagueness of the law, along with recent prosecutions, "have caused *eligible* individuals with criminal convictions to refrain from voting, for fear of unintentionally violating the law and triggering criminal charges." (*Id.* ¶ 79 (emphasis in original).) As a result, Plaintiffs claim that

the challenged statute is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment. (*Id.* ¶¶ 96-104.)

A central tenet of the Plaintiffs' argument in the Amended Complaint is that the challenged statute lacks a scienter requirement, making it "an outlier in North Carolina's election laws." (*Id.* ¶¶ 44-45.) They allege that "[v]irtually every other election crime punishable as a Class I felony in North Carolina requires intent . . . . But 'felon voting is a strictly liability offense.'" (*Id.* ¶ 3.) The resulting risk of "inadvertent violations" causes them to "divert time, money, and resources . . . to educate volunteers on the potential risks of registering an individual with a felony conviction, and to caution community members of the potential risks of voting after a felony conviction before sentence completion." (*Id.* ¶ 14.)

Plaintiffs assert that violations of the law "are almost always unintentional and 'education and understanding of the state law appear to be the primary problem.'" (*Id.* ¶ 3 (quoting the *Post-Election Audit Report: General Election 2016,* North Carolina State Board of Elections (Apr. 21, 2017) (Exhibit 2), at 3, Docket Entry 1-2.).) Ultimately, Plaintiffs contend that the challenged statute impedes their efforts to carry out their missions. (*See id.* ¶¶ 93-95.) They allege that the "risk of criminal prosecution . . . has rendered it practically impossible for Plaintiffs to continue their efforts to engage in voter registration and get-out-the-vote activities with respect to individuals with felony convictions." (*Id.* ¶ 95.) "Moreover, Plaintiffs are not able to assist many individuals with felony convictions with registering to vote because of these risks." (*Id.*) Thus, they seek a declaration that N.C. Gen. Stat. § 163-275(5) is unconstitutional and to permanently enjoin Defendants from enforcement of said statute. (*Id.* ¶ 7.)

7

## II.    DISCUSSION

### a.  Plaintiffs' Motion for Summary Judgment

In June 2023, Plaintiffs filed a Motion for Summary Judgment on all claims in their Amended Complaint and for declaratory and permanent injunctive relief that would enjoin Defendants from enforcing the challenged statute.  (Docket Entry 85.)  First, Plaintiffs argue that the statute violates the Equal Protection Clause because it was enacted with discriminatory intent in 1877, and none of the minor alterations made to the law in 1899, 1931, 1968, or 1971 cleansed the law of the discriminatory taint.  (*See* Docket Entry 86 at 8-12, 22-24.)  Specifically, they note that the 1877 law did not require intent, which "set [it] apart from other offenses adopted in the 1877 law" and all later reiterations were also devoid of a scienter requirement. (*Id.* at 10, 12.)  Plaintiffs contend that this lack of a "scienter or mens rea requirement" is one of the "key features" that has allowed the taint of discriminatory intent to follow the law through its various reiterations.  (*Id.* at 23-24.)  They also argue that the law continues to disproportionally impacts Black voters.  (*Id.* at 25.)

Next, Plaintiffs assert that the challenged statute is vague, in violation of the Due Process Clause, because it contains undefined terms and fails to provide sufficient notice of what criminal activity is prohibited.  (*Id.* at 26-27.)  Specifically, they argue the challenged statute "criminalizes voting before an individual has been restored to the rights of citizenship but does not provide any guidance on when or how an individual regains those rights."  (*Id.* at 28.)  Instead, they contend that the only guidance offered is that citizenship is restored upon "unconditional discharge," but fails to define what is meant by the term.  (*Id.*)

8

Additionally, Plaintiffs claim that the challenged statute also violates the Due Process Clause because it "fails to provide clear standards to prevent arbitrary enforcement." (*Id.* at 29.) Plaintiffs note that some District Attorneys read an implicit scienter requirement into the law, while others do not. The NCSBE has also refused to refer cases for prosecution in some instances but not others. (*Id* at 30.) Plaintiffs claim these discrepancies have "generated starkly disparate outcomes." (*Id.*) Lastly, Plaintiffs reiterate that those who have faced charges have been disproportionately Black. (*Id.* at 31.)

Defendants filed a joint response to Plaintiffs' Motion. (Docket Entry 94.) Defendants do not dispute that the challenged statute was originally adopted with discriminatory intent in 1877. (*See id.* at 2.) However, they claim that the adoption of a new state Constitution in 1971 cleansed the statute of its discriminatory taint. (*See id.* at 4.) They contend that in order to adopt the new constitution, the "General Assembly and the people of North Carolina approved new language defining the scope of person subject to exclusion from the right of suffrage," which worked to broaden the scope of the challenged statute to include felonies from out of state and also federal felonies. (*Id.* at 4-6.) This revision, they claim, substantively altered the challenged statute. (*Id.*) Thus, since the challenged statute has been purged of its discriminatory taint, they contend that there is no equal protection violation. (*See id.* at 10.)

They further contend that Plaintiffs are unable to produce any evidence that demonstrates the 1971 Constitution was adopted with racial intent. (*See id.* at 13.) Defendants claim that Plaintiffs cannot show that racial discrimination was a substantial or motivating factor for the adoption of the 1971 Constitution, which is necessary to prove discriminatory intent. (*See id.* at 9.) Instead, Defendants assert that a version of a felony disenfranchisement

9

law exists in almost every state, and thus there is an "obvious alternative explanation" that supports "the propriety of the 1971 Constitution's felony-based disenfranchisement provision and the enforcement thereof by a criminal statute." (*Id.* at 12 (quoting *Hayden v. Paterson,* 594 F.3d 150, 167 (2d Cir. 2010).)

Next, they argue that summary judgment must be denied because Plaintiffs' vagueness argument also fails. (*See id.* at 13.) First, they argue that a plain reading of the statute provides "ample notice" of when an individual's rights have been restored, noting that Plaintiff's argument that a prospective voter would be required to reference two statutes does not equate to a due process violation. (*Id.* at 14.) They further claim that the restoration process provides sufficient notice because both "unconditional" and "discharge" have plain meanings. (*Id* at 15.) Specifically, Defendants contend that a plain reading of "unconditional discharge" clearly means that a felon has been released with no conditions and discharged "by the State agency or court with jurisdiction over them before their rights are restored." (*See id.* at 15-16.) They further argue that former felons are already provided sufficient notice that their rights have been restored because state law dictates that whichever agency or court had jurisdiction over the former felon "must 'immediately issue a certificate or order in duplicate evidencing the offender's unconditional discharge and specifying the restoration of his rights of citizenship.'" (*Id.* at 17 (citing N.C.G. S. § 13-2(a).)

Lastly, they argue that the inconsistent enforcement by the state's District Attorneys does not equate to arbitrary enforcement. (*Id.* at 19-20.) Rather, they contend that the broad discretion afforded to prosecutors is an integral part of the American justice system. (*Id.* at

22.) They also note that there is no constitutional requirement for "strict uniformity in the execution of the law." (*Id.* at 23.)

### b. Senate Bill 747

Importantly, after both parties filed respective briefs in support of and against summary judgment, the NCSBE Defendants filed the notice of the North Carolina legislature's enactment of Senate Bill 747, which amended the challenged statute so that it now includes a scienter requirement. (*See* Docket Entry 103; *see also* NC LEGIS 2023-140 (2023), 2023 North Carolina Laws S.L. 2023-140 (S.B. 747).) Shortly thereafter, this matter was set for a hearing. (Text Order dated 10/27/2023.) In addition to the arguments presented in their summary judgment briefs, the Court requested that both parties file supplemental briefs prior to the oral arguments "to further assist the Court with Plaintiffs' position of their claims and arguments in their summary judgment motion in light of Senate Bill 747, particularly Section 38." (*See id.*) Both parties filed their supplemental briefs, and oral arguments were held on November 14, 2023. (*See* Docket Entries 105, 106; *see* Minute Entry dated 11/14/2023.) This matter was taken under advisement.

In their supplemental brief, Plaintiffs argue that because Section 38 of Senate Bill 747 does not go into effect until 1/1/24 and is not retroactive, the challenged statute will continue to violate the Constitution. (*See* Docket Entry 105 at 2.) Next, they contend that the case is not moot because the standard for satisfying mootness is high. (*See id.* at 3.) They cite *United States v. Springer*, 715 F.3d 535 (4th Cir. 2013), in which the Fourth Circuit held that "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (*Id.* at 540; Docket Entry 105 at 3.) Therefore, Plaintiffs argue that

because "North Carolina voters will continue to face the threat of prosecution under the Law in its current form even after [Senate Bill] 747 becomes effective," they retain a concrete interest in the matter. (*Id.* at 3-4.)

Lastly, Plaintiffs argue that the passage of Senate Bill 747 "has no impact on [their] standing, which is determined solely based on the facts at the time the complaint was filed." (*Id.* at 6 (citing *Wild Va. V. Council on Env't Quality,* 56 F.4th 281, 293 (4th Cir. 2022).) In conclusion, they contend that because the Court "can still prevent ongoing and future harm by permanently enjoining an indisputably racist law," the Court should grant their Motion for Summary Judgment. (*Id.* at 6.)

In Defendants' supplemental brief, they argue that Plaintiffs no longer retain a concrete interest in the litigation, and the case should be dismissed as moot. (*See* Docket Entry 106 at 2-3.) Defendants argue that Plaintiffs' interest in the litigation was rooted in their need "to divert time, money, and resources to provide education" to prospective voters in future elections regarding the risk of criminal prosecution because of the challenged statute. (*See id.* at 2-3.) With the addition of a scienter requirement, "Plaintiffs can no longer claim . . . [they] must divert resources which would otherwise be used for other voter-education purposes" because "there is no longer 'a risk of criminal prosecution of prospective voters.'" (*Id.* at 2 (quoting Am. Compl. ¶ 95).) They further state that "[f]or the Court to accept Plaintiffs' reasoning, it would also have to accept the illogical proposition that Plaintiffs will retain a concrete interest in the action in perpetuity, even though their specific interest in education prospective voters will no longer be impeded by this law." (*Id.* at 3.) Lastly, they argue that because Plaintiffs brought the action on behalf on themselves and not a prospective voter, the

Court can no longer grant any effectual relief and thus, the case should be dismissed as moot. (*Id.* at 4-5.)

### c. Standard of Review

Plaintiffs request that the Court grant summary judgment in their favor. (*See* Docket Entry 85.) Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F. 3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting).

When making a summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191,196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or

Case 1:20-cv-00876-LCB-JLW   Document 107   Filed 01/02/24   Page 13 of 24

denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Anderson*, 477 U.S. at 248-49; *see Rogers v. N. Carolina Dep't of Pub. Safety,* No. 1:19CV417, 2022 WL 3283990, at *3 (M.D.N.C. Aug. 11, 2022), *report and recommendation adopted,* No. 1:19CV417, 2022 WL 4472958 (M.D.N.C. Sept. 26, 2022).

### d. Standing

Defendants claim that the passage of Senate Bill 747 has eliminated any concrete interest held by Plaintiffs in the action, and thus they do not have standing to bring a claim, so the case should be dismissed as moot. (*See* Docket Entry 106 at 1.) Federal district courts exercise limited jurisdiction in that the courts "possess only the jurisdiction authorized . . . by the United States Constitution and by federal statute." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citation omitted). Article III of the United States Constitution outlines the federal court's jurisdictional limits. *See* U.S. Const., art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 & n.5 (2014). Relief is only appropriate when there is an actual case or controversy under Article III. *See Volvo Const. Equip. N. Am,. Inc. v. CLM Equip. Co., Inc.* 386 F.3d 581, 592 (4th Cir. 2004). For any case or controversy to be justiciable in federal court, a plaintiff must allege "such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Planned Parenthood of S.C. v. Rose*, 361 F.3d 786, 789 (4th Cir.

2004)).  Because standing is a threshold jurisdictional requirement, it may be attacked at any time, including summary judgment.[7]  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

There are three elements required to establish standing.

> First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)) (internal citations omitted).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist." The adjective "concrete" in this context, "convey[s] the usual meaning of the term—'real,' and not 'abstract.'" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016) (internal citation omitted). Second, the injury must be fairly traceable to the defendant's actions, rather than the result of independent action of a third party not before the court.  *Lujan*[], 504 U.S. [at 560].  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"

*Singh v. Univ. of N. Carolina at Chapel Hill,* No. 1:22-CV-294, 2023 WL 2329857, at *8 (M.D.N.C. Mar. 2, 2023), *appeal dismissed sub nom. Singh v. Univ. of N. Carolina Health Care Sys.,* No. 23-1350, 2023 WL 6374188 (4th Cir. June 20, 2023); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (citing *Lujan,* 504 U.S. at 560-61; *see also Bethel,* No. 1:20CV330, 2022 WL 4585809, at *3).  Every element must be proven "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561; *see also Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 427 F. Supp. 3d 582, 600 (D. Md. 2019), *aff'd but*

---

[7] In their supplemental brief, Plaintiffs allege that standing is "determined solely based on the facts at the time the complaint was filed."  (*See* Docket Entry 105 at 6.)  This is a mischaracterization of the law.  If superseding legislative action or other events render it impossible for the Court to grant relief, it is fully within the jurisdiction of the Court to dismiss Plaintiffs' claims as moot.  *See Brusznicki v. Prince George's Cnty,* 42 F.4th 413, 419 (4th Cir. 2022) ("[A] legislative amendment will moot a challenge . . . when it significantly alters the posture of the case." (quotations and brackets omitted).

*criticized,* 14 F.4th 276 (4th Cir. 2021). Thus, "at the summary judgment stage . . . a party can no longer rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (citing *Lujan,* 504 U.S. at 561).

In *Clapper v. Amnesty Int'l USA*, the Supreme Court addressed a constitutional challenge to a law that allowed the U.S. Government to intercept the international communications of noncitizens. 568 U.S. 398 (2013). Amnesty International argued that they had organizational standing to bring their claims because some of their international communications were likely to be intercepted. *See id.* at 401. However, the Supreme Court held that the organization had not established standing because their claims of injury were too speculative.[8] *Id.* In doing so, the Court analyzed the "imminence" requirement, stating that

> "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes— that the injury is *certainly* impending." *Defenders of Wildlife,* 504 U.S. at 565, n. 2 (internal quotation marks omitted). Thus, we have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "[a]llegations of

---

[8] The *Clapper* Court stated that

> [R]espondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts.

*Clapper,* 568 U.S. at 410.

> *possible* future injury" are not sufficient. *Whitmore,* 495 U.S., at 158,
> [](emphasis added; internal quotation marks omitted); see also
> *Defenders of Wildlife, supra,* at 565, n. 2, 567, n. 3,[]; see
> *DaimlerChrysler Corp., supra,* at 345 []; *Friends of the Earth, Inc. v.*
> *Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000);
> *Babbitt v. Farm Workers,* 442 U.S. 289, 298 (1979).

*Id.* at 409. In sum, because the Court was required to make several logical leaps to satisfy a finding of injury, and plaintiffs had failed to "demonstrate[]e" any "specific facts," the Court held that the organization's threatened fear was too speculative to satisfy the imminence requirement. *See id.* at 410; *see also Bauer v. Shepard,* 620 F.3d 704, 708-09 (7th Cir 1984) (holding that when "a series of events must happen" for an injury to occur, the court cannot "justify constitutional adjudication").

Additionally, the bar to satisfy a finding of standing is higher for organizational plaintiffs. *Lujan* 504 U.S. at 562. When an organizational plaintiff "is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* (citing *Allen v. Wright*, 468 U.S. 737, 758 (1984). Similarly, an organization claiming that their injury lies in being forced to divert resources to address an issue also faces a heightened standard. *See Whitmore,* 495 U.S. at 155-56.

> "Organizational injury, properly understood, is measured against
> a group's ability to *operate* as an organization, not its theoretical
> ability to *effectuate* its objectives in its ideal world . . . . Resource
> reallocations motivated by the dictates of preference, however
> sincere, are not cognizable organizational injuries because no
> action by the defendant has directly impaired the organization's
> ability to operate and to function. [*See id.*]

17

*CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020). The Ninth Circuit has held that a diversion of 15% or more of an organization's resources is sufficient to establish standing. *See Doe #1 v. Trump,* 984 F.3d 848, 860-81 (9th Cir. 2020).

Accordingly, absence of "one of the three required elements of Article III standing: (1) injury-in-fact, (2) causation, or (3) redressability," renders a case moot. *Action NC v. Strach*, 216 F. Supp. 3d 597, 612 (M.D.N.C. 2016); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) ("A case becomes moot—and therefore no longer a 'case' or 'controversy' for the purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" ); *see also Carver v. Valliere*, No. 1:17CV986, 2019 WL 6529448, at *2 (M.D.N.C. Dec. 4, 2019), *report and recommendation adopted,* No. 1:17CV986, 2020 WL 364791 (M.D.N.C. Jan. 22, 2020), *aff'd as modified*, 811 F. App'x 856 (4th Cir. 2020).

Since "[m]ootness is a jurisdictional question, it may "be raised *sua sponte* by a federal court at any stage of proceedings." *Springer*, 715 F.3d at 540 (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)); *see also McClary v. Shuman*, No. 1:18CV959, 2019 WL 6918525, at *2 (M.D.N.C. Dec. 19, 2019), *report and recommendation adopted,* No. 1:18-CV-959, 2020 WL 13739856 (M.D.N.C. Jan. 17, 2020). "Even when a plaintiff satisfies the requirements of standing doctrine when litigation commences, a federal court may cease to have jurisdiction when subsequent events render a claim moot." *N. Carolina State Conf. of NAACP v. N. Carolina State Bd. of Elections*, 283 F. Supp. 3d 393, 405 (M.D.N.C. 2017). Applicable subsequent events include "a change in the facts or a change in the law." *See Great W. Cas. Co. v. Packaging Corp.*

*of Am.*, 444 F. Supp. 3d 664, 670 (M.D.N.C. 2020).[9]  The Court will now address each element required to satisfy standing.

### 1. Injury-in-fact

The first standing element requires Plaintiffs to allege a concrete and imminent injury. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982).  In Plaintiffs' Amended Complaint, they allege that the threat of prosecution for prospective voters under the challenged statute made it "practically impossible" for them to carry out their mission.  (*See* Am. Compl. ¶¶ 6, 14.)  Specifically, they claim that they have been forced to divert substantial resources from other get-out-the-vote measures to educate prospective voters who had previously been convicted of a felony of their voting eligibility satisfied the injury-in-fact analysis.  (*See id.* ¶ 14.)  Earlier in this action, the undersigned found that this significant diversion of resources was sufficient to establish injury-in-fact.  (*See* Docket Entry 60 at 13.)

However, Senate Bill's 747's addition of a scienter requirement sets the violative bar much higher, which substantially diminishes any prospective voter's perceived threat of prosecution and any resulting confusion.  Under Senate Bill 747, a voter can only violate the felony disenfranchisement statute if he or she already *knows* they are ineligible to vote, intentionally disregards the law, and casts a ballot.  If a voter knows he or she is ineligible and

---

[9] Similar to the facts presently before the Court, in *Citizens for Responsible Go'vt State Pol. Action Comm. v. Davidson,* several organizations and individuals brought suit to declare the Colorado Fair Campaign Financing Act unconstitutional.  During litigation, the Colorado legislature amended the statute so that it was constitutionally compliant.  Plaintiffs argued that the case was not moot because prosecution under the pre-amendment statute could occur. The Tenth Circuit declared that the superseding legislative action mooted their challenge.  236 F.3d 1174 (10th Cir. 2000).

will violate the law by voting, the voter has no need to seek out Plaintiffs' advice regarding his or her eligibility. Conversely, if a felon voter does not know he or she is ineligible to vote and casts a ballot, they have not violated any law. As a result, Plaintiffs can no longer claim that they must divert substantial resources to educate volunteers and prospective voters regarding the new law because much of the confusion concerning one's eligibility to vote has been eliminated.

Instead, Plaintiffs now claim that their interest arises from the fact that the old, challenged statute could be applied retroactively to violations from prior elections, which could, in turn, cause confusion among prospective voters and force Plaintiffs to divert resources to address that confusion. (*See* Docket Entry 105 at 4.) Like the alleged interest in *Clapper,* to sufficiently allege injury, multiple, logical leaps need to be made. First, a felon voter would need to be prosecuted under the old law. While this step alone is not dispositive, it does require some speculation as to whether the DA Defendants would even choose to pursue prosecution under the challenged statute.[10] Next, other prospective voters would have to learn about the prosecution under the old, challenged statute. Then, as a result of the prosecution, a prospective voter would need to be sufficiently confused as to the applicability

_____

[10] While Defendants do not argue that it would be impossible for someone to be prosecuted under the old law, neither party notes any prosecutions since 2016. (*See* Docket Entry 36 at 33-38; *see also* Docket Entry 86 at 24.) Even then, Plaintiffs contend that only two district attorneys pursued any type of prosecution and "most [Defendants] seem[ed] to have had no intent to break the law." (*Id.* at 34-35*; see also* Docket Entry 96 at 11.) Moreover, it appears all felony charges were dismissed. (*See id.* at 30; *see also* Docket Entry 36 at 35; *see also* Docket Entry 94 at 21.) Given the scarcity of prior prosecutions under the old law, the legislature's acknowledgement that the law should be amended moving forward, and because of the discriminatory intent of the original law, which is conceded by the State, (*see* Docket Entry 94 at 2-3), the undersigned can think of no reason for any future prosecutions under the old law to take place. If such should occur, it should only be pursued after careful discernment, in good faith, and with a public explanation as to why prosecution is being pursued.

of the old statute. Fourth, that confused prospective voter would need to approach one of Plaintiffs' organizations to ask for clarification. Finally, this would have to happen with such frequency that Plaintiffs would be forced to divert "significant" resources from other get-out-the-vote activities to address the confusion created by the prosecutions under the old, challenged statute.

This possibility of a future injury is too speculative to establish a concrete and imminent injury-in-fact. *See Clapper*, 568 U.S. at 418 (noting that a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending."); *see also Beck v. McDonald,* 848 F.3d 262, 272 (4th Cir. 2017). Plaintiffs provide no specific facts to substantiate that they will certainly need to divert significant resources. They can only speculate as to whether this chain of events will occur at all and cannot sustain any argument that it would occur with such frequency as to force substantial diversion of resources. At the summary judgment phase, the Court needs more than these abstractions and conjectures as to what might occur in the future. Given that an injury must be so substantial that it threatens their very operation as an organization, rather than merely impede their objectives, Plaintiffs have failed to establish a concrete interest in the litigation.

## 2. Traceability

The second element requires, "a causal connection between the injury and the conduct complained of." *Cooksey v. Futrell,* 721 F.3d 226, 234 (4th Cir. 2013) (citation omitted). Any injury must be "fairly traceable to the challenged action of the defendant, and not the result

of the independent action of some third party not before the court." *Id.* at 234-35 (citation omitted).

Given that Plaintiffs fail on the first step in the standing analysis, there is no need to analyze their injury further. However, for reasons similar to those explained above, Plaintiffs' alleged injury also fails to satisfy the traceability requirement. To satisfy the traceability element, Plaintiffs' injury *i.e.,* the need to divert resources to address confusion under the old law, would need to be causally connected to Defendants' conduct *i.e.,* the prosecution of felon voters. As stated, Plaintiffs can only conjecture that such an organizational injury might occur based on the speculative steps listed above. It is also somewhat speculative that Defendants will choose to prosecute anyone under the old, challenged statute. Given that Plaintiffs' injury is conjectural, the traceability requirement is also too attenuated to satisfy standing.[11]

### 3. Redressability

` Lastly, Plaintiffs' conjectural injury would also fail under a redressability analysis. Redressability is satisfied "where there is non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Cooksey,* 721 F.3d at 238 (internal quotations and citation omitted). Plaintiffs are required to "show that they 'personally would benefit in a tangible way from the court's intervention'" *Sierra Club v. United States Dep't of the Interior,* 899 F.3d 260, 284 (4th Cir. 2018) (quoting *Friends of the Earth,* 204 F.3d at 162); *see also Deal v. Mercer Cty Bd. Of Educ.,* 911 F.3d 183-90 (4th Cir. 2018) (same). "[I]t must be likely, as opposed to

---

[11] Hypothetically, if, included among Plaintiffs, there was a felon voter who still faced a risk of prosecution under the old, challenged statute, that individual's injury might be sufficiently causally connected to Defendants' conduct. However, Plaintiffs have not brought their claims on behalf of any felon voters and thus cannot attribute their injury to an independent third party.

merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 562.

Here, as stated above, Plaintiffs' claims of injury are too speculative to show that declaring the challenged statute unconstitutional would tangibly benefit them. *See id.* (finding that standing is more difficult to show if the injury "arises from the government's allegedly unlawful regulation . . . of someone else"). Moreover, were the law to be declared unconstitutional, Plaintiffs do not and could not argue that the proposed action would eradicate all confusion regarding the current state of the law. Plaintiffs also do not claim injury based on the need to address confusion resulting from the adoption of the new law. Nor do they attack the new law as unconstitutional. As long as felony disenfranchisement statutes are upheld as constitutional, there will necessarily be some level of confusion as to how they are applied.[12] It is entirely plausible that any declaration by the Court would have no effect on Plaintiffs' work because it is mere speculation that prosecutions under the old law would cause confusion of such significance that Plaintiffs would be forced to substantially divert resources to address the confusion. Thus, Plaintiffs fail to satisfy the third element of standing.

For the reasons stated above, in light of the legislature's enactment of Senate Bill 747, Section 38, which amends N.C.G.S. § 163-275(5) so that it now includes a scienter requirement, Plaintiffs' interest in the instant case has been altered in such a way that they can no longer satisfy a finding of injury-in-fact. Plaintiffs no longer retain a concrete and imminent injury that is fairly traceable to Defendants' conduct and could be sufficiently redressed by a

---

[12] Defendants state that nearly every state has adopted some sort of felony disenfranchisement law. (*See* Docket Entry 94 at 12-13.)

23

favorable judicial action.  Since Plaintiffs have failed to satisfy the three elements to establish standing, the undersigned recommends that their claims be dismissed as moot for lack of subject matter jurisdiction.  *See e.g., Citizens for Responsible Gov't State Pol. Action Comm.,* 236 F.3d at 1200.

## III.  CONCLUSION

Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Summary Judgment be **DENIED as moot,** and the action be **DISMISSED without prejudice** for lack of subject matter jurisdiction because Plaintiffs lack standing to pursue their claims.


                                                      /s/  Joe L. Webster
                                         United States Magistrate Judge


January 02, 2024
Durham, North Carolina